# SUPREME JUDICIAL COURT
## COMMONWEALTH OF MASSACHUSETTS

NO. _____

Plymouth County
No. 98643, 98805

COMMONWEALTH OF MASSACHUSETTS,
Appelle

V.

JORDAN RICE,
Defendant, Appellant

### Memorandum In Support Of Motion For Post Conviction Relief

Defendant, Jordan Rice, respectfully submits this Memorandum Of Law in Support of Motion for Post Conviction Relief and related Post-trial Discovery pursuant to Mass. R.Cr.P. 30. Rice maintains that he was denied his right to the effective assistance of Appellate Counsel under Article 12 and the Sixth and Fourteenth Amendments, including because his Appellate Counsel:

(i) failed to federalize issues in brief on First Appeal;

(ii) failed to raise the Fourth, Sixth and Fourteenth Amendment claims in conjunction with one another;

(iii) failed to raise meritorious issues.

Rice also maintains, among other things, that he didn't receive a fair trial or first appeal and that his state and federal due process rights under Article 12 and the Fifth and Fourteenth Amendments have been violated.

### Rice Was Denied The Effective Assistance Of Counsel And Due Process Of Law Under The State And Federal Constitutions

In <u>Stickland V. Washington</u>, 466 U.S. 668 (1984) the Supreme Court set forth a two-part test for determining whether the performance of counsel is Constitutionally deficient. "First, a defendant must show that counsel's errors were so serious that he or she was not functioning as the counsel guaranteed by the Sixth [and Fourteenth] Amendments ... Second, a defendant asserting an ineffective assistance of counsel claim must generally show that defense counsel's deficient performance prejudiced the defense." <u>Lucas V. O'Dea</u>, 179 F.3d 412, 418 (1999),

2

quoting, Strickland, 466 U.S. at 687-693 (1984). And this same standard is used to evaluate ineffective assistance claims at the appellate stage. Smith V. Murray, 477 U.S. 527, 535-36 (1986).

"When a state guarantees criminal defendants the right to appellate review, the right effective assistance of counsel extends beyond the state trial to the first appeal as of right in accordance with the Due Process and Equal Protection Clause of the United State Constitution." Jamison V. Collins, 100 F.Supp. 2d 647, 734 (S.D. Ohio 2000); citing, Evitts V. Lucey, 469 U.S. 387, 392-393 (1985)

For Counsel to be effective on first appeal, he must "Federalize" all issues in the brief, which is his professional duty, Jamison, 100 F.Supp. 2d at 741 (2000), and failure to raise meritorious "issues... clearly stronger than those presented" is also a breach of his professional duty that amounts to ineffective assistance on First Appeal. Smith, 528 U.S. at 288, citing, Gray V. Greer, 800 F.2d 644, 646 (7th Cir. 1986). These breaches of professional duty weren't "Sound appellate strategy", which deprived Rice of a fair First Appeal and

3

constitutes Appellate Counsel ineffective. <u>Sidebottom v. Delo</u>, 46 F.3d 744, 759 (8th Cir. 1995)

Background.[1]  On September 22, 1995, the victim attended a wedding reception with friends. She arrived at approximately 7:30 P.M. and left at approximately 10:30 P.M. The defendant also attended the reception, staying until about 1 or 1:30 A.M. on September 23.

The victim telephoned her daughter at 1 A.M. on September 23, and there was nothing unusual about her tone of voice. She left a voice mail message for her boyfriend at 1:15 A.M., which was also unremarkable. At 4:40 A.M. on September 23, neighbors in the victim's Brockton apartment complex awoke to the smell of smoke and telephoned the Brockton fire department. Firefighters arrived within minutes and went to the victim's apartment, which was the apparent source of the fire. The front door was ajar. They entered and went to the bedroom. The victim's naked and lifeless body lay on the bed, which was in flames. A smoke detector had

---

[1] This Background of Trial Facts will be summarized as related in the Supreme Judicial Courts opinion in <u>Commonwealth v. Jordan Mertell Rice</u>, 441 Mass. 291, 292-294 (2004) (See Exhibit A) but Rice disputes this summarized trial facts.

