# EXHIBIT "D"

*Welcome to the Massachusetts Justice System!*

# Suffolk DA clears Greco posthumously on 1965 murder rap

**By J.M. LAWRENCE**

Louis Greco died behind bars for murder after maintaining his innocence for 30 years.

Now the Suffolk District Attorney's office finally believes him.

Greco, a World War II veteran hobbled by a shot to the ankle in the Philippines, always claimed he was in Florida on March 12, 1965, when the mob shot Edward Deegan in a Chelsea alley. He passed three polygraphs and won two commutations that were never acted upon by former governors.

In a motion quietly filed in Suffolk Superior Court in September, the DA's office finally acknowledged what new testimony and <u>secret FBI memos uncovered recently have revealed.</u>



**GRECO: Cleared of murder charge by DA after dying in jail.**

*The FBI is holding evidence that will exonerate me too.*

Greco was framed by mob hit man-turned-government witness Joseph Barboza.

"It appears that justice may not have been done," Assistant DA Mark Lee said in the motion to drop all charges against Greco posthumously. The motion cites "legal and ethical considerations raised by the newly discovered FBI documents, as well as principles of consistency and fundamental fairness" as the reasons.

The DA's office dropped the charges against Greco's co-defendants Peter J. Limone and Joseph Salvati in January 2001. Limone was released after 33 years behind bars. Salvati was in prison for 30.

For Greco's family and friends, the DA's motion is a mere formality in a long battle to clear Greco's name and seek compensation from the FBI for backing perjured testimony in the case.

"Big (expletive) deal," said one longtime friend of Greco's about the move to drop the charges.

The Justice Department refuses to settle the lawsuits filed by Greco's estate, Limone and Salvati. The government has argued it can't be held responsible for the actions of FBI agents under tort laws in effect in the 1960s.

Former New England Mafia leader Francis P. Salemme told congressional investigators that former FBI agent Dennis Condon met with him after the Deegan verdict in 1968 and laughed about setting up Greco.

Greco was 78 when he died in a prison hospital in 1995 from colon cancer and heart disease. He suffered horribly, according to the suit filed by his son, Edward Greco. He could not get proper care for his diabetes and lost a leg to amputation.

His sons grew up without their father and watched him deteriorate in prison. Both men fell into deep depressions as adults. Louis Greco Jr. committed suicide by drinking a bottle of Drano in 1997, court papers said.

Attorney Howard Friedman, who represents Edward Greco, said the DA's decision to drop the charges will aid his lawsuit.

"He knew his father didn't do it," Friedman said. "This was an innocent man who was framed, and the most amazing part is the government knew it."

*Please help my Family and I receive Justice, while I am still alive. Don't let me have to meet the same fate as the poor Mr. Greco to receive Justice because that would be <u>UNAMERICAN.</u>*

# EXHIBIT "E"

# Consultant has roots in religion

**By MICHELE McPHEE**

The symbol of the Mississippi-based fingerprint company that has been paid $250,000 in a no-bid contract by the BPD to analyze a backlog of latent prints is a Christian fish — and the firm's "philosophy" is a homespun aphorism invoking God's munificence.

On the Ron Smith and Associates Web site, the 3-year-old forensic consulting company states its philosophy: "GOD created only two kinds of days: Good Days and Great Days! One of the greatest blessings in life is that YOU get to pick which one YOU are going to have each morning when YOU wake up!"

The Web site does not link to president Ron Smith's resume or indicate past experience, but lists itself as a "forensic consulting, managing, and training" firm.

Still, the company motto is not rooted in any law enforcement principles.

Instead it reads, "We do the right thing because it is the right thing. We need no other reason!"

This week, the BPD provided a copy of Smith's resume. It showed that from 1987 until June 2002, when he started his company, Smith was an associate director of the Mississippi crime lab.

Before that, he spent a single year from 1972 to 1973 as an FBI fingerprint technician before moving to the Alabama Bureau of Investigation, where he worked until he was hired at the Mississippi Crime Lab.

Last week, Police Commissioner Kathleen O'Toole said Smith and his experts were the only company with the availability and expertise to examine the backlog of BPD prints. The contract Smith received — and is expected to be extended — was not put out to public bid.

"His company is the only entity that could do this work," said BPD legal adviser Amy Ambarick.

Exhibit No.

PAGE No.
1 of 2

# Police keep fingerprint unit empty

## Firm grabbed $250G, looking for extension

**By MICHELE MCPHEE**

Nearly a year after the Boston Police Department shut down its fingerprint unit and paid an out-of-state firm almost a quarter million dollars to clear up the city's backlog of evidence, the BPD still has not hired its own fingerprint experts.

As a result, Police Commissioner Kathleen O'Toole plans to extend the pricey no-bid contract with Ron Smith and Associates — a Mississippi-based company that has already billed the BPD almost $250,000 in consulting fees, travel expenses, hotels, food and even lab coat costs, according to documentation obtained by the Herald.

The technicians are also paid $1,000 a day to testify about latent prints at court hearings, most recently at a homicide trial in Suffolk County this March.

The $204,618 contract ends on Sept. 30, but no civilian scientists have been hired, forcing the BPD to extend it to prevent another backlog of evidence from building up. Before the contract was in place, the BPD paid the company $42,577 — money that is now being questioned by watchdog groups.

