UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
JORDAN MARTELL RICE            )
                                          )
            Petitioner,              )
                                          )
v.                                       )        Civil Action No. 04-10859-MLW
                                          )
TIMOTHY HALL,                     )
                                          )
            Respondent.           )
_____)

**RESPONDENT'S MEMORANDUM OF LAW
IN OPPOSITION TO PETITIONER'S PETITION FOR
WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254**

The respondent hereby submits this memorandum in opposition to the petition for writ of habeas corpus filed by Jordan Martel Rice ("the petitioner"). As set forth below, the petition pursuant to 28 U.S.C. § 2254 should be denied on the claim asserted in Ground Three of the petition because that claim is barred by the doctrine of procedural default. Moreover, the petition should be denied because the petitioner's claim under the Fourth Amendment (Ground Two of the petition) is not cognizable on habeas review where, as here, the petitioner has had a full and fair opportunity to litigate the issue in the state courts. Furthermore, to the extent that the petition attempts to assert different legal grounds for the claim arising from the facts set forth in Ground Four of the petition than were presented to the Massachusetts Supreme Judicial Court that claim is unexhausted and must be dismissed. Finally, the petition should be denied because the Massachusetts Supreme Judicial Court's decision resolving the petitioner's remaining claims against him was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

## STATEMENT OF THE CASE

I.    **State Court Trial and Direct Appeal**

On October 15, 1996, a Plymouth County Grand Jury returned indictments charging the petitioner with arson and murder in the first degree, in connection with the death of Diane Harrigan, who died from stab wounds on September 23, 12995. *See* Brief of the Defendant-Appellant, attached to the Supplemental Answer ("Supp. Ans."), previously filed, as Exhibit 2, pp. 1-2; *see also* Supp. Ans., Ex. 3, pp. 1-7.

On October 18, 1996, Attorney Russell Redgate entered his appearance as appointed counsel for the petitioner. Supp. Ans., Ex. 3, p. 2.   The Superior Court appointed an attorney to represent the petitioner after Attorney Redgate withdrew as counsel. Supp. Ans., Ex. 3, pp. 3, 64.


A motion to suppress evidence seized from the petitioner's person and from his jail cell was filed on February 7, 1997.  Supp. Ans., Ex. 3, pp. 10-14.

On June 24, 1997, Attorney Henry Owens III and his associate, Lawrence Murray, entered an appearance as retained counsel for the petitioner. Supp. Ans., Ex. 3, p. 4.

On August 28 and September 26, 1997, an evidentiary hearing was held on the petitioner's motion to suppress.  By memorandum and order dated October 9, 1997, the motion was denied.  Supp. Ans., Ex. 3, pp. 18-25.

On August 26, 1998, Attorney Owens filed a motion to withdraw as counsel, citing an irretrievable breakdown of the attorney-client relationship. Supp. Ans., Ex. 3, pp. 5, 26-28.  By the time this motion was filed, the Superior Court had already set a firm trial date of October 5, 1998. *See* Supp. Ans., Ex. 3, p. 5; Supp. Ans., Ex. 4, p. 2.  A hearing was held on the motion to

withdraw as counsel on September 10, 1998, and the motion was denied on September 14, 1998. *Id.*, pp. 5, 63-68.

Trial commenced before a jury on October 13, 1998.  Supp. Ans., Ex. 3, p. 5.  On October 20, 1998, the petitioner was convicted of first-degree murder by extreme atrocity and cruelty, and was also convicted of arson.  *See* Docket Sheet, Supp. Ans., Ex. 1; *see also* Supp. Ans., Ex. 2, pp. 2-3.  The petitioner was sentenced to life in prison for the murder conviction. *See id.*  The petitioner also received a concurrent nineteen-to-twenty year sentence on the arson conviction.  *Id.*

The petitioner filed a motion for a new trial on the grounds of ineffective assistance of counsel.  Supp. Ans., Ex. 3, p. 7; *see also* Supp. Ans., Ex. 3, pp. 35-317.  The motion for a new trial was denied on February 3, 2003.  *See* Supp. Ans., Ex. 3, pp. 318-340.

The petitioner appealed his conviction and sentence, and the denial of his motion for a new trial, to the Massachusetts Supreme Judicial Court ("the SJC").  Supp. Ans., Exs. 2-5.  The SJC affirmed the petitioner's convictions on March 24, 2004. *Id.*, Ex. 6.

## II.    The Instant Habeas Petition

On or about April 29, 2004, the petitioner filed a petition for a writ of habeas corpus in this Court.  As grounds for his petition, the petitioner asserted that (1) he was erroneously denied a pretrial application for discharge of counsel, which, he claims, should have been granted because of a breakdown of the attorney-client relationship (Ground One); his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure (Ground Two);  his conviction was obtained by an improper closing summation on the part of the prosecutor, and the prosecutor's opening was also improper (Ground Three); his conviction was

obtained by a violation of the privilege against self-incrimination (Ground Four); he was denied

effective assistance of counsel (Ground Five); and his conviction was obtained by use of an

improper jury instruction (Ground Six).[1]

## STATEMENT OF FACTS

The Appeals Court's recitation of facts is entitled to a presumption of correctness under

28 U.S.C. § 2254(e)(1).  *See Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000); *Avellar v.

DuBois*, 30 F.Supp.2d 76, 79 (D.Mass. 1998); *Otsuki v. DuBois*, 994 F.Supp. 48, 51 & n.3

(D.Mass. 1998); *cf. Sumner v. Mata*, 449 U.S. 539, 545-46 (1981)(holding that the presumption

of correctness under former habeas statute applied to "factual determinations made by state

courts, whether the court be a trial court or appellate court").  This deference extends to

inferences drawn by the state court from those factual determinations as well.  *See Parke v.

Raley*, 506 U.S. 20, 35 (1992); *Flores v. Marshall*, 53 F.Supp.2d 509, 514 (D.Mass. 1999).

The SJC found the following facts:

On September 22, 1995, the victim attended a wedding reception with friends.  She arrived at approximately 7:30 P.M. and left at approximately 10:30 P.M.  The defendant also attended the reception, staying until about 1 or 1:30 A.M. on September 23.

The victim telephoned her daughter at 1 A.M. on September 23, and there was nothing unusual about her tone of voice.  She left a voicemail message for her boy friend at 1:15 A.M., which was also unremarkable.  At 4:40 A.M. on September 23, neighbors in the victim's Brockton apartment complex awoke to the smell of smoke and telephoned the Brockton fire department.  Fire fighters arrived within minutes and went to the victim's apartment, which was the apparent source of the fire.  The front door was ajar.  They entered and went to the bedroom.  The victim's naked and lifeless body lay on the bed, which was in flames.  A smoke detector had been dismantled and placed under the bed.  An arson investigator determined that attempts

---

[1] In an order dated September 30, 2005, this Court ordered that the other two claims the petitioner had advanced in his petition were to be dismissed as unexhausted.

4

had been made to burn a blood-soaked couch in the living room, but were unsuccessful because the couch was made of flame retardant material. The bed had been set afire by igniting a cardboard box and papers that had been placed under the foot of the bed.

