-30-

### The Request For Post-trial Discovery And an Evidentiary Hearing

At the least, the State Court should have granted an evidentiary hearing concerning Rice's claim of ineffective assistance of counsel, as well as the Commonwealth's destruction of exculpatory evidence, the truthfulness of it's trial testimony, and the production of all of it's print, blood, hair, fiber and other forensic evidence for inspection and comparison testing by a defense expert. Substantial issues were clearly raised by the motion which merited such a hearing and post-trial discovery. See, e.g., Commonwealth v. Aviles, 31 Mass. App. Ct. 244 (1991) (failure to grant an evidentiary hearing where substantial issues were raised was itself error requiring a remand to the trial court).

In denying Rice's request for an Evidentiary Hearing the State Court engaged in a classic example of what the Supreme Court prohibited when a hearsay statement, that is Affidavit of Ron Rice (R. 310-317), bears "persuasive assurances of trustworthiness" and is critical to the defense, it may not be excluded by a

-35-

Commencement of trial.

Accordingly, the State Court erroneously denied the defense motion for discharge of counsel, thereby denying Rice due process of law and the right to the effective assistance of counsel.

III. Rice Was Denied a Full And Fair Opportunity To Litigate His Fourth Amendment Claim Due To The Fourteenth Amendment Violations During The Suppression Hearing.

The restrictions on Habeas Corpus review pertain to only a single Fourth Amendment Claim, see <u>Stone V. Powell</u>, 428 U.S. 465 (1976). If there are other constitutional violations in conjunction with the Fourth Amendment Claim the Supreme Court has held, see <u>Kimmelman V. Morrison</u>, 477 U.S. 365, 375 (1986) (No Habeas Corpus restrictions on Fourth Amendment Claim in conjunction with Sixth Amendment Claim).

A. <u>The Facts</u>

Accordingly, in an attempt to evade the probable cause and warrant

requirements, Mason directed prison officials at the South Bay Correctional Institution to seize bed sheets and worn clothing from Rice which might contain DNA evidence (M.S.I/25-26, 45-46; II/12-13). Mason testified that he first inquired of prison officials whether they might seize a discarded cigarette butt containing Rice's saliva (M.S.I/26, 35-37). Mason was allegedly told that "inmates were not allowed to smoke in the facility" (M.S.I/26) -- an assertion which is demonstrably untrue, raising serious concerns about the credibility of Mason's and others testimony, sanctioned by the prosecutor. See, e.g., United States v. Bagley, 473 U.S. 667, 680 (1985)(Knowing use of false testimony involves prosecutorial misconduct and corruption of truth-seeking function of the trial process). At the time, smoking by inmates was permitted at South Bay, as clearly indicated in a December, 1996, prison canteen form submitted by Rice which permitted the purchase of tobacco items by prisoners (R.16). Indeed, this court may take judicial notice of the fact that a smoking ban did not go into effect at South Bay until May 1, 1999 (see Boston Herald articles dated April 25 and 26, 1999 (R.17)

- 37 -

This perjuried testimony was deemed highly valuable. In fact Judge Brady's memorandum and order, at pg. 3, (R. 18-25) he sights the perjuried testimony as reason in denying Rice's quest to suppress the unlawful seized items. If the facts didn't happen as Rice stated, in his supporting affidavit to suppress, Sgt. Walsh shook down Rice's cell and removed items for DNA testing at the behest of Law Enforcement Officials. There would be no reason for the Commonwealth's witnesses to commit such perjury.[10]

B. <u>Discussion</u>

Article 14 of the Massachusetts Declaration of Rights and the Fourth Amendment prohibit unreasonable searches and seizures. <u>Terry V. Ohio</u>, 392 U.S. 1, 9 (1968); <u>Commonwealth V. Silva</u>, 366 Mass. 402, 404-405 (1974).

While provisions of the constitution that are applicable in general to all citizens must be accommodated to institutional needs and objectives, no wall separates

---

[10] Sgt. Walsh never testified in State Court at the two day Suppression Hearing. Rice has requested a Stay of Execution to exhaust a Sixth Amendment Claim along with other claims that need to exhausted.