4

been dismantled and placed under the bed. An arson investigator determined that attempts had been made to burn a blood-soaked couch in the living room, but were unsuccessful because the couch was made of flame retardant material. The bed had been set afire by igniting a cardboard box and papers that had been placed under the foot of the bed.

A forensic pathologist determined that the victim had eleven stab wounds and four incised wounds to her body consistent with a single edged knife blade at least two inches long. A wound to her right upper chest corresponded with a punctured blood vessel that supplied blood to the right lung, causing her to bleed to death within minutes. The pathologist estimated the time of death at between approximately midnight and 4 A.M. on September 23, 1995, and that the absence of carbon monoxide in her blood and soot in her lungs suggested that she was dead when the fire started. The presence of full sperm cells in her vagina indicated that she had had sexual intercourse within eighteen to twenty-four hours of the autopsy, which had begun at 1 P.M. on September 23. Deoxyribonucleic acid (DNA) testing established that the defendant was the source of the sperm. There was no other physical evidence connecting the defendant to the victim's

apartment.

When the defendant was interviewed by police on January 5, 1996, he admitted knowing the victim and where she lived (they lived in the same apartment complex), but denied ever having sexual intercourse with her. He acknowledged that he was at the wedding reception on September 22, 1995, but said he was alone and left at about 1 A.M. He then went directly home where he stayed for the night.

Several friends and acquaintances of the defendant testified about statements he made. Alan Paine testified that in September, 1995, shortly after the victim was killed, he telephoned the defendant and asked if he was aware of her death. The defendant replied in the negative. When Paine asked if he killed her, the defendant replied that he "can't talk about that," and later told Paine he thought his telephone was tapped. In January or February, 1996, the defendant told Paine, in the presence of Paine's girlfriend, that the police took his fingerprints. He then ask Paine how long it take the police to obtain the results of a fingerprint analysis, and if burning something would destroy prints. In February, 1996, the defendant told Paine and Jamie Baker that he

6

had had a girl friend who "disrespected him, and he had gotten rid of her, and had put plenty of holes in her, and 'burned her.'" In March, 1996, the defendant told Paine that he "expected to be arrested for murder" and that the police were "trying to set [him] up like O.J. Simpson."

On January 28, 1996, at a birthday party for Joanne Maldonado's daughter, the defendant was being teased by some children about "beating up his girl friend." Maldonado asked him about it and the defendant said "the bitch got what she deserved. I smoked her ass." The defendant then stormed out of the house. Teresa Baker, Maldonado's daughter, overheard the conversation.

The defendant testified at trial that he had had consensual intercourse with the victim at approximately 4 P.M. on September 22, 1995, and had begun an intimate relationship with her about one month before. He said he lied to the police about not having sexual relations with her because he was afraid. He denied making incriminating statements to Alan Paine and the others, and he denied killing the victim.

7

(i)

Counsel's failure to Federalize Issues in Brief on First Appeal.

A. The Trial Court Erroneously Permitted A Commonwealth Witness To Testify Beyond His Expertise In Violation Of Due Process

"The application of an abuse-of-discretion standard recognizes a range of possible." United States V. Frazier, 387 F.3d 1244, 1266 (2004). An Trial Judge abuses their discretion when a "Expert opinion based on a scientific technique is inadmissible unless the technique is generally accepted as reliable in the relevant scientific community". Daubert V. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 583 (1993), quoting, Frye V. United States, 293 F.2d 1013, 1129-1130 (1923). An abuse of discretion is when an "Expert opinion based on a Methodology that diverges significantly from the procedures accepted by recognized authorities in the field... cannot be shown to be generally accepted as reliable techniques". Daubert, 509 U.S. at 583 (1993). See also, Gen. Elec. Co. V. Joiner, 522 U.S. 136, 141-43 (1997) (Review for Abuse of discretion the admissibility of expert testimony and the reliability of an expert opinion).