"I truly believed we would get this done a lot faster," O'Toole said this week, referring to the delay in hiring in-house experts. "We had to negotiate with the union and identify the possible civilians to work in the unit."

O'Toole said she plans to hire a total of six forensics experts to work in the ID Unit. Police officers will no longer be responsible for examining latent prints.

The unit was shut down in October after Ron Smith and Associates wrote a scathing report about the BPD fingerprint unit shortly after a Roxbury man, Stephen Cowans, spent six years in jail because shoddy fingerprint analysis falsely linked him to the crime. Ron Smith was paid $16,705 for the report.

And, weeks before the unit shut down, the company was paid $25,872 for "fingerprint classification training," money that the executive director of the Boston Finance Commission said should not have been paid without a contract. The money came from the Law Enforcement Trust Fund, money seized from drug dealers earmarked for narcotics enforcement.

"You can't pay anyone $25,000 to do anything without a formal contract from the city," FinCom chief Jeff Conley said. "You just can't go out and spend public money without a contract in that amount."

Conley would not say whether the BPD could extend the contract without putting out to public bid, saying: "I have not seen a contract."

BPD legal adviser Amy Ambarik said the contract will be extended without being put out to public bid, saying, "the terms have not been solidified as of right now."

# EXHIBIT "F"

# Boston lawyer Owens faces suspension

**By ERIC CONVEY**

One of Boston's highest-flying legal eagles is fighting to keep his wings from getting clipped.

Civil rights lawyer Henry Owens III, who has fought some of the biggest race-related cases in recent Boston history, will be banned from practicing law for four years if the Board of Bar Overseers and Supreme Judicial Court follow a recommendation from a single BBO hearing officer.

In a scathing report, the hearing officer concluded that Owens gave false testimony in a case and over the course of several years in a case and over the course of several years held onto nearly $100,000 that was not rightfully his. In one disciplinary case, hearing officer John I. Mirick wrote, Owens offered "testimony (that) is not credible."

Owens said last night that he was sure he'd be "vindicated" by the state's high court, if not by a Bar panel that reviews Mirick's report.

"I've been a fighter my entire career and I do not intend to stop fighting now — especially when an injustice has been served," Owens said.

In addition to criticizing the way that Owens handled money on three occasions, Mirick slammed the lawyer for the way he represented himself during disciplinary hearings last January.

**OWEN: Vows a fight because "an injustice" has been done.**

"I do not find that Owens knowingly gave false testimony in the disciplinary proceedings," Mirick wrote. "Rather, I find that he had forgotten his prior testimony and, somewhat astonishingly for an experienced trial attorney, failed to review the prior testimony before testifying in the disciplinary hearing."

Working against Owens, Mirick wrote, is that the alleged misconduct was not carried out in the zealous defense of a client but was apparently for personal financial gain. Mirick suggested that Owens was having money problems at the time he allegedly held onto funds that should have been kept in escrow or returned to clients.

Most or all of the funds have since been returned, some after legal action. A board of overseers decision would not protect Owens from further legal action.

In one instance, Mirick alleges that Owens misrepresented himself in a case involving $50,000 claimed by the federal Department of Housing and Urban Development.

Popular within the defense bar, Owens is a flamboyant crusader against the status quo and a frequent critic of the Boston Police Department.

Among Owens' high-profile cases, he successfully sued the city for the widow of the Rev. Accelynne Williams, who died of a heart attack as police mistakenly stormed his home in a misguided 1994 drug raid.

Owens also represented appeals court Judge Frederick Brown after Brown got into trouble with the Judicial Conduct Commission for making hostile remarks about the way judges are picked.

---

Attorney Owens basically stole my family and I money because my parents gave him twenty-five thousand dollars and he refused to file any standard pretrial motions. Had these motions been filed the false charges against me would of been dismissed or I would of been exonerated by an jury of my peers!

In fact I had no defense at all against my false charges!

# EXHIBIT "H"

# New trial backed in girl's slaying

## Appeals Court faults lawyer's strategy

### By John Ellement
GLOBE STAFF

Exhibit No. 17

A prominent Boston defense attorney was called "foolhardy" yesterday by the state Appeals Court for his all-or-nothing defense strategy in a murder case that denied the jury a chance to convict his client of assault instead of murder.

In a 3-0 ruling, the court said Abigail Gilliard is entitled to a new trial because of strategic decisions made by Henry Owens 3d during Gilliard's 1993 Suffolk Superior Court trial.

Alluding to the same strategy used by defense lawyers in the Louise Woodward case, the court said "an 'all or none' strategy ... that involved throwing away the chance of a mere assault and battery conviction was quite foolhardy."

Gilliard is one of three women – all of whom where then teenagers – who were charged with stabbing 17-year-old Yolanda Carter to death during a melee on Shawmut Avenue in Roxbury on Jan. 28, 1990.

After court battles, one woman, Nicole Badgett, was acquitted by a jury last year. The other defendant, Key

APPEAL, Page B5

# Appeals Court faults lawyer, backs new trial in slaying

**■ APPEAL**
Continued from Page B1

sha Allen, pleaded guilty to manslaughter and was placed on five years probation.