A forensic pathologist determined that the victim had eleven stab wounds and four incised wounds to her body consistent with a single edged knife blade at least two inches long. A wound to her right upper chest corresponded with a punctured blood vessel that supplied blood to the right lung, causing her to bleed to death within minutes. The pathologist estimated the time of death at between approximately midnight and 4 A.M. on September 23, 1995, and that the absence of carbon monoxide in her blood and soot in her lungs suggested that she was dead when the fire started. The presence of full sperm cells in her vagina indicated that she had had sexual intercourse within eighteen to twenty-four hours of the autopsy, which had begun at 1 P.M. on September 23. Deoxyribonucleic acid (DNA) testing established that the defendant was the source of the sperm. There was no other physical evidence connecting the defendant to the victim's apartment.

When the defendant was interviewed by police on January 5, 1996, he admitted knowing the victim and where she lived (they lived in the same apartment complex), but denied ever having sexual intercourse with her. He acknowledged that he was at the wedding reception on September 22, 1995, but said he was alone and left at about 1 A.M. He then went directly home where he stayed for the night.

Several friends and acquaintances of the [petitioner] testified about statements he made. Alan Paine testified that in September, 1995, shortly after the victim was killed, he telephoned the [petitioner] and asked if he was aware of her death. The [petitioner] replied in the negative. When Paine asked if he killed her, the [petitioner] replied that he "can't talk about that," and later told Paine he thought his telephone was tapped. In January or February, 1996, the [petitioner] told Paine, in the presence of Paine's girl friend, that the police took his fingerprints. He then asked Paine how long it would take the police to obtain the results of a fingerprint analysis, and if burning something would destroy prints. In February, 1996, the [petitioner] told Paine and Jamie Baker that he had had a girl friend who "disrespected him, and he had gotten rid of her, and had put plenty of holes in her, and burned her." In March, 1996, the [petitioner] told Paine that he "expected to be arrested for murder" and that the police were "trying to set [him] up like O.J Simpson."

On January 28, 1996, at a birthday party for Joanne Maldonado's daughter, the [petitioner] was being teased by some children about "beating up his girl friend." Maldonado asked him about it and the [petitioner] said "the bitch got what she deserved. I smoked her ass." The [petitioner] then stormed out of the house. Teresa Baker, Maldonado's daughter, overheard the conversation.

5

The [petitioner] testified at trial that he had had consensual intercourse with the victim at approximately 4 P.M. on September 22, 2995, and had begun an intimate relationship with her about one month before. He said he lied to the police about not having sexual relations with her because he was afraid. He denied making incriminating statements to Alan Paine and the others, and he denied killing the victim.

*Commonwealth v. Jordan Martel Rice*, 441 Mass. at 292-294, Supp. Ans., Exhibit 6.

## ARGUMENT

### I.    The Petitioner May Not Be Granted Habeas Review on Ground Three of the Petition Because that Claim is Procedurally Defaulted

In Ground Three of the petition, the petitioner asserts that his conviction was "obtained by [the] improper closing summation of [the] prosecutor."[2]  However, as the SJC noted in its review of the petitioner's state court appeal, there was no objection to the prosecutor's remarks during the trial.  *See Commonwealth v. Jordan Martel Rice*, 441 Mass. at 299, Supp. Ans., Ex. 6; *see also* Supp. Ans., Ex. 2, p. 43 (acknowledging that there was no objection at trial).  This claim was therefore waived in the state court, and federal habeas review is precluded by the procedural default rule.  *See Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir. 1997), *cert. denied,* 522 U.S. 1151 (1998).

In order to preserve a claim for full review in Massachusetts, a petitioner is obligated to

---

[2] The petitioner also argues that the prosecutor's opening statement was improper. *See* Petition, ¶ 12C.  However, the petitioner never presented this argument to the SJC.  *See* Supp. Ans., Ex. 2, pp. 39-43 (addressing prosecutor's closing remarks but never making reference to the opening).  Since this argument was never presented to the SJC, it is unexhausted, and thus may not form the basis for habeas relief. *See Scarpa v. DuBois,* 38 F.3d 1, 6 (1st. Cir. 1994), *cert. denied*, 513 U.S. 1129 (1995)(the petitioner must have stated both the factual and legal basis of his argument in state court in order to exhaust it); *Domaingue v. Butterworth, et al.,* 641 F.2d 8, 12 (1st Cir. 1981)("The exhaustion requirement is not satisfied if the petitioner presents . . . new factual allegations in federal court that transform his claim or cast it in a significantly different light.").   To the extent that the petitioner refers to the prosecutor's opening in his ineffective assistance of counsel claim, that claim is addressed in section IV(C)(2)(f), below.

bring the alleged error to the attention of the judge. *See Brewer*, 119 F.3d at 1001; Mass. R. Crim. P. 22 (the contemporaneous objection rule); Mass. R. Crim. P. 24(b)("no party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict).   The SJC therefore reviewed the unpreserved claims of error only to determine whether the errors alleged created a substantial risk of a miscarriage of justice. *See Commonwealth v. Jordan Martel Rice,* 441 Mass. at 299-302, Supp. Ans., Exhibit 6.   The SJC concluded that the claimed errors in the prosecutor's summation did not create such a likelihood of a miscarriage of justice. *See id.*   This determination constitutes an "adequate and independent state law ground" within the meaning of the procedural default rule, thereby precluding habeas review. *See Brewer*, 119 F.3d at 999.

To overcome this procedural default to permit federal habeas review, the petitioner must demonstrate either (1) cause and prejudice for the default, or (2) a failure to review the claim will result in a "fundamental miscarriage of justice," *i.e.*, the conviction of an innocent person. *Coleman v. Thompson*, 501 U.S. at 750.  In this case, the petitioner cannot demonstrate either. Petitioner's counsel's simple failures to object to the prosecutor's remarks does not establish cause to excuse this procedural default. *See Murray v. Carrier*, 477 U.S. at 486 (counsel's failure to recognize a claim or failure to raise a recognized claim does not constitute "cause"); *Engle v. Isaac*, 456 U.S. at 134 (counsel's alleged unawareness of objection not sufficient to constitute "cause").

Furthermore, even if the petitioner could demonstrate "cause" for his defaults, he cannot demonstrate that he would suffer the genre of prejudice required to excuse those defaults, namely, that the alleged errors "infect[ed] his entire trial with error of constitutional

7

dimensions." *Ortiz v. DuBois*, 19 F.3d 708, 714 (1st Cir. 1994), *cert. denied*, 513 U.S. 1085

(1995), quoting *United States v. Frady*, 456 U.S. 152, 170 (1982).  The SJC reviewed each of the

claimed errors in the prosecutor's closing remarks, and determined that the prosecutor's remarks

were proper and that the prosecutor had not engaged in any misconduct.  *See Commonwealth v.*

*Jordan Martel Rice,* 441 Mass. at 299-302, Supp. Ans., Exhibit 6.  Under these circumstances,

the petitioner can demonstrate no prejudice rising to the level of error "infecting his entire trial

with error of constitutional dimensions.'"  *Ortiz v. DuBois*, 19 F.3d at 714.

      Finally, the petitioner could make no demonstration to this habeas court that he actually

is innocent.  "To establish actual innocence, 'petitioner must show that it is more likely than not

that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"

*Simpson v. Matesanz*, 175 F.3d at 210, quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)

(citations omitted).  The Commonwealth produced ample evidence of the petitioner's guilt.  As

such, this "quite narrow and seldom used" exception to the procedural default doctrine simply

does not apply to this case and habeas review is barred.  *Simpson v. Matesanz*, 175 F.3d at 210.