-38-

the constitution from prison inmates. Wolff v. McDonnell, 418 U.S. 539, 555-556 (1974). Prisoners have been held to retain the right of access to the courts, see Johnson v. Avery, 393 U.S. 483, 485 (1969); the Equal Protection Clause of the Fourteenth Amendment protects prisoners from discrimination based upon race, see Cruz v. Beto, 405 U.S. 319, 321 (1974); and the Eight Amendment safeguards inmates from "deliberate indifference to their serious medical needs..." Estelle v. Gamble, 429 U.S. 97, 104 (1976).

Thus, in United States v. Cohen, 796 F.2d 20, 24 (2d Cir. 1986), the court held that a prisoner does have Fourth Amendment protection against searches for incriminating evidence, undertaken at the behest of the prosecution, for other than legitimate institutional concerns. In so ruling, the court stated, "The door on prisoner's rights against unreasonable searches had not been slammed shut and locked." Id. A search of an inmate and his belongings "at the instigation of non-prison officials for non-institutional security reasons" may be challenged on Fourth Amendment grounds. Id.

-42-

a bloody rag by the front door. It turns out it's a pajama top. It is in evidence. Think about that and then think about the door being ajar. Somebody maybe used that to hide their fingerprints and close the door from the inside" (T.V/87). This baseless argument was used to unfairly "plug up" another gaping hole in the Commonwealth's case: no print evidence was found at the crime scene linking Rice to the killing; rather, the bloody print recovered from the coffee cup in the kitchen concededly did not match Rice.

Likewise, the prosecutor attempted to shock the jury by unfairly and repeatedly arguing that a knife had been held to the victim's neck while she was raped (T.V/87,93)-- even though there was no evidence whatsoever to support the Commonwealth's rape theory. As previously mentioned, semen was not detected in the crotch area of the victim's pajama bottom, nor was there any sign of rape trauma revealed in the Commonwealth's autopsy report. The prosecutor's unfounded and improper argument, harping on the "rape" theory, was especially prejudicial; although the jury admittedly did not convict the defendant

-44-

and that Berna, "Had never seen him like that before" -- a fictitious summary of the testimony (T.V/89). Berna never testified that he "had never seen [Rice] like that before" -- only that Rice was "nervous" (T.III/18). The prosecutor's remarks were obviously intended to exaggerate Rice's alleged, uneasy demeanor as to consciousness of guilt, and to once again unfairly suggest to the jury a criminal past.

Finally, in discussing Rice's admission at trial that he failed to tell police he had sex with the victim because he was scared, the prosecutor expressed his own opinion, "...Was he lying? Yes, he was lying" (T.V/88)(emphasis added).

The prosecutor's inflammatory arguments, including those based upon personal opinion, "possibly weakened [the defendant's credibility and] case in some significant way." Commonwealth V. Pearce, 43 Mass. App. Ct. 78 (1997), citing Commonwealth V. Schulz, 389 Mass. 735 (1983). The prosecutor's statements were not only improper, but "could only have been made for their emotional

- 45 -

impact. Such elements of irrationality and irrelevance introduced into the trial can only serve to make it less likely that the jury will return a verdict based on fair, calm consideration of the evidence." Commonwealth v. Shelly, 374 Mass. 466, 470 (1978).

Defense counsel admittedly did not object to the improper comments. However, the improper argument was not limited to a collateral issue. See generally Commonwealth v. McLeod, 30 Mass. App. Ct. 536, 538 (1991). Because the improper comments went to the central issue in the case of the defendant's guilt or innocence, it cannot be said "that the improper argument did not make a difference in the jury's conclusions." Commonwealth v. McLeod, 30 Mass. App. Ct. at 541. In these circumstances, a substantial risk of miscarriage of justice has occurred, and a new trial is mandated, including under G.L. c. 278 § 33E. Commonwealth v. Kozec, 399 Mass. at 518 n.8.

V.   The State Court Erred In Its Instructions To The Jury By Failing To Charge The Jury That A Unanimous Verdict Was Required With Respect To The Factors Considered In Arriving At A Verdict Of First-Degree Murder By Extreme Atrocity OR Cruelty, In Violation Of Rice's Rights Under The Fifth, Sixth And Fourteenth Amendments.