8

Here, the trial court, over defense objection, permitted a Commonwealth Chemist, Daniel Pratt, to testify that sperm with tails may be found only 16 hours after ejaculation (T. III/87-88) -- testimony later contradicted by the Commonwealth's own pathologist, Dr. Weiner, who testified that sperm with tails may be found up to 24 hours after ejaculation (T. IV/33) -- and further, that heat may break down sperm more quickly (T. III/87-88). An inadequate foundation was laid for such testimony by Pratt, who obviously was testifying beyond his area of expertise. Likewise, an inadequate foundation was laid for Dr. Weiner's testimony that heat may break down sperm more quickly (T. IV/33). Both Pratt's and Dr. Weiner's testimony was clearly a "unfair prejudice [and] did substantially outweigh the ... probative value." <u>Old Chief V. United States</u>, 519 U.S. 172, 191 (1997)

Accordingly, the trial court's error requires a reversal and/or the exclusion of such expert testimony in the event of retrial on other grounds.

**B.** **The Prosecutor's Cross-Examination of The Defendant Was Improper And Not Founded Upon The Evidence, Thereby Violating His Due Process Rights Under The Fifth, Sixth And Fourteenth Amendments And Article 12**

The Fifth Amendment of the United States Constitution guarantees, even through cross-examination "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." Id. And "the Fourteenth Amendment commands the same answer in this case 'involving' the State Prosecutor cross-examining the Defendant" in regards to the unindicted and/or amended Rape Charge. Apprendi. V. New Jersey, 530 U.S. 466, 476 (2000). The Supreme Court has held the Fifth and Sixth Amendments of the Due Process Clause protections applies in state prosecutions, See, Apprendi, 530 U.S. at 500 (2000); Herring V. New York, 422 U.S. 853, 857 (1975). The very essence of Due Process is "protection of the individual against arbitrary action", Ohio Bell Telephone Co. V. Public Utilities Commission, 301 U.S. 292, 302. And "the [States] must conform to the requirements of due process." Slochower V. Board of Higher Ed. of City of

New York, 350 U.S. 551, 557 (1956). "When the [prosecutor] has no evidence to support the innuendo, is an improper tactic which has often been condemned by the courts". ABA Standards Relating to the Prosecution Function § 5.7(d) (Approved Draft 1971).

In the case at bar, during trial the prosecutor arbitrarily amended the indictment with an fictitious Rape Charge that wasn't outlined in the indict, nor was there any supporting evidence for an Rape Charge to be returned by an Grand Jury (See Argument III A). While cross-examination of the defendant, the prosecutor unfairly suggested his unfounded and amended rape charge theory (T.V/55-56). Throughout the defendants trial, the prosecutor repeatedly constructed the amended Rape Charge and this questioning of the false Rape impressions not based upon any evidence was only a small part of the prosecutor's intricate scheme to amend the indictment with an series of Rape innuendo's, which inflamed the juries passion to convict Rice and this gravely prejudice him via violating his Due Process Rights. During cross-examination of the Prosecutor was at liberty to "strike hard blows, [but] he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction

11

as it is use every legitimate means to bring about a just one". Berger V. United States, 295 U.S. 78, 88 (1935).

Accordingly, Rice was denied Due Process by the Prosecutor question. This error warrants a reversal and/or the exclusion of such questioning in the event of retrial on other grounds.

### (ii)

Counsel's failure to raise the Fourth, Sixth and Fourteenth Amendment Claims in conjunction with one another.

Rice's Trial Counsel [a] was ineffective during and after his Motion To Suppress Hearing, which denied Rice an opportunity for a full and fair litigation of his Meritorious Fourth Amendment Claim.

The Supreme Court has set forth the following two prong test to adjudicate

---

[a] Trial Counsel was the infamous Henry F. Owens, who served a period of two years Suspension for Malpractice Representation of Clients, (Exhibit B)

12

these type of claims: "[1] Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and [2] that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman V. Morrison, 477 U.S. 365, 375 (1986).