Gilliard was tried separately and convicted of second-degree murder as a joint venturer – and not as the stabber – by a Superior Court jury. She was sentenced to life imprisonment, but was later released by a Superior Court judge who granted her a new trial.

As a condition of her release, Gilliard was ordered to wear an electronic bracelet and remain at home. Last year, however, Gilliard re-

moved the bracelet. She now faces a default warrant for failing to keep court appearances.

In yesterday's ruling, the court said Owens wrongly adopted a risky strategy of hoping the jury would acquit Gilliard of all charges – instead of asking for the trial judge to also give the jury the option of convicting Gilliard only of assault and battery.

The court said there was evidence that Gilliard had participated in beating Carter before Carter was stabbed, but that there was "no direct evidence of who did the stabbing." The court also said prosecution witnesses quoted Gilliard as having bragged about killing Carter,

but said there was no other evidence linking her to the stabbing.

The court said Gilliard would have faced a maximum of two and a half years in prison if convicted of assault and battery – as opposed to the life sentence second-degree murder carries. The court also said Owens did not discuss his strategy with Gilliard as he should have.

Gilliard's new attorney, John H. Cunha Jr., yesterday emphasized that Gilliard would not have won a new trial if it was not for Owens' willingness to acknowledge in court papers that he made a mistake in the Gilliard trial.

"In the highest tradition of the

law, he admitted he was wrong," Cunha said of Owens. "He didn't try to hide behind his reputation, which is justifiably that of one of the best lawyers in town. I would say Henry acted with the greatest honor."

According to Cunha, Owens was convinced after hearing the prosecution's case that there was not enough evidence to convict Gilliard of murder.

Owens could not be reached for comment last night.

A spokesman for Suffolk District Attorney Ralph C. Martin 2d said yesterday prosecutors will appeal to the Supreme Judicial Court.

# EXHIBIT "I"

# Federal judge up in arms over prosecutors' evidence gaffes

**By J.M. LAWRENCE**

An irate federal judge ordered U.S. marshals to be ready to yank U.S. Attorney Michael J. Sullivan out of a dentist's chair yesterday morning when the top prosecutor failed to appear to defend his office's late disclosures of evidence.

"I've got the U.S. marshal here, because I was contemplating sending him to the dentist," U.S. District Court Judge Mark L. Wolf said from the bench yesterday.

Just before 9 a.m., Wolf ordered Sullivan to personally appear at 10 a.m. to face questions about a series of cases after previously undisclosed evidence detailed Wolf's schedule in a Swansea gun and drug case.

Prosecutors' failure to hand over evidence has led to two mistrials in Wolf's courtroom already this year, while on Monday, U.S. District Court Judge Joseph L. Tauro stopped a bank robbery trial when prosecutors failed to hand over incriminating.

Sullivan yesterday chose to keep a 10 a.m. appointment for a speaking engagement in Plymouth and sent the chief of the office's criminal division, James B. Farmer, to Wolf's courtroom.

"Quite frankly, I really would have expected that a speaking engagement wouldn't trump a court order," Wolf said.

The judge ordered Sullivan to file an affidavit by noon today "to explain why he has willfully disobeyed my order to 'be here' and to appear before Wolf on Monday.

Sullivan declined comment on the incident but said his office would file the affidavit today.

The judge's ire comes as defense attorneys are clamoring about an alleged pattern of prosecutors withholding evidence they are legally obligated to turn over to defendants well before trial.

"This series of events shows there is a real systemic problem with prosecutors and agents not paying proper attention to their obligations," said attorney Charles Rankin, president of the defense lawyers association.

Sullivan dismissed the claim, citing an earlier affidavit he filed with Wolf stating the office faced 19 alleged disclosure violations out of more than 800 criminal cases in the past two years.

"There's no basis. Our experience is just the opposite," Sullivan said. "We're fully committed to timely and complete compliance with our discovery obligation."

He called recent incidents "unintentional" stemming from "human error" when prosecutors are faced with hundreds of reports and other documents before trial.

In the case before Wolf yesterday, a prosecutor revealed he had just discovered an additional state trooper's report about the night police raided a Swansea motel room on April 23, 2001. A 16-year-old girl reported two armed drug dealers had raped her and were holding a 15-year-old girl captive.

Attorney Stephen Hrones, who represents one of the accused men, Leonard Baskin, said the report contradicts police claims that they found a gun under a mattress when they busted into the room and searched for more suspects.

Hrones has asked Wolf to throw out evidence of the gun because police had no search warrant to look under the mattress. The newly obtained report shows the 15-year-old victim told police that night where to find the gun.

Baskin, 24, who has a prior criminal record, faces substantial additional prison time if convicted of possessing a gun in addition to cocaine found in the motel.

Wearing an orange prisoner's jumpsuit yesterday, Baskin sat with his head in his hands as the judge ticked off cases in which he found prosecutors failed to produce evidence on time.

Wolf, who held the landmark hearings in 1998 that exposed the FBI's relationship with gangster informants, declared a mistrial on Friday in a case involving a felon found with a gun in his pants during a traffic stop in West Bridgewater.

In April, the judge threw out a case against an alleged marijuana dealer three months after declaring a mistrial in the case and accused federal prosecutors of a pattern of "extreme misconduct."