## II.    The Petitioner's Fourth Amendment Claim Raised in Ground Two Is Barred from Habeas Review by Stone v. Powell.

      In Ground Two of his petition for a writ of habeas corpus (paragraph 12B), the petitioner

asserts that his conviction was obtained by use of evidence gained pursuant to an

unconstitutional seizure in violation of the Fourth Amendment.  This issue was the subject of full

and fair litigation in state court, including an evidentiary hearing and a full appeal, and it may

not serve as the basis for habeas relief.  *See Stone v. Powell,* 428 U.S. 465, 482 (1976);

*Palmigiano v. Houle*, 618 F.2d 877, 878-883 (1st Cir.), *cert. denied* 449 U.S. 901 (1980);

*Pignone v. Sands*, 589 F.2d 76, 77 (1st Cir. 1978).

8

In *Stone v. Powell*, 428 U. S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search was introduced at his trial." *Id.* at 482 (footnote omitted). *See Tart v. Massachusetts*, 949 F.2d 490, 497 n. 6 (1st Cir. 1991). The Court based its decision on its view that the exclusionary rule was a "judicially created means of effectuating the rights secured by the Fourth Amendment," and reasoned that the "additional contribution, if any" of consideration by federal habeas courts of search-and-seizure claims was "small in relation to the costs" imposed by such review. *See Stone,* 428 U.S. at 482, 493. The Court rejected the notion that state courts were not competent forums for the adjudication of Fourth Amendment claims, and stated:

> [W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States. State courts, like federal courts, have a constitutional obligation to safeguard personal liberties and uphold federal law. *Martin v. Hunter's Lessee*, 1 Wheat. 304, 341-44 (1816). Moreover, the argument that federal judges are more expert in applying federal constitutional law is especially unpersuasive in the context of search-and-seizure claims, since they are dealt with on a daily basis by trial judges in both systems. In sum, there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned with respect to the consideration of Fourth Amendment claims than his neighbor in the state courthouse.

*Stone*, 428 U.S. at 493-94, n. 35.

Here, the petitioner claims now, as he claimed in his state court proceedings, that his conviction was obtained by the use of evidence gained pursuant to an unlawful seizure of his bed sheets, inmate uniform, and T-shirt while he was being held at the Suffolk County house of correction. However, this issue has been fully litigated in the state court. *See Commonwealth v.*

*Jordan Martel Rice*, 441 Mass. at 294-295.  The SJC found:

> The [petitioner] filed a motion to suppress certain items, including his bed sheets, his inmate uniform, and his T-shirt, that were seized in August, 1996, by correction officers at the Suffolk County house of correction at South Bay, where the [petitioner] was in custody on an unrelated charge.  It is not disputed that the items were seized without a search warrant, without probable cause, and without the [petitioner's] consent.  The items were seized at the request of the State Police for DNA testing.  The [petitioner] also sought suppression of the fruits of the items seized, including DNA test results.  After a hearing, a judge in the Superior Court denied the motion on the ground that the defendant did not have a reasonable expectation of privacy in the items seized.

*Id.*  The SJC reviewed the petitioner's Fourth Amendment claim, and found that the petitioner "did not have a reasonable expectation of privacy in the items seized . . . .  There was no error in the denial of the [petitioner's] motion to suppress." *Id.* at 295-296.

The burden is on the petitioner to prove any claim that he did not have a full and fair opportunity to litigate his Fourth Amendment claims in state court.  *See Palmigiano*, 618 F.2d at 881-83; *Pignone*, 589 F.2d at 79-80; *Breest v. Helgemoe,* 579 F.2d 95, 104 (1st Cir.), *cert denied* 439 U.S. 933 (1978).   The petitioner has not met, and cannot meet, that burden.  Accordingly, Ground Two of the petitioner should be dismissed.

## III.    TO THE EXTENT THAT THE PETITIONER IS ASSERTING A LEGAL BASIS FOR THE CLAIM ASSERTED IN GROUND FOUR OF THE PETITION DIFFERENT FROM THE BASIS HE ASSERTED IN THE SJC, SUCH A CLAIM IS UNEXHAUSTED AND MUST BE DISMISSED.

In Ground Four of his petition (paragraph 12D), the petitioner asserts that his conviction was obtained through a violation of his privilege against self-incrimination.  *See* Petition*, ¶* 12D.  The petitioner appears to assert that this violation occurred when, during grand jury proceedings, the grand jury heard evidence that he would not submit a DNA sample or fingerprints to the police.   In his brief to the SJC, the petitioner alleged that counsel's failure to move to dismiss

the indictment based on the grand jury testimony constituted part of his ineffective assistance of

counsel claim. *See* Supp. Ans., Ex. 2, p. 13; *see also Commonwealth v. Jordan Martel Rice*, 441

Mass. at 309, Supp. Ans., Ex. 6. He did not, however, make any claim on these facts

independent of his ineffective assistance claim. *See generally* Supp. Ans., Ex. 2. Any such

claim he is now trying to make in his federal habeas petition is, therefore, unexhausted, and may

not serve as the basis for habeas relief. *See Rose v. Lundy,* 455 U.S. 509, 518-19 (1982)*;*

*Scarpa v. DuBois,* 38 F.3d 1, 6 (1st. Cir. 1994), *cert. denied*, 513 U.S. 1129 (1995)(petitioner

must have stated both the factual and legal basis of his argument in state court in order to exhaust

it); *Domaingue v. Butterworth*, *et al.*, 641 F.2d 8, 12 (1st Cir. 1981)(. "The exhaustion

requirement is not satisfied if the petitioner presents . . . new factual allegations in federal court

that transform his claim or cast it in a significantly different light.").

By adding an unexhausted claim to the claims he had exhausted in the SJC, the petitioner

has transformed his petition into a "mixed" petition, *i.e.,* one which contains both exhausted and

unexhausted claims. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). Such a "mixed" petition is

must be dismissed and may not form the basis for habeas relief. *See id.*

In support of this argument the respondent refers to, and incorporates by reference, the

arguments made in its memorandum of law in support of its Motion to Dismiss the Petition for

Habeas Corpus, filed previously.


**IV.    THE PETITIONER IS NOT ENTITLED TO HABEAS CORPUS RELIEF
WHERE THE APPEALS COURT'S ADJUDICATION OF HIS CLAIM WAS NOT
CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY
ESTABLISHED SUPREME COURT LAW.**

A.    **Standard of Review**

Since the instant petition was filed after the effective date of the Antiterrorism and

Effective Death Penalty Act ("AEDPA"), this Court's review is governed by that act.  *Lindh v.*

*Murphy*, 521 U.S. 320, 336 (1997).  *See also* 28 U.S.C. § 2254.  AEDPA "places a new

constraint on the power of a federal habeas court to grant a state petitioner's application for a

writ of habeas corpus with respect to claims adjudicated on the merits in state court."  *Williams*

*v. Taylor*, 529 U.S. 362, 412 (2000); *Williams v. Matesanz*, 230 F.3d 421, 426 (1st Cir. 2000)("a

federal [habeas] court operates within a closely circumscribed sphere").  As the Supreme Court

recently reiterated, AEDPA requires a "'highly deferential standard for evaluating state-court

rulings' . . . which demands that state court decisions be given the benefit of the doubt."

*Woodford v. Visciotti*, 537 U.S. 19, 23 (2002)(*per curiam*), *quoting Lindh*, 521 U.S. at 333, n.7.