The State Court erred by failing to charge the jury that a unanimous verdict must be reached with respect to the so-called "Cunneen Factors", See Commonwealth v. Cunneen, 389 Mass. 216, 227 (1983), which must be considered under Massachusetts law in arriving at a first-degree murder verdict by extreme atrocity or cruelty (see trial court's charge, T.V/112-113). Although defendant concededly failed to raise this issue in the lower court, the issue should be considered by State Court in the interests of justice.

Admittedly, the State Court recently rejected the precise argument raised herein Commonwealth v. Obershaw, 435 Mass. 794 (2002), where the

-47-

Court adhered to its prior ruling in <u>Commonwealth v. Hunter</u>, 427 Mass. 651, 657 (1998), describing the <u>Cunneen</u> factors as "evidentiary considerations" and not elements of the crime or separate theories of culpability for which a unanimous jury verdict would be required.

Most respectfully, the State Court's decision(s) are squarely contrary to the Supreme Court's recent decisions in <u>Richardson v. United States</u>, 526 U.S. 813 (1999), and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). In <u>Richardson</u>, the government argued that that the jury was not required to unanimously agree which predicate crimes constituted the continuing criminal enterprise; rather, the jurors could individually pick and choose among any of the criminal acts presented in evidence in order to convict. The Supreme Court disagreed, holding that the failure to require ~~unanimity~~ ~~~~ unanimity "...significantly enhances the risk ... that jurors, unless required to focus upon specific factual detail, will fail to do so, simply concluding from testimony, say, of bad reputation, that where

- 48 -

there is smoke there must be fire." Id. at 819. The Richardson Court observed that, "the Constitution itself limits a State's power to define crimes in ways that would permit juries to convict while disagreeing about means, at least where that definition risk serious unfairness and lacks support in history or tradition." Id.

More recently, in Apprendi, the Court held that the Due Process Clause of the Fourteenth Amendment required that a jury -- not a judge -- make the determination authorizing an increase in the maximum prison sentence imposed upon a criminal defendant. The lower court had enhanced the defendant's sentence in light of its finding that the crime was motivated by racial bias, a basis for enhancement under New Jersey Law. The defendant claimed he was entitled to a jury trial regarding the enhancement of his sentence. In reversing the conviction and sentence, the Court rejected the lower courts ruling that its factual finding concerned merely a "sentencing factor" rather that an essential element

-49-

of a crime for which a jury trial would be required. <u>In re Winship</u>, 397 U.S. 358 (1970).

Likewise, under the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment, the jury's verdict should be unanimous as to consideration of the <u>Cunneen</u> factors, which can result in an enhanced verdict of first-degree murder with harsh sentencing consequences (life without parole), <u>Commonwealth v. Glass</u>, 401 Mass. 709 (1988), and thus, which are not mere evidentiary considerations undeserving of a unanimous jury verdict. Requiring a unanimous jury verdict with respect to the so-called <u>Cunneen</u> factors will avoid arbitrary enforcement of the laws and will enhance the consistency and certainty of results. And, in Massachusetts, a unanimous jury verdict is required in criminal cases, including with respect to the theory upon which a defendant is convicted, whether it be premeditated murder, extreme atrocity or cruelty, or felony murder. <u>Commonwealth v. Berry</u>, 420 Mass. 95 (1995)(unanimity required as to theory of culpability); <u>Commonwealth v.</u>

Godfrey, 420 Mass. 508 (1995)(unanimity required as to different acts).

Finally, Rice may have been seriously prejudiced by the trial court's failure to deliver a unanimity instruction. As stated previously, although the jury did not convict the Petitioner of "felony murder by rape" but there is a substantial risk some member of the jury may have used the prosecutors' "rape" references unconstitutionally utilized throughout the trial to unfairly convict the Petitioner of first-degree murder by extreme atrocity or cruelty by means of "Rape". Hence, Rape is an extreme atrocious and/or cruel crime. The Court cannot apply harmless error standard where there is a substantial risk that a defendant was convict of a crime for which he was not indicted by a grand jury. See Commonwealth v. Barbosa, 421 Mass. 547, 554 (1995); United States v. Floresca, 38 F.3d 706, 711 (4th Cir. 1994); Stirone v. United States, 361 U.S. 212, 217 (1960).