Rice will now demonstrate the first prong of this test. Suffolk County Officials at the County Jail known as South Bay Correctional Institution. Did search and seize items from Rice's cell for DNA Testing at the behest of Trooper Joseph Mason. See Affidavit of Rice (Exhibit "C"). Mason and South Bay Officials want the Courts to believe that Rice willingly disregarded his bedsheets, undershirt, towel and a deodorant (See Affidavit in Support of Search Warrant dated October 31, 1996, p. 22, as Ex. "D").

Prior to seize of the items for which suppression is sought, Mason asked Rice to voluntarily provide a sample of his DNA. Rice declined to submit to this request (M.S.I/23-24). Mason next considered obtaining a court order for the seizure of a DNA Sample from Rice but

such order lacked probable cause (M.S. I/34-35). Accordingly, in an attempt to evade the probable cause and warrant requirements, Mason directed prison officials at South Bay to seize bedsheets and other items from Rice which might contain DNA evidence (M.S. I/25-26, 45-46; II/12-13).

Mason testified that he first inquired of prison officials whether they might seize a discarded cigarette butt containing Rice's saliva (M.S./26, 35-37). Mason was allegedly told that "inmates were not allowed to smoke in the facility" (M.S. I/26) -- an assertion which is demonstrably untrue, raising serious concerns about the credibility of Mason's testimony, sanctioned by the prosecutor. See, e.g., United States v. Bagley, 473 U.S. 667, 680 (1985) (Knowing use of false testimony involves prosecutorial misconduct and corruption of truth-seeking function of the trial process). At the time, smoking by inmates was permitted at South Bay, as clearly indicated in a December, 1996 prison canteen form submitted by Rice which permitted the purchase of tobacco items by prisoners. See Ex. "E". Indeed, this court may take judicial notice of the fact that a smoking ban didn't go into

14

effect at South Bay until May 1, 1999. See Boston Herald articles dated April 25 and 26, 1999, Ex. "F". There admittedly was no reference in the prison log that Rice's bed sheets, tee-shirt and other items were obtained by prison authorities on the dates specified (M.S. II/7, 15-16). Nor did Sgt. Walsh, who obtained the items, testify at the Suppression Hearing dates.

There would be no reason to fabricate a no smoking policy if the chain of events didn't happen as Rice rightfully asserted in his affidavit (See Ex. "C"). Further substantiating Rice's illegal search and seizure claim is South Bay Officer Michael Jacobs omission in question form[3]. Furthermore, Rice would of been assaulted by South Bay Officer's had he not submitted to a cell search because that was the normal behavior of Suffolk County Officer's at the co-ed prison known as South Bay. Indeed, this court may take judical notice of the fact both Men and Women prisoner's Civil Rights were violated in Suffolk

---

[3] "How do I know that those items were pulled out of the cell?" (M.S. II/14).

15

County (See Boston Herald and Boston Globe Articles, Ex. "H").

Further prejudicing Rice and clearly violating his due process right, i.e., Justice Patrick F. Brady used the perjured No Smoking Policy testimony in denying the Motion to Suppress, See Justice Brady's Memorandum and Order on Defendant's Motion To Suppress Evidence, p. 3, Ex. "I". A conviction based upon false testimony violates due process. Giglio V. United States, 405 U.S. 150 (1972) (Conviction based upon perjured testimony violates due process); Napue V. Illinois, 360 U.S. 264 (1959) (Same). Nor can a upholder be based upon perjured testimony.

After the first day of the Motion to Suppress Hearing, Rice brought the perjured testimony to the attention of Attorney Owens in form of letter, See Ex. "J". Owens failed to pursue this perjured testimony. After Justice Brady's denial, Rice further requested Owens to appeal Justice Brady's upholder but Owens refused to adhere to this request. See Owens letter dated March 11, 1998, Ex. "K". Owens had a duty to present this perjury evidence in Rice favor. Strickland V. Washington, 466 U.S. 668, 691 (1984)

16

(Effective assistance of counsel includes a duty by Counsel to conduct a reasonable investigation and to present all favorable proofs). Likewise, Appellate Counsel [4] failed to raise the fourth, Sixth and Fourteenth Amendment Claims in conjunction with one another. Harwood was aware of all these facts and Supporting Exhibits (C-K), which are sited in Rice's first direct appeal brief. The right to effective assistance of counsel is not confined to trial but extends also to the first appeal as of right. Evitts V. Lucey, 469 U.S. 387 (1985).