Rankin attributes the problem to a lack of training for police and other government agencies who don't open their files fully to prosecutors. "I think the overwhelming majority of prosecutors do their best to comply with their obligations. There's an institutional problem," he said.

B.H. 11/21/02

Boston Herald Newspaper, Nov. 21, 2002

# EXHIBIT "J"

B.H. Newspaper PAGE No. 33. May 30, 2005

# Mobster walks today but victim's kin says he did it

**By J.M. LAWRENCE**

A Boston mob leader — who plead guilty to murder but claimed he didn't do it — can walk free today after a federal judge overturned his 22-year sentence because of prosecutors' misconduct.

An appeals court late yesterday refused to stop Vincent "The Animal" Ferrara's release while federal prosecutors appeal U.S. District Court Judge Mark Wolf's ruling the government withheld evidence during plea negotiations in 1991.

Massachusetts U.S. Attorney Michael Sullivan claims Ferrara, 56, poses "an immediate and significant danger to the public," but the court said the government didn't prove it.

"He wants to get home to his family," Ferrara's attorney Martin Weinberg said yesterday.

After 16 years behind bars without a single infraction, the Mafia capo plans to live with family in Marlboro and is about to become a grandpa.

He wasn't supposed to taste freedom until 2009 under a plea agreement he took to avoid a life sentence.

But two years ago, a witness came forward claiming an FBI agent and a federal prosecutor pressured him to testify that Ferrara ordered the 1985 murder of disloyal foot soldier James "Vincent" Limoli, 25.

The judge found a federal prosecutor tampered with a Boston police memo about the witness's attempt to recant.

Limoli's family said they're angry at the judge. "It feels like a slap in the face to us because Vinny did it. Vinny is an evil man. He's a murderer," Limoli's sister, Elizabeth DiNunzio, said yesterday.

But DiNunzio said she won't romanticize her brother, either. "I think I'm more mad at the judge than Vinny Ferrara because I know my brother did the same damn things," she said.

# Judge chides prosecutors

**By J.M. LAWRENCE**

A federal judge again accused federal prosecutors of sitting on exculpatory evidence but did not grill U.S. Attorney Michael Sullivan yesterday when he complied with an order to appear.

"I continue to find there is a persistent pattern of failure to discharge evidence in a timely way," said U.S. District Court Judge Mark L. Wolf.

The judge accepted Sullivan's explanation for why he did not immediately comply with an order to appear last week after a newly found state trooper's report surfaced in a Swansea drugs and gun case.

Wolf had threatened to have federal marshals bring Sullivan from a dentist appointment.

Sullivan yesterday told the judge it was "impossible" for him to appear on less than an hour's notice because he was in Holbrook at rush hour.

"I've never once disregarded a court order," Sullivan said.

Wolf maintained he has authority to order Sullivan to appear at any time.

Wolf has declared two mistrials this year based on late evidence while another judge delayed a bank robbery trial last week when prosecutors waited to reveal fingerprints.

Yesterday, the judge noted a notorious case in which the FBI withheld evidence leading to a wrongful conviction that was never corrected by the judiciary, he said.

"We live in a commonwealth that has to live with the memory of Joseph Salvati being imprisoned for 30 years," Wolf said.

# Sentence Of Mob Boss Is Vacated

A federal judge vacated the prison sentence of a Mafia captain after concluding that prosecutors withheld key evidence during plea negotiations in the case in order to force him into admitting murder.

Vincent Ferrara pleaded guilty to racketeering and other charges in 1992, but also admitted to a 1985 murder he probably didn't commit, U.S. District Court Judge Mark L. Wolf found, because a prosecutor failed to disclose evidence that would have helped exonerate him of the killing.



**WOLF**

"The government's misconduct utterly undermines the court's confidence in the outcome of Ferrara's case," Wolf wrote in a 124-page ruling issued almost a year after hearing where a Boston police detective's memo that was never provided to Ferrara's lawyers.

The judge's decision means that Ferrara, a Boston College-educated mob capo, could be freed as a soon as next month, rather than his scheduled release date of January 2009.

Wolf has frequently been critical of government misconduct in mob prosecutions.

Wolf, in his ruling, said there was evidence that Assistant U.S. Attorney Jeffrey Auerhahn did not tell Ferrara's lawyers that a key government witness tried to recant his allegation that Ferrara ordered the 1985 killing of Vincent "Jimmy" Limoli, a turncoat mob foot soldier.

The witness, Walter Jordan, claimed he was bullied by federal prosecutors to stick to his original story that Ferrara had ordered the killing of Limoli.

Ferrara, who faced life in prison if convicted of being involved in three murders he was charged with as part of the case, was sentenced to 22 years after pleading guilty to racketeering, gambling, extortion and ordering Limoli's murder.

After the plea, Ferrara told probation officials that he had not ordered Limoli's murder, but felt he had no choice but to plea to it, because if he maintained his innocence at trial and a jury convicted him, he would have faced a life sentence, according to Wolf's decision.

Ferrara's attorney, Martin G. Weinberg, said his client has always insisted that he never ordered Limoli's killing.

Wolf scheduled a May 3 re-sentencing date for Ferrara, who is in a federal prison in Pennsylvania.

U.S. Attorney Michael J. Sullivan said he has not decided yet whether to appeal Wolf's decision to dismiss the original sentence.