In relevant part, AEDPA precludes a federal court from granting habeas relief, unless the state

court adjudication "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States" or was based on "an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  *See* 28 U.S.C. §2254(d)(1-2); *see also Tyler*

*v. Cain*, 533 U.S. 656, 660 (2001).   In addition, under AEDPA, state court determinations of

factual issues "shall be presumed to be correct" unless the petitioner rebuts this "presumption of

correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Coombs*, 202

F.3d at 18.

1.    The "Contrary To" Prong

A state court decision is "contrary to" clearly established Supreme Court precedent in

only two circumstances: (a) where "the state court applies a rule that contradicts the governing law set forth in" Supreme Court cases or (b) where "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor,* 529 U.S. at 405-06. Under either scenario, in order to fall within the "contrary to" clause, the state court decision must be "substantially different," diametrically different," "opposite in character or nature," or "mutually opposed" to clearly established Supreme Court law. *Id.*

2.    The "Unreasonable Application Of" Prong

A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. at 407-09, 413. Merely that the state court reached an incorrect result is not sufficient -- the result also must be unreasonable. *L'Abbe v. DiPaolo*, 311 F.3d 93, 96 (1st Cir. 2002), *citing Williams v. Taylor*, 529 U.S. at 411; *see also McCambridge v. Hall*, 303 F.3d 24, 36-37 (1st Cir. 2002)(en banc)("'some increment of incorrectness beyond error is required' . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court"), *quoting Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). Where, for instance, the state court reaches a result that is "devoid of record support for its support for its conclusion or is arbitrary," the unreasonable application prong likely will be satisfied." *McCambridge*, 303 F.3d at 37, *citing O'Brien v. DuBois*, 145 F.3d 16, 25 (1st Cir. 1998). *See also Kibbe v. DuBois*, 269 F.3d 26, 35 (1st Cir. 2001), *cert. denied,* 535 U.S. 960 (2002); *Hurtado v. Tucker*, 245 F.3d 7, 16

13

(1st Cir.), *cert. denied,* 534 U.S. 925 (2001).   In order for a federal habeas court to find that the

"unreasonableness" prong has been met, the state court's determination of either the law or the

facts must be *objectively* unreasonable.  *See Williams v. Taylor,* 529 U.S. at 411; *Williams v.*

*Matesanz*, 230 F.3d at 426-27; *Torres v. Prunty*, 223 F.3d 1103, 1108 (9th Cir. 2000).

There is no bright-line rule as to what constitutes an "objectively unreasonable"

application of federal law or determination of facts. *Williams v. Taylor*, 529 U.S. at 410 ("[t]he

term 'unreasonable' is no doubt difficult to define").  As the Supreme Court has made clear,

however, an incorrect state court determination is not necessarily an unreasonable one.  *Id.* ("the

most important point is that an unreasonable application of federal law is different from an

*incorrect* application of federal law")(emphasis in original).   It is well-settled that "a federal

habeas court may not issue the writ simply because the court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly.  Rather, that application [or determination] must also be

unreasonable." *Id.* at 411. This same standard should be applied to determine whether a state

court's decision was based on "an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding" under 28 U.S.C. § 2254(d)(2).  *See Torres*, 223

F.3d at 1108 (reasonableness standards under § 2254(d)(1) and (d)(2) are the same).

**B.    The SJC's Decision That the Denial of the Plaintiff's Request to Discharge His Counsel Did Not Violate the Petitioner's Constitutional Rights Was Neither Contrary to Nor an Unreasonable Application of Established Federal Law (Ground One).**

1.    Factual Findings Regarding Petitioner's Claim

14

The SJC found the following facts concerning the petitioner's claim that his rights were

violated when the Superior Court declined to grant counsel's motion to withdraw:

> On August 26, 1998, trial counsel filed a motion to withdraw, alleging in his
> supporting affidavit an irretrievable breakdown of the attorney-client relationship
> arising from the [petitioner's] confrontational attitude and refusal to accept his
> advice.  The hearing on the motion, though spread out over two days, was not
> lengthy. On the second hearing day the [petitioner] asserted that any lack of
> cooperation was not on his part, but on the part of counsel, who insisted on "put[ting]
> up the defense he wants . . .[not] the defense that . . . I want." the judge expressed
> incredulity at the [petitioner's] assertion that counsel failed to communicate with him
> or show him any paperwork that he had done in the case.  Near the conclusion of the
> hearing the [petitioner] stated, "I have no problem going forward with [counsel] if
> we can  . . . cooperate . . . . I'm more than willing to cooperate with him."
>
> In a written decision, the judge, who was also the trial judge, denied the motion.  He
> found "that there had not been an irreconcilable breakdown in the attorney-client
> relationship," and that the [petitioner's] "unjustifiable mistrust []" and "lack of full
> cooperation has not prevented [experienced counsel] from providing a thorough and
> competent representation of the [petitioner].  His pretrial preparations have been
> extensive and include careful preparation and expert consultation on the difficult
> DNA issues."
>
> The judge described in detail the [petitioner's] tortuous history with two previous
> attorneys appointed to represent him in the case.  The [petitioner] had moved to
> discharge his first attorney, for reasons that included counsel's refusal to engage a
> particular person as his private investigator.  That motion was denied after a hearing
> by a different judge, who concluded that the [petitioner's] first attorney "has been
> competent, loyal and diligent in his handling of [the] case thus far."  A second
> attorney was appointed to pursue an interlocutory appeal, but while that matter was
> pending the [petitioner's] family retained his third attorney (trial counsel).  The judge
> noted that, unlike his experience with first counsel, the [petitioner] did not file a
> motion to discharge his third attorney; it was the third attorney who filed a motion
> to withdraw.
>
> The judge noted that a trial date had been set in early October, just five weeks away,
> and that two previously scheduled trial dates had to be changed because of pending
> motions in the case or for reasons attributable to the court's backlog.  The judge also
> considered the statement of the [petitioner] that he had not made arrangements for
> representation by any other attorney, and was not interested in representing himself.

*Commonwealth v. Jordan Martel Rice*, 441 Mass. at 296-297, Supp. Ans., Ex. 6.

2.    <u>Legal Analysis of Petitioner's Claim</u>

The SJC's decision did not run afoul of any established Supreme Court precedent because it properly concluded that the petitioner was not deprived of the right to have counsel assist in his defense. The Sixth Amendment requires not merely the provision of counsel to the accused, but "Assistance," which is to be "for his defence." U.S. Const. Amend. VI. "[T]he core purpose of the counsel guarantee was to assure 'Assistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor." *United States v. Ash*, 413 U. S. 300, 309 (1973). *See United States v. Gouveia*, 467 U. S. 180, 188-189 (1984).

Here, the SJC properly affirmed the Superior Court's decision that counsel could fully and adequately defend the petitioner's interests at trial, and determined that the Superior Court had afforded the petitioner due process of law in examining the issue. The SJC found:

> There is no mechanical test to be applied in deciding a motion to withdraw. *Cf. Commonwealth v. Chavis*, 415 Mass. 703, 711, 616 N.E.2d 423 (1993)[]. Here, the judge considered all the factors relevant to this case. He considered the nature and seriousness of the problem between the [petitioner] and counsel, including the [petitioner's] willingness to cooperate with experienced trial counsel and the extent and high quality of the work and preparation that had been put into the case. The judge also gave a balanced consideration to the legitimate needs of judicial administration. Finally, the judge considered the [petitioner's] wishes not to proceed without counsel and his statement that he had made no arrangements to engage successor counsel. The [petitioner] has failed to demonstrate that the judge abused his discretion in denying counsel's motion to withdraw. *See Commonwealth v. Chavis, supra* at 712, 616 N.E.2d 423.