---

[41] Rice was never indicted for Rape. The only two indictments Rice had fair Notice of were "Murder" and "Burning of a Dwelling." Rice has previously filed a Motion to Stay of Execution to exhaust the meritorious constitutional due process violation of denied fair notice of criminal charges, as cited in Foot note no. 7 of this memorandum, along with other meritorious constitutional violations. Here Rice renews his request for a "Stay of Execution." before this proceeding is ruled on.

-51-

Despite there being no indictment for rape or no evidence of a rape occurring, the prosecutor made repeated references[12] as followed:

(a). During open arguments the prosecutor promised to call witness Beverly Wilson, who would testify that Rice described the murder, which he was in Florida during the summer of 1995, as being of "an older woman ... who had been stabbed and raped and a fire had been set to cover it up" (T.I/99-100). Not surprisingly, the prosecutor never called Wilson at trial to repeat this fictitious claim because it was impossible for Rice to have made such an statement due to the fact the murder occurred in September of 1995 and Rice was in Florida the Summer of 1995 and incarcerated in the Summer of 1996 to the present date.

(b). The prejudicial slang term "Rape Kit" was utilized 27 times (T./97; III/86,87,89,93,107,144,145,150; IV/23-25,32,40) throughout trial, despite the fact there being absolutely no evidence of rape. The proper medical terminology is "Vaginal Swab", which was utilized 11 times (T.V/14-16,20,21,32). A vaginal swab is only a small part of a "PERK Kit", which stands for "Physical Evidence Recovery Kit". It is clear the Rape Kit term left a false rape impression in one or more of the juror's mind due to their question during deliberation, i.e., "Could we have a clarification of whether the Rape Kit samples were collected at the crime scene or at autopsy?" (T.V/126).

---

[12] The Commonwealth's own Autopsy Report by Dr. Bruce Weiner dated March 6, 1996 (R.187-192), indicated that the victim's "... genitalia are unremarkable", i.e., there was no medical evidence of rape trauma (R.190, p.4).

-52-

(C) Rice testified on his own behalf and during cross-examination the prosecutor improperly communicated the false Rape impressions through his questioning of Rice. (T.V/55-56).

(D) Likewise, during closing arguments the prosecutor attempted to shock the jury by unfairly and repeatedly arguing that a knife had been held to the victims neck while she was raped (T.V/87-93).

(F) Further bolstering the fictitious Rape, i.e., Felony Murder underlying factor of Aggravated Rape Instruction were charged to the jury (T.V/114-118) over Rice's objections (T.V/120-121).[13]

Had the jury been properly instructed that unanimity was required with regard to the Cunneen factors, Rice might never have been convicted of first-degree murder by atrocity or cruelty.

---

[13] During the midst of the second day of trial Rice was notice for the first time he would have to answer a rape charge. Rice again has demonstrated why his request for a Stay should be granted to exhaust the Notice Claim because "No principle of procedural due process is more clearly established than that of notice of the specific charge" Cole v. Arkansas, 333 U.S. 196, 201 (1948). See (T.II/14-15).

# CONCLUSION

WHEREFORE, the Petitioner requests that the Court grant the following:

(1) Deny the Respondents request to dismiss the petition;

(2) The Petitioner's request for a Evidentiary Hearing in regards to his previously filed "Order to Show Cause and Temporary Restraining Order" be granted along with ordering the DOC to provide Rice Access to the Courts and other Civil Liberties;

(3) Grant the petitioner's request to hold in Abeyance (and/or stay) the petition to return to the State Court to exhaust meritorious unexhausted claims among them the Fair Notice Argument;

(4) Grant the petitioner's request for a Evidentiary Hearing and Discovery in regards to the three claims surrounding the Bloody Palm Print and Perjury during the suppression hearing;

(5) Grant the petitioner New Counsel whom will represent him diligently;

(6) Remand the State Court to provide the Petitioner a New Trial and;

(7) Grant such other relief as it may appear that petitioner is entitled.

Respectfully Submitted,

x [signature]