Article 14 of the Massachusetts Declaration of Rights and the fourth Amendment prohibit unreasonable searchs and seizures. Terry V. Ohio, 392 U.S. 1, 9 (1968). Commonwealth V. Silva, 366 Mass. 402, 404-405 (1974). While provisions of the constitution that are applicable in general to all citizens must be accommodated to institutionals needs and objectives, no wall separates the constitution from prison inmates. Wolf V. McDonnell, 418 U.S. 539, 555-556 (1974).

Thus, in United States V. Cohen, 796 F.2d 20, 24 (2d Cir. 1986), the court held

---

[4] Donald A. Harwood represented Rice on his first Rule 30 Motion and First Direct Appeal to the Supreme Judicial Court.

17

that a prisoner does have Fourth Amendment protection against searches for incriminating evidence, undertaken at the behest of Law Enforcement, for other than legitimate institutional concerns. In so ruling, the court stated," The door on prisoner's rights against unreasonable searches had not been slammed and locked." Id. A search of an inmate's and his belongings" at the instigation of non-prison officials for non-institutional security reasons" may be challenged on Fourth Amendment grounds. Id.

Likewise, the search and seizure of items from Rice in this case was admittedly at the instigation of non-prison officials and for non-institutional security reasons, accordingly, Rice enjoyed constitutional protections under the Fourth Amendment and Article 14. See United States V. Cohen, 796 F.2d at 34. In order to prevail, the complainant need prove only that the search or seizure was illegal and that it violated his reasonable expectation of privacy in the item or place at issue. See, e.g., Rawlings V. Kentucky, 488 U.S. 98, 104 (1980). Rice has met these burdens.

"Fourth Amendment claims should be extended to Sixth Amendment ineffective-assistance-of-counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue." Kimmelman, 477 U.S. at 382-383. Competent counsel " requires the

guiding hand of counsel at every step in the proceedings against him". Powell V. Alabama, 287 U.S. 45, 69 (1932). "Fourth Amendment claims that could lead to a reversal of the defendant's conviction on Sixth Amendment grounds are potentially outcome-determinative claims. No reasonable lawyer would forgo competent litigation of Meritorious" Fourth Amendment Claim. Kimmelman, 477 U.S. at 398, n.7. Either Owens or Harwood were competent in regards to this matter, and Rice has demonstrated this burden.

Rice will now demonstrate the second prong of the Kimmelman Test, 477 U.S. at 365. There was no print, hair, fiber or blood evidence presented at the trial which in any way linked Rice to the crimes charged. Rather, the Commonwealth's proof against Rice at trial consisted of the following:

(a) The illegally obtained DNA evidence which was the cornerstone of the Commonwealth's case. Without it, there would have been no forensic evidence linked to Rice; a jury undoubtedly would have acquitted Rice. This evidence only demonstrated Rice had sex with the victim but the Prosecutor used it to amend a Rape Charges (See Argument, iii. A), and (b) witness hearsay testimony allegedly indicated that Rice subsequently admitted committing the crime, including testimony from an immunized

19

witness, Alan Paine and his various family members and friends. Hereto Owens was ineffective because he failed to effectively impeach, confront and cross-examine these Hostile Witnesses, Including with favorable proofs. Absent the illegally seized DNA Evidence "there is a reasonable probability that the verdict would have been different" Ibid. Especially giving the fact other women have been murdered in the same manner before and after Rice's wrongful conviction, which is the working of one serial Killer. See, e.g., Boston Herald Article, "Ex. L"

Accordingly, this error warrants a reversal and/or the exclusion of DNA Evidence in the event of retrial on other grounds.

(iii)

Counsel's Failure To Raise Meritorious Issues

A. Rice Was Denied Due Process Of Law Under The State And Federal Constitutions When During Trial The Indictment Was Amended With Felony Murder Charge Depriving Him Fair Notice Of Criminal Charges