# EXHIBIT "K"

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|                       |   |                        |
|-----------------------|---|------------------------|
| JORDAN MARTELL RICE   | ) |                        |
|                       | ) |                        |
| VS.                   | ) | Case No. 04-10859-MLW  |
|                       | ) |                        |
| TIMOTHY HALL          | ) |                        |

## **OPPOSITION TO PETITIONER'S REQUEST FOR NEW COUNSEL**

Now comes Eugene Patrick McCann, appointed counsel for Jordan Martell Rice, the
petitioner in the above-entitled habeas corpus matter, and respectfully Opposes the petitioner's
letter Request for New Counsel.

As grounds for this Opposition, Attorney McCann states as follows:

## **BREAKDOWN IN COMMUNICATIONS**

When Attorney McCann was appointed as counsel for the petitioner, he was instructed to
review the Petition filed by Mr. Rice, the Commonwealth's Motion to Dismiss, and Mr. Rice's
state court filings and files. Since that time, Attorney McCann has retrieved Mr. Rice's state
court files from his prior counsel and discussed Mr. Rice's petition and the Commonwealth's
Motion to Dismiss. Attorney McCann has received and reviewed several letters from Mr. Rice
outlining his position of various issues, researched the issues raised by Mr. Rice and discussed
them with Mr. Rice by telephone on numerous occasions. Some of those issues appear to be
meritorious, but must first be raised in the Massachusetts state courts. Other issues were deemed
less or not meritorious. Attorney McCann specifically counseled Mr. Rice that if this Court
denies the Commonwealth's Motion to Dismiss his habeas corpus petition, then Mr. Rice should

seek assistance through the CPSC to pursue his "other" issues in the Massachusetts state court system before Attorney McCann's office can pursue these issues in this Court.

In all, Attorney McCann has talked with Mr. Rice by telephone on at least six (6) occasions, including just prior to filing the Opposition and Memorandum in Opposition to the Commonwealth's Motion to Dismiss on behalf of Mr. Rice on July 20, 2005. Attorney McCann emphatically denies he was "pugnacious" toward Mr. Rice during this conversation or at any other time. During this conversation, Mr. Rice verbally agreed to the position taken by Attorney McCann. However, Attorney McCann did inform Mr. Rice that he would not pursue any issues which he (Attorney McCann) deemed not to be meritorious. A copy of the Opposition and Memorandum was mailed to Mr. Rice.

In addition, with the permission of Mr. Rice, Attorney McCann has discussed Mr. Rice's case with his mother on at least twelve (12) occasions. The only times when Attorney McCann has not taken Mr. Rice's collect calls or the telephone calls of his mother was when he was either out of the office or otherwise detained with other clients.

Accordingly, Attorney McCann denies there has been any breakdown in communications with Mr. Rice.

## CONFLICT OF INTEREST

Attorney McCann admits that, as an officer of the court, he will not pursue any issues which he reasonably believes to be non-meritorious, and he informed Mr. Rice of this position on more than one occasion. Attorney McCann further admits it is his position that the so-called "bloody palm print" evidence is such a non-meritorious issue. This, however, is not a conflict of interest.

-2-

## **CONCLUSION**

It is the position of Attorney McCann that he properly followed the instructions of th s

Court in this case. He has (a) communicated on several occasions with Mr. Rice and his mother,

(b) reviewed all documents provided to him, (c) met in person with Mr. Rice when it was

necessary to do so, (d) filed the appropriate documents, and (e) provided Mr. Rice with all

documents filed by him. Attorney McCann stands ready and willing to complete his

representation of Mr. Rice in this case.

For the foregoing reasons, Attorney McCann opposes the petitioner's Request for New

Counsel.

> Respectfully submitted for,
> Jordan Martell Rice, by his Attorney,

> Eugene Patrick McCann, BBO #327400
> Manzi and McCann
> 59 Jackson Street
> Lawrence, Massachusetts 01840
> Tel. (978) 686-5664

DATED: August 16, 2005

## CERTIFICATE OF SERVICE

I, Eugene Patrick McCann, counsel for Jordan Martell Rice certify under the pains and penalties of perjury, that I have on this 16th day of August, 2005, served a copy of the foregoing electronic filing to:

Maura D. McLaughlin
Assistant Attorney General
Office of the Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108

And by first class mail, postage prepaid to:

Jordan M. Rice, #W65429
Shirley (M.C.I.)
P.O. Box 8000
Shirley, Massachusetts 01464