> To the extent that the [petitioner] now contends that it was his request to discharge counsel, he failed to show good cause for removal, such as "a conflict of interest, incompetence of counsel, or an irreconcilable breakdown in communication." *Commonwealth v. Chavis, supra.* The judge gave him ample opportunity to articulate his reasons, *see Commonwealth v. Moran*, 388 Mass. 655, 659, 448 N.E.2d 362 (1983). The judge did not abuse his discretion by denying the motion to withdraw, especially where the [petitioner] indicated that

16

he was willing to cooperate with counsel, and where he knew how to pursue a
motion to discharge counsel but did not do so in this instance.

*Commonwealth v. Jordan Martel Rice*, 441 Mass. at 296-297, Supp. Ans., Ex. 6. The petitioner

does not, and cannot, point to any Supreme Court precedent to which the SJC's decision runs

contrary, or which the SJC unreasonably applied. Accordingly, the petitioner's claim in Ground

One of his petition fails. *See McCambridge,* 303 F.3d at 37.

      **C.**    **The SJC's Decision on the Petitioner's Ineffective Assistance of Counsel
          Claim (Ground Five) Does Not Run Contrary to or Involve an Unreasonable
          Application of Established Federal Law.**

          1.     Federal Law to Be Applied to Petitioner's Ineffective Assistance Claim

    In *Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 1240-41 (2002), the Supreme Court

re-affirmed the fundamental premise that the constitutional right to effective assistance of

counsel is not protected for its own sake, bur rather to ensure fair trials. The general rule, then,

is established by the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668

(1984): a Sixth Amendment violation is only established by a showing that, but for the

unprofessional errors of counsel, the result of the proceeding would have been different.

*Mickens*, 535 U.S. at 1240.  *Strickland* mandates that a petitioner advancing a claim of

ineffective assistance of trial counsel must make two showings, on each of which the petitioner

bears the burden of proof. *Strickland*, 466 U.S. at 687.  First, the petitioner must show that

counsel's performance was constitutionally "deficient," meaning that "counsel made errors so

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." *Id.* at 687.  The petitioner's burden is a heavy one. *Lema v. United States,*  987

F.2d 48, 51 (1st Cir. 1993).  "The performance standard is not to be applied in hindsight, but

based on what the lawyer knew, or should have known, at the time his tactical choices were

17

made and implemented." *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir. 1991), *cert.*

*denied,* 502 U.S. 1079 (1992). Moreover, it is well-recognized that the Constitution does not

guarantee "a letter-perfect defense or a successful defense." *Id.* A court assessing an ineffective

assistance of counsel claim "must determine whether, in light of all the circumstances, the

identified acts or omissions were outside the wide range of professionally competent assistance,"

and "must indulge a strong presumption that counsel's conduct fell within the range of

reasonable professional assistance." *Strickland.* at 689-90.

Second, the petitioner must show that counsel's deficient performance resulted in

"prejudice" to the defense of the case, meaning that "counsel's errors were so serious as to

deprive the defendant of a fair trial, a trial whose result was reliable." *Strickland*, 466 U.S. at

687. To establish prejudice, the petitioner "must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 694. In making the determination "whether the specified errors resulted in the required

prejudice, a court should presume . . . that the judge or jury acted according to law." *Id.*

Unless the petitioner is able to show both deficient performance and prejudice, "it cannot

be said that the conviction  . . . resulted from a breakdown in the adversary process that renders

the result unreliable." *Strickland*, 466 U.S. at 687.


2.      Federal Law as Applied to the Facts of the Petitioner's Claim

The petitioner asserts that his counsel was ineffective because he failed to: (a) preserve,

analyze, and present potentially exculpatory evidence; (b) retain or call an expert witness to

testify on his behalf at trial with respect to certain "palm print" evidence; (c) move to dismiss the

18

indictment in light of the Commonwealth's alleged failure to preserve potentially exculpatory evidence; (d) present other witnesses and evidence establishing that person(s) other than the petitioner may have committed the crimes charged; (e) effectively confront and cross-examine Commonwealth witnesses; (f) move for a mistrial based upon the Commonwealth's opening statement; (g) move for a bill of particulars; (h) make proper objections at trial regarding reference to a "rape kit"; (i) make an opening statement; (j) make proper objections and proposed instructions for the jury; and (k) move to dismiss the indictment based on comments made in the grand jury proceedings. *See* Affidavit, attached to Petition, pp. 2-3.  The SJC examined each of these claims and properly decided that the petitioner did not show that counsel erred in any of the matters cited by the petitioner, and that there was, therefore, no ineffective assistance of counsel.  *See Commonwealth v. Jordan Martel Rice,* 441 Mass. at 302-310 (in reviewing claim of ineffective assistance of counsel in context of petitioner's appeal, the SJC would first determine "whether there was an error [] and, if there was, whether that error was likely to have influenced the jury's conclusion").  *See also Strickland v. Washington*, 466 U.S. at 687 (in order to succeed on ineffective assistance of counsel claim, a petitioner must first show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment).

a.    *Failure to Preserve Evidence Claim*

The SJC addressed the petitioner's claim that counsel was ineffective for failing to preserve, analyze, and present certain items of evidence and found that counsel's performance was not deficient and that there was no showing that the evidence would have helped the

19

petitioner's defense.  The SJC held:

> The [petitioner] points to over sixty items that he says defense counsel should have had analyzed to determine if any item had evidentiary value.  Without going through each item, it is enough to say that the [petitioner] has presented no affidavit from any expert indicating what testing might have been done, the expected results, and the significance of any such results.  He has made no showing that any tests would have produced something that likely would have influenced the outcome of the case.  *See Commonwealth v. Britto*, 433 Mass. 596, 607, 744 N.E.2d 1089 (2001).

> The [petitioner] raised several issues about a coffee cup with a blood stain and partial palm print found in the victim's kitchen sink.  The palm print was preserved photographically, but the print itself was accidentally destroyed on September 27, 1995, during an attempt to enhance it.  The Commonwealth obtained palm print exemplars from forty-eight persons, including the [petitioner] and the victim, for comparison with the photograph of the palm print on the coffee cup.  State police fingerprint experts could not identify sufficient points of comparison (eight points are required by State police) to identify or exclude anyone as the source of the print.  The [petitioner] was indicted for the murder in October, 1996, over one year after the print was accidentally destroyed.

> Contrary to the [petitioner's] assertion, counsel could have done nothing to preserve the palm print.  The print was destroyed before the [petitioner] was indicted.  In addition, the [petitioner] has failed to show that further comparison of the photograph of the palm print with the known exemplars would have produced anything that would have helped the defense.  *See Commonwealth v. Britto, supra.*

*Commonwealth v. Jordan Martel Rice,* 441 Mass. at 303, Supp. Ans., Exhibit 6.

> b.    *Failure to Retain an Expert.*

The SJC rejected the petitioner's claim that counsel was ineffective for failing to retain

an expert to testify about the palm print evidence, holding:

> The [petitioner] also contends that counsel at least should have confirmed through an expert that neither he nor the victim left the bloody palm print on the coffee cup.  He misrepresents the evidence.  The State police fingerprint experts excluded no one as the author of the palm print.  There were insufficient points of comparison to either identify or exclude any of the forty-eight persons from whom exemplars were obtained.    Moreover, because there is no affidavit from trial counsel, the [petitioner's] assertions about what counsel did not do is speculative and need not be considered.  *See Commonwealth v. Knight*, 437 Mass. 487, 502 & n.17, 773 N.E.2d 390 (2002).