Eugene Patrick McCann

-4-

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
JORDAN MARTELL RICE                 )
                                    )
VS.                                 )        Case No. 04-10859-MLW
                                    )
TIMOTHY HALL                        )
                                    )
```

## AFFIDAVIT OF ATTORNEY EUGENE PATRICK McCANN IN SUPPORT OF HIS OPPOSITION TO PETITIONER'S REQUEST FOR NEW COUNSEL

I, Eugene Patrick McCann, being under oath, do depose and state as follows:

1. I am the appointed appointed counsel for Jordan Martell Rice, the petitioner in the above-entitled habeas corpus matter.

2. I have personal knowledge of all facts set forth in this affidavit.

3. When I was appointed as counsel for the petitioner, I was instructed to review the Petition filed by Mr. Rice, the Commonwealth's Motion to Dismiss, and Mr. Rice's state court filings and files.

4. Since my appointment, I have retrieved Mr. Rice's state court files from his prior counsel and discussed Mr. Rice's petition and the Commonwealth's Motion to Dismiss.

5. I have received and reviewed several letters from Mr. Rice outlining his position of various issues, researched the issues raised by Mr. Rice and discussed them with Mr. Rice by telephone on numerous occasions. Some of those issues appear to be meritorious, but must first be raised in the Massachusetts state courts. Other issues were deemed less or not meritorious.

6. I specifically counseled Mr. Rice that if this Court denies the Commonwealth's Motion to Dismiss his habeas corpus petition, then Mr. Rice should seek assistance through the

CPSC to pursue his "other" issues in the Massachusetts state court system before my office can pursue these issues in this Court.

7.    In all, I have talked with Mr. Rice by telephone on at least six (6) occasions, including just prior to filing the Opposition and Memorandum in Opposition to the Commonwealth's Motion to Dismiss on behalf of Mr. Rice on July 20, 2005. I emphatically deny that I was "pugnacious" toward Mr. Rice during this conversation or at any other time. During this conversation, Mr. Rice verbally agreed to the position taken by me. However, I did inform Mr. Rice that I would not pursue any issues which I deemed not to be meritorious. A copy of the Opposition and Memorandum was mailed to Mr. Rice.

8.    In addition, with the permission of Mr. Rice, I have discussed Mr. Rice's case with his mother on at least twelve (12) occasions. The only times when I have not taken Mr. Rice's collect calls or the telephone calls of his mother was when I was either out of the office or otherwise detained with other clients.

9.    Accordingly, I deny there has been any breakdown in communications with Mr Rice.

10    I admit that, as an officer of the court, I will not pursue any issues which I reasonably believe to be non-meritorious, and I informed Mr. Rice of this position on more than one occasion. I further admit it is my position that the so-called "bloody palm print" evidence is such a non-meritorious issue. This, however, is not a conflict of interest.

Signed under the pains and penalties of perjury this 16th day of August, 2005.

/s/ Eugene Patrick McCann

Eugene Patrick McCann, BBO #327400
Manzi and McCann
59 Jackson Street
Lawrence, Massachusetts 01840
Tel. (978) 686-5664

## **CERTIFICATE OF SERVICE**

I, Eugene Patrick McCann, counsel for Jordan Martell Rice certify under the pains and penalties of perjury, that I have on this 16th day of August, 2005, served a copy of the foregoing electronic filing to:

Maura D. McLaughlin
Assistant Attorney General
Office of the Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108

And by first class mail, postage prepaid to:

Jordan M. Rice, #W65429
Shirley (M.C.I.)
P.O. Box 8000
Shirley, Massachusetts 01464

/s/ Eugene Patrick McCann

Eugene Patrick McCann

-3-

EXHIBIT "L"

# Classification Report

**Name:** JORDAN RICE                    **Commitment#:** W65429

**Class Type:** Subsequent Hearing

## Board Recommendation:

**Date:** 20050816            **Level:** 5   **Site of Hearing:** OLD COLONY CORRECTIONAL CENTER

**Institution:** OLD COLONY CORRECTIONAL                    **Vote:** 3-0

**Screen For:** CENTER                    **Chairperson:** Damiano,Maureen

                              **Board Member 1:** Motta,Donna

**Placement Site:**                    **Security Board Member** Fallon,Christopher

### Board's Rational:

Based on the need for resolution of his appeal for his pending DDU placement. Subject has several documented enemies in the DOC and therefore current placement is appropriate.

**Review Date:**   20060216            **Reviewed By:**

**User(L,F,M,S):** Maureen Damiano C

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Advised of Recommendation | Yes [X] | No | [ ] | Early Parole | [ ] | Work Crew | [ ] |
| Advised of Appeal Process | Yes [X] | No | [ ] | Education Release | [ ] | PRA | [ ] |
| 48 Hour Notification | Yes [X] | Waive [ ] | | Work Release | [ ] | PRA Hours | |
| | | | | Public Speaking | [ ] | Others | |

## Classification Appeal

### Reason for appeal

Classification appeal --Mr. Rice now appeals the Classification Board's recommendation to remain at OCCC and requests to be transferred to MCI Gardner because his civil liberties are being circumvented here at OCCC in the same manner as at SBCC to make Rice look like a liar or unruly prisoner as set forth in the four supporting grounds:  1.  Rice has been denied access to his DDU Hearling Results on D Report No 51050 to circumvent his appellate process because there is video evidence that directly contradicts the D report Guilty Findings.   SBCC officials has told Mr Rice " he is going to DDU for filing complaints against the abusive officer and for filing lawsuits about his unconstitutional four year retaliatory confirement in punitive segregation".  Also CO Richard S Peterson stated to Rice "SBCC Officer's and himself (Peterson) were going to get away with mentally, physically and sexually torturing Rice because his uncle is Assistant Deputy Commissioner John Marshall".  Due to the video tape evidence and refusal of results all this seems apparent.  2.  