20

*Commonwealth v. Jordan Martel Rice,* 441 Mass. at 303-304, Supp. Ans., Exhibit 6.

        c.     *Failure to Move to Dismiss the Indictment*

The SJC also rejected the [petitioner's] claim that counsel was ineffective for failing to

move to dismiss the indictments because the palm print was destroyed.  The SJC held:

> The [petitioner] faults counsel for failing to file a motion to dismiss the indictments
> on grounds that potentially exculpatory evidence, the bloody palm print, on the
> coffee cup, was destroyed.  When potentially exculpatory evidence is lost, the trial
> judge has discretion to fashion  remedy after "weigh[ing] the culpability of the
> Commonwealth, the materiality of the evidence, and the potential prejudice to the
> defendant" in order to ensure a fair trial.  *See Commonwealth v. Willie*, 400 Mass.
> 427, 432, 510 N.E.2d 258 (1987).  Here, although the original print was lost, the
> image of the print was effectively preserved by photograph.  The [petitioner] has not
> shown that the photograph was a less effective standard for comparison to known
> exemplars than the original print. *See Commonwealth v. Cintron*, 438 Mass. 779,
> 784-785, 784 N.E.2d 617 (2003).  The judge correctly analyzed the issue and
> concluded that dismissal would not have been warranted because the lost evidence
> did not "create[] a reasonable doubt as to the [petitioner's] guilt that would not
> otherwise exist." *Commonwealth v. Kater,* 432 Mass. 404, 418, 734 N.E.2d 1164
> (2000), *Commonwealth v. Otsuki*, 411 Mass. 218, 231, 581 N.E.2d 999 (1991), and
> therefore the [petitioner] had not made the requisite showing of incompetence of
> counsel or that he was deprived of a material ground of defense.  *See Commonwealth
> v. Hunter,* 426 Mass. 715, 718-719, 690 N.E.2d 815 (1998)(destruction of
> fingerprint).  There was no error.

*Commonwealth v. Jordan Martel Rice,* 441 Mass. at 304-305, Supp. Ans., Ex. 6.

        d.     *Failure to Present Evidence that Other Persons Could Have
              Committed the Crime*

The SJC found that there was no valid ineffective assistance of counsel claim based on

counsel's failure to put on evidence that the petitioner suggested would show that someone else

committed the crime.  The SJC observed that the petitioner "claim[ed] that counsel failed to

present evidence that three other persons could have killed the victim, and that he failed to cross-

examine them on other matters." *Commonwealth v. Jordan Martel Rice,* 441 Mass. at 305,

Supp. Ans., Ex. 6. The SJC then analyzed the evidence regarding each of the three individuals

identified by the petitioner, and concluded that it was reasonable for counsel to have acted as he

did. *See id*. at 305-306. With respect to the first witness, James L. Morgan, the SJC noted that

the only evidence the petitioner offered to connect Morgan to the crime was inadmissible

hearsay, and that "Morgan had an alibi." *Id.* at 305. With respect to the second witness, John

Madden, the SJC found that "[t]he line of questioning the [petitioner] proposes likely would

have undermined a defense of consensual sexual intercourse. Avoiding this risky subject was

not manifestly unreasonable." *Id.* at 306, *citing Commonwealth v. Britto*, 433 Mass. 596, 605,

744 N.E.2d 1089 (2001). As to the third witness, Jewel Whatley, the SJC noted that "[t]he

evidence on which the [petitioner] relies is hearsay, and because he produced no other evidence

substantially to link Whatley to the victim's death, the evidence is inadmissible and he would not

have been entitled to pursue this theory." *Id.* The SJC also noted that the trial judge had found

that "it would have been foolish for defense counsel to suggest that [Whatley] had stabbed [the

victim] to death and burned her apartment." *Id*. at 307. The SJC concluded its analysis on this

point by saying:

> The judge succinctly described the challenges for the defense as "the fresh sperm
> DNA evidence and his bragging about burning, smoking, and putting holes in a
> woman who had disrespected him. Neither of these items could be charged
> against James L. Morgan, John Madden or Jewel Whatley." The only person
> substantially connected to the victim's death was the [petitioner], and counsel
> would not have been permitted to present a third-party culprit defense based
> solely on inadmissible hearsay. It was not manifestly unreasonable for counsel to
> refrain from doing that which he was not entitled to do.

*Commonwealth v. Jordan Martel Rice,* 441 Mass. at 307, Supp. Ans., Ex. 6.

        e.    *Failure to Effectively Confront and Cross-Examine*

*Commonwealth Witnesses*

The SJC also found that counsel was not ineffective with respect to his cross-examination

of the Commonwealth's witnesses, stating:

> The [petitioner] asserts that counsel was ineffective for failing to impeach Alan Paine
> and other witnesses who testified about his admissions with favorable proof that
> conclusively established that they were falsely implicating him. The only specific
> "favorable proof" he identifies involves the day in March, 1996, when Paine testified
> that the [petitioner] told him he "expected to be arrested for murder" and that the
> police were "trying to set him up like O.J. Simpson." The [petitioner] contends that
> he furnished counsel with employment records indicating that he was at work at the
> time and date that this statement was allegedly made. However, as the judge noted,
> the point [petitioner] raises had minimal potential value and high potential risk of
> harm. There were four other witnesses who testified about incriminating statements
> the [petitioner] made, and this statement he made to Paine was one of the least
> damaging. Moreover, if counsel had offered the evidence in question to support a
> claim that he could not have met with Paine on that particular day, it could have
> opened the door to questions about the [petitioner's] involvement with guns that he
> allegedly delivered to Paine and which resulted in firearms charges being filed
> against both Paine and the [petitioner], a matter that had been excluded as a result of
> counsel's efforts. Counsel instead trod carefully around the date in March, 1996, and
> nothing was said about the guns. Counsel aggressively cross-examined Paine about
> the grant of immunity under which he testified. He also aggressively challenged the
> credibility of the other witnesses who testified about the [petitioner's] admissions,
> and he elicited testimony from some that the [petitioner] had been intoxicated at the
> time he made the statements. He also argued the points carefully in his closing. The
> judge concluded that counsel "made a sensible tactical choice" to avoid any
> challenge to the date in March, 1996, and instead concentrate on safer and more
> productive areas for impeachment. We conclude that counsel's decision was not
> manifestly unreasonable.

*Commonwealth v. Jordan Martel Rice,* 441 Mass. at 307-308, Supp. Ans., Ex. 6.

> f.    *Failure to Move for a Mistrial Based upon the Commonwealth's
>       Opening Statement*

The SJC rejected the argument that counsel was ineffective for failing to move for a

mistrial based on a statement contained in the prosecutor's opening, holding:

> The [petitioner] argues that counsel failed to move for a mistrial when the
> Commonwealth failed to call a witness, Beverly Wilson, who the prosecutor stated

23

in his opening would testify that the [petitioner] told her that he was in Florida, where the conversation took place, because the police were looking for him for a murder. The prosecutor also mentioned in his opening that Wilson asked the [petitioner] if he committed the murder and the [petitioner] indicated that he did not. The prosecutor expected to call Wilson to testify, and he had a good faith basis to believe that she would testify as he anticipated in his opening statement, as the statements he attributed to her are consistent with statements attributed to her in an affidavit attached to an application for a search warrant that was issued in the underlying investigation. *See Commonwealth v. Fazio*, 375 Mass. 451, 454-455, 456, 378 N.E.2d 648 (1978).