Mr Rice feels he has been assaulted twice by the 3pm-11pm shift officers at OCCC since August 5, 2005 to the present date.  Rice feels OCCC officials are trying to provoke him to react so he looks like a unruly prisoner in there manipulation of the disciplinary process which has resulted in Rice losing all his priviledges until approximately 2007 and 35 months DDU sanction.  This was done by SBCC officials to cut off Rice's access to the outside world so SBCC Officials could continue their mental, physical and sexual torturing of Rice with immunity from the outside world learning of it.  3.  Rice isn't receiving his newspaper on a regular basis in attempt to incite him to lash out in frustration and appears as a unruly prisoner while incarcerated at OCCC.4.  Rice is being didn't access to legal materials Rice has made several specified request that has gone unanswered.  Rice feels this is being done to prohibit him from libigating his state civil litigation and his federal criminal habeas corpus currently presiding before jJustice Mark L Wolf.  Furthermore Rice can't physically go to the Law Library due to his enemy situation.  If he does physically go to the law library and is forced to exercise self defense against one of his enemies.  The DOC will  use this to portray Rice as a unruly prisoner, which is there ultimate golf to continue covering up the mental,

# Classification Report

**Name:** JORDAN RICE                **Commitment#:** W65429        **Institution:** OLD COLONY CORRECTI

**Commitment Date:** 19981020  **DOB:** 19730626  **Status:** ACTIVE        **Unit/Cell/Bed:** SEGREGATION,G5,B

**Class Type:** Subsequent Hearing  **Sec Level:** 5        **PE:**        **Release Date :**

physical and sexual torturing of Rice along with how all his civil liberties has been circumvented via unlwfully confining him in punitive segregation since June 18, 2001 to the present date.Rice freely admits at one point, he wanted to remain at OCCC because he felt and thought he shared a positive relationship with the Brady Administration,et al, amd while incarcerated at OCCC he could be very positive and productive prisoner, especially out of the SBCC abusive environment which would prove to the DOC hierarcy ie Comisioner Dennehy and Dir of Classification Diane Silva that removing Rice out the SBCC Abuse environment is in the best interest of Rice and the DOC because its the lack of leadership ability at the SBCCervironment which is the problem and hence not Rice, perse.  Furthermore Rice hoped being a positive and productive prisoner at OCCC would led to the DOC Hierarcy removing Rice from the to date four year unconstitutional confinement in punitive segregation which is in violation of Blaney v Commissioner, 374 Mass 337 (1978) and place him in the OCCC Protective Custody Unit that will be opening soon.   Conclusion:  Please transfer Rice to MCI Gardner so he can hopefully demonstrate he can be a positive and productive prisoner which he (Rice) wants to be.  Such demonstrations can't be display at MCI Cedar Junction, SBCC or continued confinement in punitive Segregation.  Respectfully submitted...

## Superintendent/Designee Recommendation.

**Level:** 5      **Institution:** OLD COLONY CORRECTIONAL CENTER            **Date:** 20050825

**Screen For:**                **Placement Site:**            **Recommendation:** REMAIN

**Reason/Condition**
Concur


**User(L,F,M,S):** Carol L Lawton

**Early Parole**   [ ]   **Work Crew** [ ]     **Education Release** [ ]        **Work Release**  [ ]

**Public Speaking** [ ]  **PRA**      [ ]     **PRA Hours**              **Others**

## Superintendent/Designee Appeal Decision.

**Superintendent/Designee:**            **Date:**        **Decision:**

# EXHIBIT "N"

# Geoghan suspect says guard allowed him to kill priest

**By Franci Richardson**
GLOBE CORRESPONDENT

WORCESTER — The man charged with killing pedophile John Geoghan accused a correction officer at the maximum-security prison in Shirley yesterday of turning his back on a plot that he knew would result in the former priest's murder.

"Lonergan let me in there to kill . . . I mean, castrate him," an agitated Joseph Druce said of David Lonergan as he was led out of Worcester Superior Court yesterday.

Earlier during the pretrial hearing, Druce said, "I was allowed to go into John Geoghan's cell" while a correction officer knowingly turned his back and went into his office. He later added: "A corrections officer let me kill John Geoghan. . ."

Druce, who had been imprisoned for killing a man in 1988, is charged with the murder of Geoghan, who was strangled in his cell at the Souza-Baranowski Correction Center in Shirley in August of 2003. A law enforcement source with knowledge of the investigation said yesterday after the hearing that Druce has confessed to killing Geoghan. Druce himself has said publicly at a previous court hearing that he "did it for the children."

At yesterday's hearing, Druce also accused Department of Correction officials of covering up for Lonergan.

"This isn't about correction officers, it's about the administration of the DOC," said Druce, who yesterday filed his own motion for a protective order against the department. "My sanity is about to break. They're either going to kill me or I'm going to go nuts, but before that, so help me God, this court will know the whole story."

Druce's mother, Donna Gauthier, said her son is afraid that correction officials will kill him.

"He feels like if he doesn't make the facts known now, he will never get the chance to do that because they've been trying to kill him," she said.

Kelly Nantel, spokeswoman for the department, declined to comment on Druce's allegations. She said Lonergan, who was put on leave during an internal investigation following the murder, was still working as a guard at Souza-Baranowski.

A report released after an investigation into the murder by an independent, governor-appointed panel revealed that Lonergan was the only guard on duty in Druce's area at the time of the killing. He was in a back room fixing his lunch when an inmate working in the area noticed "a head bobbing" inside Geoghan's cell, according to the report.