The judge noted that the reference did not cause any material prejudice in view of the admissions the [petitioner] made to other witnesses, and because he instructed the jury that statements of counsel are not evidence and that their verdict must rest solely on the evidence. Moreover, trial counsel argued the Commonwealth's failure to call Wilson to the [petitioner's] advantage, implying a gap in the Commonwealth's proof. The [petitioner] had failed to show that the prosecutor never intended to call Wilson or that trial counsel should have been aware of that secret intent. Trial counsel had no reason to seek a mistrial, and it is unlikely that one would have been granted.

*Commonwealth v. Jordan Martel Rice,* 441 Mass. at 308, Supp. Ans., Ex. 6.

g.     *Failure to Move for a Bill of Particulars*

The SJC likewise rejected the claim of ineffective assistance based on the failure to move

for a bill of particulars, stating:

There is no merit to the claim that counsel was ineffective for failing to move for a bill of particulars to ferret out that the Commonwealth was proceeding under a theory of felony-murder in the first degree based on aggravated rape. Counsel anticipated precisely this theory and countered it, successfully, with testimony that the [petitioner] and the victim had consensual sexual intercourse. The [petitioner] was not convicted of felony-murder based on aggravated rape. *See* note 2, *supra*. Nothing more could have been accomplished by a bill of particulars.

*Commonwealth v. Jordan Martel Rice,* 441 Mass. at 308-309, Supp. Ans., Ex. 6.

h.     *Failure to Make Proper Objections at Trial to Reference to a "Rape Kit"*

The SJC found that there was no error in counsel's decision not to object to "evidence of use

24

of a 'rape kit,'" despite the petitioner's claim that there was no evidence of a rape. *Commonwealth v. Jordan Martel Rice,* 441 Mass. at 309, Supp. Ans., Ex. 6. The SJC found that there was evidence to support the inference that the victim was raped at knife point. *Id.* at 301-302. Accordingly, it was not error for counsel to decline to object to evidence about the use of a rape kit. *Id.* at 309.

        i.    *Failure to Make an Opening Statement*

The SJC found that counsel "was not ineffective because he elected not to make an opening statement." *Commonwealth v. Jordan Martel Rice,* 441 Mass. at 309, Supp. Ans., Ex. 6. The SJC cited to the case of *Commonwealth v. Cohen,* 412 Mass. 375, 390-91, 589 N.E.2d 289 (1992), in which the SJC had held

> We have held that a defense counsel's perfunctory opening is not conduct that falls measurably below that which might be expected from an ordinary fallible lawyer, *Commonwealth v. Hartman,* 404 Mass. 306, 315, 534 N.E.2d 1170 (1989), and we now hold that a failure to make an opening statement similarly does not form the basis for a claim of ineffective assistance of counsel. Defense counsel's waiver of an opening statement has been held to be "trivial," a "tactical decision," and a "matter of professional judgment," as well as "within the realm of trial strategy." See *United States v. Salovitz,* 701 F.2d 17, 20-21, 701 F.2d 17 (2d Cir.1983), and cases cited. In these circumstances, we shall not second guess the trial strategy of the defendant's trial counsel.

*Commonwealth v. Cohen,* 412 Mass. at 390-91.

        j.    *Failure to Object to Jury Instructions And/or to Make a Request for Jury Instructions*

The SJC also found that the petitioner's counsel was not ineffective "for failing to request an instruction calling for juror unanimity as to the factors set out in *Commonwealth v. Cuneen,* 389 Mass. 216, 227, 449 N.E.2d 658 (1983), pertaining to the elements of extreme atrocity or cruelty." *Commonwealth v. Jordan Martel Rice,* 441 Mass. at 309, Supp. Ans., Ex. 6. The SJC determined

that no such instruction was required.[3]  *Id.*  Since no such instruction was required, it was not

constitutionally deficient for counsel to fail to object to the jury instructions as given.

> k.     *Failure to Move to Dismiss the Indictment Based on Evidence at the Grand Jury Proceedings.*

Finally, the SJC determined that counsel was not ineffective for failing to dismiss the

indictment based on evidence presented to the grand jury.  The SJC held

> The [petitioner] claims that counsel was ineffective for failing to move to dismiss the murder indictment on the ground that evidence of his refusal to submit a DNA sample or fingerprints was improperly presented to the grand jury. *See Commonwealth v. Hinckley*, 422 Mass. 261, 661 N.E.2d 1317 (1996).  Where such evidence is presented to the grand jury, as distinguished from trial, the question is whether the evidence impaired the integrity of the grand jury proceedings. *See Commonwealth v. O'Dell*, 392 Mass. 445, 466 N.E.2d 828 (1984).  The evidence in this case involved a minor and isolated instance where, in response to a grand juror's question whether the [petitioner] declined to give up his clothing voluntarily for DNA testing, the State police witness answered, "Yes."  When another grand juror later asked how they obtained the evidence, including the [petitioner's] palm print if he did not offer them voluntarily, the assistant district attorney presenting the case directed the witness not to answer.  The [petitioner] had given his palm print voluntarily, and the prosecutor's effort to prevent harm thus may have caused some.  However, any harm that was caused did not likely impair the integrity of the proceedings.  First, there is no indication that what occurred was intended unfairly to obtain an indictment, that is, that the witness or the prosecutor acted in bad faith. *See Commonwealth v. Mayfield*, 398 Mass. 615, 621, 500 N.E.2d 774 (1986).  Second, the [statement] did not likely influence the grand jury's decision to indict. *See Commonwealth v. Kelcourse*, 404 Mass. 466, 468, 535 N.E.2d 1272 (1989).  There was ample and far more significant evidence on which the grand jury likely based their decision to indict.  Because a motion to dismiss probably would not have been successful, counsel was not ineffective for failing to move for dismissal.

*Commonwealth v. Jordan Martel Rice,* 441 Mass. at 309-310, Supp. Ans., Ex. 6.

A review of the SJC's decision on each of the claims for ineffective assistance of counsel

shows that the SJC properly determined that there was no ineffective assistance of counsel

---

[3] Section IV(D), below, discusses the Supreme Court cases which support the SJC's conclusion on this point.

because there was no error, and therefore counsel's performance was not constitutionally

deficient. *See Strickland*, 466 U.S. at 684.    Indeed, the SJC analyzed the petitioner's claims of

error by counsel pursuant to a statutory standard which was even more favorable to the petitioner

than the standard set forth in *Strickland v. Washington*, 466 U.S. 668, and  *Commonwealth v.*

*Saferian*, 366 Mass. 89, 315 N.E.2d 878 (1974).  *See Commonwealth v. Wright*, 411 Mass. 678,

682, 584 N.E.2d 621 (1992)("the statutory standard of [chapter 278] §§ 33E is more favorable to

a defendant than is the constitutional standard for determining the ineffectiveness of counsel").