Druce's attorney said his client's frequent public rantings illustrate why he is mounting an insanity defense.

"This defense is one of a lack of criminal responsibility due to his mental state," said John LaChance, adding that his client is "manic and has a very explosive personality."

"His in-court behavior is reflective of his mental state," LaChance said.

Prosecutors have charged Druce with first-degree murder and have said he carefully plotted to kill Geoghan, who was serving a nine- to 10-year sentence for molesting a 10-year-old boy.

The hearing on a motion to dismiss the charges against Druce was continued until next Thursday. Defense attorneys are trying to get a copy of a videotape that correction officials say was "pirated" from their system and given to a reporter for the Boston Herald, which published photos from it earlier this week.

LaChance said he plans to subpoena the reporter who wrote the story. Worcester Superior Court Judge Timothy Hillman cautioned LaChance against "assigning it value that it doesn't deserve."

Pg. 1 of 2

Pg. 2 of 2

# Prison boss claims she's target of union harassment, threats

**By MICHELE McPHEE**

Kathleen M. Dennehy, the state's first female Department of Correction commissioner, said yesterday she is being harassed by union members who have slashed her car tires, made personal threats and followed her around with a giant inflated rat to undermine her push for more prison accountability.

In an interview at DOC headquarters in Milford, Dennehy said she left prison in recent weeks after her car tires slashed.

She has received telephone written threats, but views any harassment as part of a difficult, dangerous job.

"Accountability is everything in what we do," Dennehy said, adding that her relationship with the Massachusetts Correction Officers Federated Union was fractured last year when she was forced to discipline six correction supervisors accused of abusing a handcuffed prisoner. "My focus is to improve the performance of the organization and that can be threatening to folks," she said.

Union president Steve Kenneway yesterday denied any union member vandalized Dennehy's car or threatened her, calling the accusations "absurd" and "childish."

"She needs to grow up," said Kenneway, whose union demanded her resignation in a letter to Gov. Mitt Romney in February.

The tension between Dennehy and union officials worsened this week after images from a prison videotape appeared in the Herald depicting killer inmate Joseph L. Druce apparently re-enacting the vicious 2003 murder of failed pedophile priest John J. Geoghan.

Dennehy said she believes an employee at the Souza-Baranowski Correctional Center in Shirley, where both were jailed, made an "unauthorized, pirated recording" of Druce's ghastly pantomime. She called the case "unconscionable."

Union officials have faulted Dennehy, saying the DOC should have possession of any and all security footage in the prison system, and not the correction officers.

"We believe she is responsible for any tapes released," Kenneway said. "This is another incident that shows she is unable to manage this department."

# Dennehy deserves better

There is no disputing that corrections officers have a dangerous and mostly thankless job to do.

But when certain union goons resort to bullying their boss because they're dissatisfied with her management, they lose any public sympathy they might earn when they walk through the locked prison doors.

We take Department of Correction Commissioner Kathleen M. Dennehy at her word when she says she has been harassed by some union members who have slashed her tires, made personal threats and followed her around with a giant inflatable rat.

Dennehy is one of those rare public officials who is widely respected on both sides of the aisle and has few detractors — the single exception, perhaps, being the Massachusetts Correction Officers Federated Union.

Talk about thankless jobs —

Dennehy has been charged with implementing the recommendations of the Harshbarger commission, formed after the prison murder of defrocked priest John J. Geoghan — whose report MCOFU dubbed anti-union.

From the day she took over, Dennehy met with resistance from the union, which has issued repeated calls for her termination.

Dennehy is soft-spoken but tough. The harassment, she said, comes with the territory when you're trying to bring discipline and order to a department that lacked it.

Union leaders deny they have threatened Dennehy and issued this petulant response: "She needs to grow up," president Steve Kenneway told the Herald.

This from a man whose union members are using a giant toy rat to try and intimidate her.

And *she* needs to grow up?

# EXHIBIT "O"

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court

CIVIL DOCKET# **MICV2005-02734-K**

RE:    **Rice et al v Dennehy et al**

TO:Jordan M. Rice
   1 Adminisration Road
   Bridgewater, MA 02324

## TRACKING ORDER - A TRACK

You are hereby notified that this case is on the average (A) track as per Superior Court
Standing Order 1-88. The order requires that the various stages of litigation described below
must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 11/06/2005 |
| Response to the complaint filed (also see MRCP 12) | 01/05/2006 |
| All motions under MRCP 12, 19, and 20 filed | 01/05/2006 |
| All motions under MRCP 15 filed | 11/01/2006 |
| All discovery requests and depositions completed | 09/27/2007 |
| All motions under MRCP 56 served and heard | 11/26/2007 |
| Final pre-trial conference held and firm trial date set | 03/25/2008 |
| Case disposed | 08/07/2008 |

The final pre-trial deadline is **not the scheduled date of the conference.**  You will be
notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline
for filing return of service.**

This case is assigned to session **K** sitting **in Rm 9A (Cambridge), Middlesex Superior
Court.**

Dated: 08/11/2005                                         Edward J. Sullivan
                                                          Clerk of the Courts
                                                          BY: Wayne Emerson
                                                          Assistant Clerk

Location: Rm 9A (Cambridge)
Telephone: 617-494-4010 EXT 4271