The SJC's decision did not, therefore run afoul of any established Supreme Court precedent, and

the petitioner's claim of ineffective assistance of counsel should be denied.[4]

> **D.    The SJC's Decision with Respect to the Claimed Error in the Jury**
> **Instruction (Ground Six) Did Not Run Contrary to Nor Did it Unreasonably**
> **Apply Established Federal Law.**

In his petition, the petitioner argues, as he did at the SJC, that the trial judge "erred by

failing to instruct the jury that they must be unanimous with respect to any *Cuneen* factor relied

on to reach a verdict of murder in the first degree under the theory of extreme atrocity or

cruelty." *See Commonwealth v. Jordan Martel Rice*, 441 Mass. at 302, Supp. Ans., Ex. 6; *see*

---

[4]  The fact that the SJC did not cite to *Strickland v. Washington*, 466 U.S. 668 is
irrelevant because the Massachusetts standard on ineffective assistance is at least as beneficial to
criminal defendants as the standard set forth in *Strickland.  See Commonwealth v. Fuller*, 394
Mass. 251, 265 n. 3, 475 N.E.2d 381, 385 n.3 (1995)("if the *Saferian* test is met, the Federal test
is necessarily met as well").  The SJC cited to cases that themselves cited to the seminal
Massachusetts case on ineffective assistance, *Commonwealth v. Saferian*, 366 Mass. 89, 315
N.E.2d 878 (1974).  *See Commonwealth v. Wright*, 411 Mass. 678, 682, 584 N.E.2d 621
(1992)(citing *Saferian* and *Strickland*); *Commonwealth v. Adams*, 374 Mass. 722, 728, 375
N.E.2d 681 (1978)(citing *Saferian*).  The First Circuit has held that *Saferian* is the "functional
equivalent" of *Strickland* and that the state court's use of the *Saferian* standard suffices as "a
constitutionally proper performance standard" on habeas review." *Ouber v. Guarino*, 293 F.3d
19, 30 & n.8 (1st Cir. 2002).

*also* Petition, ¶ 12(F).  The petitioner asserts that "the [state] court erred in its instructions to the jury by failing to charge the jury that a unanimous verdict was required with respect to the factors considered in arriving at a verdict of First Degree Murder by Extreme Atrocity or Cruelty [*i.e.*, the so-called *Cuneen* factors]." *See* Petition, ¶ 12(F).  The SJC disagreed, and held that there did not need to be unanimity on any of the factors enumerated in *Cuneen v. Commonwealth*, 389 mass. 216, 227, 449 N.E. 2d 658 (1998).  The SJC's determination that the judge did not err by failing to instruct the jury that they had to be unanimous with regards to any of the *Cuneen* factors used to support a verdict of first-degree murder under the theory of extreme atrocity or cruelty was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d)(1).

      1.    <u>Federal Law to Be Applied</u>

In *Schad v. Arizona*, 501 U.S. 624, 631-32, 111 S.Ct. 2491, 2497, 115 L.Ed.2d 555 (1991) (plurality opinion),[5] the Supreme Court clearly held that unanimity was not required as to the means of commission, as long as the jurors agreed that the requisite element was fulfilled. The Court said, "[D]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line.  Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Id.*, citing *McKoy v.*

---

[5] Although *Schad* lacked an opinion for the Court on the juror unanimity issue, Justice Scalia's opinion, concurring in the judgment, disagreed with the four-justice plurality as to the rationale but did not disagree as to the ultimate conclusion that unanimity was not required as to the mere means of commission.  *Schad,* 501 U.S. at 649 (Scalia, J., concurring in part and concurring in the judgment) ("As the plurality observes, it has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission.")

*North Carolina,* 494 U.S. 433, 449, 110 S.Ct. 1227, 1236-37, 108 L.Ed.2d 369 (1990)

(Blackmun, J., concurring). The Court went on to say that this lack of unanimity as to means

applied to both the *actus reus* and *mens rea* elements of the offense. *Schad*, 501 U.S. at 632

(plurality opinion).

The Court was even more explicit eight years later in *Richardson v. United States*, 526

U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). It said, "[A] federal jury need not always

decide unanimously which of several possible sets of underlying brute facts make up a particular

element, say, which of several possible means the defendant used to commit an element of the

crime."[6] *Id.* at 817. By way of example, the Court noted that if force or threat of force were an

element of robbery, then it would not matter whether jurors disagreed as to whether a knife or

gun was used to create the threat, as long as they agreed a threat was created. *Id.*

Petitioner's apparent reliance on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348,

147 L.Ed.2d 435 (2000), is unavailing. In *Apprendi*, the Court held that "any fact that increases

the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury,

and proved beyond a reasonable doubt." *Id.* at 490. The Court has not suggested that *Apprendi*

in any way limits *Schad* or *Richardson*. Thus, there is no clearly established, post-*Apprendi*

Supreme Court precedent that requires the jury to decide unanimously the means by which an

element of the crime was satisfied.

    2.    <u>Federal Law as Applied to the Petitioner's Claim.</u>

The SJC's holding was perfectly in line with this clearly established Supreme Court

---

[6] The Court referred to a federal jury because the case involved a federal crime. However, since it cited *Schad*, which involved a state crime and a state jury, for this proposition, the Court's statement is equally applicable to this case.

precedent. Extreme atrocity or cruelty was the element that the jury was required to find to support first-degree murder. The factors listed in *Cuneen v. Commonwealth*, 389 Mass. 216, 227, 449 N.E.2d 658 (1998) are "mere means of satisfying," *Schad*, 501 U.S. at 631, the element of extreme atrocity or cruelty in the same way that use of a gun or knife is the means for establishing the element of threat of force. The *Cuneen* factors, which are "several possible sets of underlying brute facts [which] make up a particular element," need not be unanimously found by a jury. *See Richardson*, 526 U.S. at 817.

Although the SJC did not explicitly cite these clearly established Supreme Court precedents, it did cite to its own prior decisions that correctly interpreted and applied these cases. *See Commonwealth v. Rice*, 441 Mass. 291, 302, 805 N.E. 2d 26 (2004). In these cases, the SJC rejected the argument that the *Cuneen* factors must be found unanimously be a jury in light of *Apprendi* because they are "evidentiary considerations," not elements of the crime or separate theories of culpability." *Commonwealth v. Obershaw*, 435 Mass. 794, 809, 762 N.E.2d 276 (2002); *see also Commonwealth v. Moses*, 436 Mass. 598, 606, 766 N.E.2d 827 (2002). Those cases also correctly rejected the petitioners' reliance on *Richardson*, noting that the *Richardson* court had determined that the facts in question were elements of the crime whereas the *Cuneen* factors are not elements. *Moses*, 436 Mass. at 606; *Obershaw*, 435 Mass. at 809 n.5. As noted *supra* and by the *Obershaw* court, 435 Mass. at 809 n.5, *Richardson* says that jury unanimity is not required as to the means of establishing, or underlying facts of, an element.

## CONCLUSION

For the foregoing reasons, the respondent requests that this Court deny the petition for a writ of habeas and dismiss the petitioner's complaint in its entirety.

30

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL


/s/ Maura D. McLaughlin
Maura D. McLaughlin
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200 ext. 2857
BBO No. 634923


Dated: November 16, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon counsel for the petitioner, Jordan Martel Rice, on November 16, 2005, by depositing the copy in the office depository for collection and delivery by first-class mail, postage pre-paid, as follows: Eugene McCann, Esq., Manzi & McCann, 59 Jackson Street, Lawrence, Massachusetts 01840

/s/ Maura D. McLaughlin
Maura D. McLaughlin