# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT
### No. 07-1429

# JORDAN M. RICE,
Plaintiff,

– against –

# FEDERAL BUREAU OF INVESTIGATION
Defendants, ET AL. –

On Appeal From The United States District Court For
The District Of Massachusetts
The Honorable Reginald C. Lindsay, Presiding.

---

# ADDENDUM OF PLAINTIFF

---

By: Jordan M. Rice, Pro Se
P.O. Box 100
South Walpole, Ma. 02071

# Table Of Contents

| Exhibits | Description | Page No. |
|----------|-------------|----------|
| "A" | Plaintiff's Civil Complaint | 1 |
| "B" | Defendants Motion To Dismiss Plaintiff's Civil Complaint | 62 |
| "C" | Plaintiff's Opposition To Defendants Motion To Dismiss | 101 |
| "D" | Private Investigator Ronald Rices Letter To District Court Chief Judge Mark L. Wolf | 134 |
| "E" | District Court's Judgment Of Dismissal Of Plaintiff's Civil Complaint | 137 |

# Exhibit

## "A"



United States District Court
District Of Massachusetts

Jordan M. Rice,
Plaintiff

V.

Federal Bureau Of Investigations, et.al.,
U.S. Department of Justice, et.al.,
Defendants, et.al,.

DKT. No. 06-10431-RCL

Jury Trial Demanded

# COMPLAINT

## Preliminary Statement

This is a civil rights action filed by Jordan M. Rice, a State Prisoner, for release of documentation under 5 U.S.C. § 552a, et.al., alleging the Defendants withheld documentation requested pursuant to the Freedom Of Information Act and Privacy Act which is in violation of the 1st, 5th, 6th, 8th and 14th Amendments of the United States Constitution

## Jurisdiction

1. The Court has jurisdiction over the plaintiffs' claims of violation of Federal Constitutional Rights under 42 U.S.C. §§ 1331(a) and 1343.

## Parties

2. The Plaintiff, Jordan M. Rice has a mailing address of: 177 Battles Farm Drive; Brockton, Ma. 03301.

3. Defendants for the Federal Bureau Of Investigation, (FBI), has a business address of: 935 Pennsylvania Avenue, N.W.; Washington D.C. 20535. These defendants are being sued in there individual and officials capacities.

4. Defendants For the U.S. Department of Justice has a business address of: 950 Pennsylvania Avenue, N.W.; Washington, D.C. 20530-001.

-2-

-2-

## Facts

5. On April 30, 2004 Plaintiff wrote Defendant "Def." Robert S. Mueller (Director of FBI), a letter with supporting exhibits which informed that Massachusetts State Police Trooper Patricia Beehan and Prosecutor for the Commonwealth Of Massachusetts "State Prosecutor" were were wrongfully excusing FBI Agent Randall Fitzwaters of destroying a very highly exculpatory piece of evidence, i.e., a bloody palm print on a coffee cup. See Exhibit "A".

6. On Oct. 4, 2000 Agent Fitzwaters verbally denied destroying the said "Print" to Private Investigator "P.I." Ronald Rice (no-relation) but declined to forward an affidavit to this effect. Agent Fitzwaters further stated he would be filing documentation with his Agency Supervisor's advising them he had no involvement in the alleged destruction of the said print. See Exhibit "B".

7. On Aug. 5, 2004 Def. Jose A. Vargas, the FBI's Civil Rights Unit Chief, answered the plaintiff's letter addressed to Def. Mueller in which he cited plaintiff should "go through the appropriate appeals process" and "may wish to contact an attorney for further assistance". See Exhibit "C"

8. Plaintiff knew of no such appeal process, nor did Def. Vargas explain any such process. Also Plaintiff wasn't represented by counsel at the time.

9. Plaintiff first contacted his State Public Defender's Office, i.e., Committee For Public Counsel Services (CPCS) to attain for purposes of contacting the FBI but the appointment of counsel was a long and slow process due to the large volume of indigent prisoners.

10. Next on Oct. 5, 2004 Plaintiff filed his first Freedom of Information Act Request attempting to attain documentation filed by Agent Fitzwaters with Def. FBI. See Exhibit "D"

11. Plaintiff feared his first F.O.I.A. Request was to vague to be successful so on Nov. 19, 2004 he filed an in depth second Freedom of Information Act Request/Privacy Act Request (F.O.I.P.A. Request). See Exhibit "E". With the Def. FBI F.O.I.A. Officer.

-3-

- 3 -

12. Plaintiff also served individual copies of the Second F.O.I.P.A. Request upon Def. Muller (See Exhibit "F") and Def. Vargas (See Exhibit "G")

13. On Dec. 1, 2004 Def. David M. Hardy (Chief of FBI Record/Information Section) informed Plaintiff in writing "no records responsive to [his] F.O.I.P.A. Request" could be located despite Agent Fitzwaters claim of filing a written denial to his Superiors. See Exhibit "H"

14. On Dec. 17, 2004, in a timely manner, Plaintiff filed an Administrative Appeal of the denial of his F.O.I.P.A. Request with the Defendants at the U.S. Department Of Justice. See Exhibit "I".

15. On Jan. 04, 2005 Def. Priscilla Jones (Administrative Specialist at the U.S. Department of Justice), in letter form, confirmed receipt of Plaintiff's said "Appeal". See Exhibit "I".

16. Still to date of Civil Complaint, Plaintiff's F.O.I.P.A Request and/or the Administrative Appeal hasn't been answered.

17. The State Public Defender's Office (CPCS) finally appointed Plaintiff Counsel, i.e., Attorney Charles Stephenson to contact Def. Vargas.

18. On or about March 16, 2005 Attorney Stephenson left a voice mail message with Def. Therese Roberson (then current Supervisor of the Civil Rights Unit) because Def. Vargas left his employment at the FBI. See Exhibit "K".

19. To Plaintiff's knowledge Def. Roberson and/or any other Government Official has ever returned Attorney Stephenson's repeated inquiries about documentation Agent Fitzwaters filed denying involvement with the destruction of the bloody palm print.

## Requested Materials Not Within Exemption Rule!

20. Plaintiff will now demonstrate that the requested documents are not within the exemption rule and in fact release of the requested documents will exonerate Agent Fitzwaters from any wrongful behavior.

21. Pursuant to FBI Protocol of Submitting Latent Prints Evidence for State Officials, to be examined by the FBI, must be packaged and

- 4 -

- 4 -

shipped to the FBI Laboratory Evidence Control Center in Washington, D.C.
See Exhibit "L"

22. On Oct.14, 1998 State Trooper Beehan testified under oath
that on Sept. 27, 1995 Massachusetts State Trooper Lieutenant Kenneth Martin
and herself traveled to a seminar at Johnson & Wales, Inn. in Seekonk, Massachusetts.
At this time she presented the bloody palm print to Agent Fitzwaters, whom during
examination destroyed the said print. See Exhibit "M". Clearly Trooper Beehan
committed perjury because it wasn't with possible protocol for Agent Fitzwaters
to examine a piece of evidence at a seminar. See Exhibit "L".

23. Massachusetts State Prosecutor of the Plymouth County Office
has supported Trooper Beehan's sworn perjuried testimony and has further accused
the FBI of obstructing justice along with withholding documentation demonstrating
that Agent Fitzwater did destroy the said "Print".

24. In a vein attempt to substantiate this frivolous claim, State
Official has cited the FBI's alleged obstruction of justice that supposedly
caused Massachusetts State Defendants; Louis Greco (decease); Peter J. Limone; and
Joseph Salvati, to spend over 30 years behind bars wrongful convicted of murdering
Edward Deegan. See Exhibit "N"

25. Plaintiff will now highlight evidence to contradict
Massachusetts State Officials bogus claim as set forth:

> (A) On Oct. 4, 2002 Agent Fitzwaters verbally denied
> any such involvement and/or knowledge of the
> alleged destruction of the said "Print" to P.I.
> Rice. See Exhibit "B"

> (B) On Oct. 4, 2002 ~~Trooper~~ Mississippi Latent
> Print Expert also contradict Trooper Beehan's
> Testimony verbally to P.I. Rice in regards to
> not providing an forensic opinion about the
> said "Print". See Exhibit "B"

> (C) Pursuant to FBI protocol of submitting Latent
> Print Evidence prohibited Agent Fitzwaters from
> conducting such an examination at a seminar. See Exh. "L".

- 5 -

(D) There is documentation filed by another Massachusetts State Police Trooper, i.e., Joseph Mason demonstrating the said "Print" existed late as Oct. 21, 1996, which clearly precludes Agent Fitzwaters alleged destruction on Sept. 27, 1995. See Exhibit "O".

26. It is clear Agent Fitzwaters never destroyed the said "Print" and Massachusetts State Officials are committing blaspheme against Federal Government Officials as a ruse to conceal their own malfeasance behavior.

27. Therefore, the release of the requested documents aren't within the exemption rules. Furthermore, release of the documents will clearly free Agent Fitzwaters and/or any other Federal Government Employees of any such wrongful Acts in regards of the bloody palm print.

## Claim For Relief

28. The actions of the defendant's in withholding any documentation filed by FBI Agent Randall Fitzwaters constituted a violation of the 1st, 5th, 6th, 8th, and 14th Amendments of the United States Constitution.

## Relief Requested

WHEREFORE, plaintiff requests that the Court grant the following relief:

A. Issue a declaratory judgement stating that:

1. The withholding of the requested documentation By the Defendants violated the plaintiffs rights under the 1st, 5th, 6th, 8th and 14th Amendments of the United States Constitution.

B. Issue an injunction order enjoining the Defendants to:

1. Immediately release to the plaintiff any and all documentation in regards to Agent Fitzwaters and the bloody palm print.

- 6 -

-6-

C. Enjoin the Defendants to cover court cost and attorney fees.

D. Grant any other such relief as it may appear that plaintiff is entitled.

Respectfully Submitted.

Jordan M. Rice
177 Battles Farm Dr.
Brockton, Ma. 02301.

Dated: Feb. 26, 2006 A.D.

-7-

# EXHIBIT "A"

-8-

Jordan M. Rice-W65439
177 Battles Farm Dr.
Brockton, Ma. 02301

Robert S. Mueller, Director of F.B.I.
935 Pennsylvania Ave., N.W.
Washington, D.C. 20535-0001

April 30, 2004, Page 1 of 3

Dear Sir,

    Hello, I am currently incarcerated at Souza-Baranowski Correctional Center, serving a life sentence without the possibility of parole for murder in the first degree.

    I have been wrongly convicted in this matter, and in fact this is why I am writing to you today. At my trial, a Massachusetts State Trooper (Patricia Beehan), a crime scene expert, testified that, "She took a bloody palm print found on a cup at the crime scene to F.B.I. Latent Print Expert Randall Fitzwaters, who was conducting a seminar. While Agent Fitzwaters was applying chemicals to enhance the print, he destroyed it". There was never any pretrial discovery on this destruction of the print, which is a serious violation of Massachusetts rules of courts. Nor was Agent Fitzwaters called to testify at my trial. I have enclosed, in part, the testimony of Trooper Beehan (Marked Exhibit No. A)

    Since my trial, I have learned through my present counsel's private investigator that F.B.I. Agent Fitzwaters, who supposedly destroyed the print on the cup with chemicals, denies any knowledge or involvement in the alleged destruction of the palm print.

    The Massachusetts State Police fabricated a story about Agent Fitzwaters' destroying the bloody print, because this bloody print was an exculpatory piece of evidence that would have exonerated me. The Massachusetts

State Police withheld the bloody print to secure a conviction against me.

Massachusetts State Police Colonel Thomas Foley has been publicly condemning Federal Government Agencies for their use of James "Whitey" Bulger and Stephen "The Rifleman" Flemmi as informants. Colonel Foley has further condemned the F.B.I. for allegedly withholding evidence for 30 years that would have exonerated Joseph Salvati, Peter Limone and two other co-defendants in the Deegan murder.

Now, coincidently, it's the Massachusetts State Police, who are withholding evidence and wrongly accusing the F.B.I. for destroying the one piece of evidence that would have exonerated me.

The Federal Government has a golden opportunity to showcase my wrongful conviction. This would show the American people and the world that the Federal Government and the F.B.I. aren't the rogue agencies the Massachusetts State Police are making them out to be.

If a federal probe was conducted into my conviction, it would be discovered that not only did the Massachusetts State Police prejure themselves about the F.B.I.'s alleged destruction of the bloody print, but it would be further discovered that the Massachusetts State Police coached and fed four witnesses (all for the same family) information to secure the conviction against me. Work records for this family would prove this point. Also, there were other prints, blood samples, hairs and fibers found at the crime scene that were never tested in any way. D.N.A. testing was available in Massachusetts when the crime I am now wrongly convicted of was committed.

Well, there were alot more injustices involved in my wrongful conviction. If you or your office are interested, you can contact my Former Appellate Attorney. My attorney's information is enclosed with this letter.

I look forward to your anticipated cooperation in this matter.

<u>Page 3 of 3:</u>

Sincerely,

Jordan M. Price

CC: Enclosure

    Donald A. Harwood, Attorney
    305 Broadway, 7th Floor
    New York, N.Y. 10007
    Phone No(s). 212-822-1455 or 212-822-1400 or 518-392-0700

<u>Certified Mail #</u>
7002 2410 0004 4648 7773

- 11 -

Exhibit No. A
Page 1 of 3
From Trial Transcript
Day 2/Oct. 14. 1998

147

1    palm print cards that I, myself had taken from

2    numerous people in and around the area.

3    Q    One of those is Mr. Rice?

4    A    Yes, sir.

5    Q    Now, the print that was on the coffee cup in

6    blood, how many points were you able to discern of

7    that particular cup?

8    A    I could only see approximately four points, four

9    characteristics.  Four points was all I was able to

10   see.

11   Q    Now, in order to assist you, did you consult

12   with other individuals on how to proceed with this

13   particular print?

14   A    Yes, I do.

15   Q    Who are those individuals?

16   A    When I was still trying to develop to see if I

17   could develop this print more to have more points

18   become visible to the eye, I spoke with Lieutenant

19   Kenneth Martin from my office to see if he could

20   assist me in other chemicals that I was not familiar

21   with, trying to enhance this print.  In turn, he and

22   myself went to Rhode Island.  There was a seminar on

23   developing prints, different ways, one of them being

24   how to develop prints left in blood.

Start Reading Here.

Exhibit No. A                    148
Page 2 of 3
From Trial Transcript
Day 2-Oct. 14, 1998

1    Q    Who was conducting that?

2    A    Mr. Fitzwaters, and he was from the

3    Washington FBI Lab out there.  He is a latent print

4    examiner out there.

5    Q    When did this happen?

6    A    I did this on the 27th of September, of 1995, of

7    that year, a couple of days after the scene itself.

8    Q    Now, when you went to Rhode Island, where in

9    particular in Rhode Island did you go?

10   A    The seminar was held at the Johnson & Wales

11   facility out in -- Seekonk, Massachusetts, right on

12   the Rhode Island/Mass. line.

13   Q    Once you went there did you present this item to

14   Mr. Fitzwater?

15   A    Yes, I did.

16   Q    How did you package it for your journey?

17   A    I had it in a box, upside down, and I had it

18   barricaded around, so it would not move, with

19   different other small boxes with tissues, with paper

20   towels so it would stay stationary in the box, not to

21   disturb the print.

22   Q    Okay.  Was that item presented to this

23   individual?

24   A    Yes.

Exhibit No. A
Page 3 of 3
From Trial Transcript
Day 2 - Oct. 14, 1998

149

1  Q    Did he attempt to enhance the print?

2  A    Yes, he did.

3  Q    What happened when he attempted to enhance the

4  print?

5  A    Inadvertently when he was -- the chemicals we

6  work with are very wet; they're liquid, our

7  chemicals, and while he was working with another

8  chemical, trying to enhance the print, his gloved

9  hand was also wet, and when he went to roll the cup,

10 trying to put the chemicals on the outside of the

11 cup, he inadvertently held the handle of the cup and

12. wiped away my print.  He washed it away.

13 Q    Now, this was obviously before you had taken a

14 photograph?

15 A    I had taken a photograph of it, yes.

16 Q    You still had the photograph?

17 A    I still had the photograph.

18 Q    Did you take that photograph to somebody to try

19 to get help in enhancing it?

20 A    Yes, I did.

21 Q    Who was that, please?

22 A    One of the people was Juan Smith.  He's a palm

23 print expert out of the Mississippi Crime Lab in

24 Meridian, Mississippi.

*Stop Reading Here.*

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kenneth Kaiser, Special Agent in Charge
1 Center Plaza
Suite #600
Boston, Ma

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery  4-22-04
C. Signature  X Robert W. Smith   □ Agent □ Addressee
D. Is delivery address different from item 1? □ Yes □ No
 If YES, enter delivery address below:

3. Service Type
 ☒ Certified Mail   □ Express Mail
 □ Registered   □ Return Receipt for Merchandise
 □ Insured Mail   □ C.O.D.
4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number (Copy from service label)

7002 2410 0004 4648 7766

PS Form 3811, July 1999    Domestic Return Receipt    102595-99-M-1789

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

U.S. District Court of Mass.
Attn: Tony Anista, Clerk
U.S. Court House
1 Court house way
Boston, Ma. 02210

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery
C. Signature  X   □ Agent □ Addressee
D. Is delivery address different from item 1? □ Yes □ No
 If YES, enter delivery address below:

3. Service Type
 ☒ Certified Mail   □ Express Mail
 □ Registered   ☒ Return Receipt for Merchandise
 □ Insured Mail   □ C.O.D.
4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number (Copy from service label)

7002 2410 0004 4648 7742

PS Form 3811, July 1999    Domestic Return Receipt    102595-I

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Federal Bureau of Investigation
Attn: Violent Crime Division
1 Center Plaza
Suite #600
Boston, Ma.

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery
C. Signature  X Robert W. Smith   □ Agent □ Addressee
D. Is delivery address different from item 1? □ Yes □ No
 If YES, enter delivery address below:

3. Service Type
 ☒ Certified Mail   □ Express Mail
 □ Registered   ☒ Return Receipt for Merchandise
 □ Insured Mail   □ C.O.D.
4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number (Copy from service label)

7002 2410 0004 4648 7681

PS Form 3811, July 1999    Domestic Return Receipt    102595-I

---

1. Article Addressed to:

Robert S. Mueller, Director of F.B.I.
935 Pennsylvania Ave, N.W.
Washington, D.C. 20535-0001

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery
C. Signature  X   □ Agent □ Addressee
D. Is delivery address different from item 1? □ Yes □ No
 If YES, enter delivery address below:

3. Service Type
 ☒ Certified Mail   □ Express Mail
 □ Registered   ☒ Return Receipt for Merchandise
 □ Insured Mail   □ C.O.D.
4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number (Copy from service label)

7002 2410 0004 4648 7773

PS Form 3811, July 1999    Domestic Return Receipt    102595-I

# EXHIBIT "B"

2 of 2

Signed under the penalties of perjury this 24th day of October at Plymouth, MA.

_Ronald H. Rice_

Ronald H. Rice



# The Commonwealth of Massachusetts

## Department of State Police



This is to certify that CHECKMATE FORENSIC SERVICES, INC.

of PLYMOUTH, MASSACHUSETTS,

has been duly licensed to conduct the business of a

# PRIVATE DETECTIVE

under the title of NEW ENGLAND LEGAL INVESTIGATIONS (RONALD H. RICE, RESIDENT MANAGER)

at 53 AMANDA AVENUE, PLYMOUTH, MASSACHUSETTS 02360

in accordance with the provisions of Section 22-30, Chapter 147, of the General Laws,

from AUGUST 31, 2002 to AUGUST 31, 2003

(License Number P-99)

THIS LICENSE DOES NOT CONFER UPON THE LICENSEE THE POWER AND THE AUTHORITY

# EXHIBIT "C"



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

August 5, 2004

Mr. Jordan Rice
177 Battles Farm Drive
Brockton, Massachusetts  02301

Dear Mr. Rice:

I am writing in response to your correspondence addressed to the FBI.

Based on the information you have provided there is no violation within our jurisdiction. Therefore, the FBI can take no action regarding this matter.

The issues that you have brought to our attention should be filed through the appropriate appeals process. You may wish to contact an attorney for further assistance.

I am returning your correspondence.

Sincerely yours,

Jose A. Vargas
Chief, Civil Rights Unit
Criminal Investigative Division

Enclosure(s)

-21-

# EXHIBIT "D"

Jordan M. Rice - W65429
P.O. Box 8000
Shirley, Ma. 01464

Federal Bureau of Investigation (F.B.I.)
Attn: Freedom of Information Officer
Chief F.O.I.A. & Privacy Act Section
Room 6296 JEH
935 Pennsylvania Avenue, N.W.
Washington, D.C. 20535

(PAGE 1 OF 2)

Re: Freedom of Information Act Request

Dear F.O.I.A. Officer,

Hello, my name is Jordan M. Rice (Petitioner) and I am a Massachusetts State Prisoner incarcerated at Souza-Baranowski Correctional Center. Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and/or the Privacy Act, 5 U.S.C. § 552a, I now hereby request access to or a copy of all documentation "Confirming or Denying on September __, 1995, F.B.I. Agent Randall Fitzwaters, who is a Latent Print Expert at the F.B.I. C__ Laboratory in Washington, destroyed a Bloody Palm Print on a coffee cup brought to him by Massachusetts State Trooper Patricia Ann Bashan for a courtesy examination and courtesy opinion, while he (Fitzwaters) conducted a seminar at the Johnson & Wales Inn, in SeeKonK, Massachusetts."

I am aware I am entitled to make this request under the Freedom of Information and/or the Privacy Act and if your agency response is not satisfactory, I am prepared to make an administrative appeal. Please indicate to me the name of the official to whom such an appeal should be addressed. I am aware that if my request is denied I am entitled to Know the grounds for this denial.

I am aware that while the law allows your agency to withhold specified categories of

-22-

## PAGE 2 OF 2

exempted information, you are required by law to release any segregable portions that are left after the exempted material has been deleted from the data I am seeking.

I request a waiver of all fees for this request because I am a indigent inmate. Disclosure of the requested information to me is in the public interest and in the interest of justice because it is likely to contribute significantly to public understanding of the operations or activities of both the State (Massachusetts) and Federal government, and is not primarily in my commercial interest, nor a business trying to get information on industrial competitors.

If possible, I would prefer to see the original documents in person rather than having costs made, in order to avoid copying fees. Because subsequent requesters may also want copies of these documents, I do not consider it fair that as the first requester, I should bear the full cost of the initial search for this material.

I look forward to your prompt attention to this matter.

Respectfully Submitted,

x _Jordan Martell Rice_

Jordan Martell Rice

Dated: Oct. 5, 2004

CC: Enclosure

## Certified Mail No.
7003 1680 0004 8819 9206

# EXHIBIT "E"

Jordan Martell Rice - W65429
Souza-Baranowski Corr. Center
P.O. Box 8000
Shirley, Ma. 01464

Federal Bureau of Investigation
Attn: Freedom Of Information Officer
Chief F.O.I.A & Privacy Act Section
935 Pennsylvania Avenus, N.W.
Room 6296 JEH
Washington, D.C. 20535

Dear F.O.I.A. Officer,

Re: Freedom of Information Act Request
Freedom of Information Act, (5 U.S.C. sec. 552);
Privacy Act, (5 U.S.C. sec. 552 (b) (d) (6) (7);
General (5 U.S.C. sec. 552A (j) (2) or
Specific (5 U.S.C. sec. 552 A (K) (2)
Not Applicable To This Request.

This letter will serve as my request, pursuant to the provisions of the "Freedom of Information Act" (5 U.S.C. §552), and the Privacy Act (5 U.S.C. 552A (d) (1) (b)), and applicable state "Freedom of Information Provisional Statute and/or regulations if state agency request, for full disclosure and release of records and/or data contained in the files of your agency, and specifically maintained under my name and/or identifier assigned to my name.

This request is sought specifically for complete documents, Amendment, Deletion and/or expungment (5 U.S.C. § 552A (d) (2) (a)), or records maintained by your agency.

The records sought, but not limited to, is either view and go through the records maintained by your office/department, and to have copied after either reviewing or receiving a

— 26 —

list of compiled information within your office or department.

1. Investigation and/or Investigatory Reports filed by Latent Print Expert FBI Agent Randall Fitzwater or any other FBI Agent in regards to the Sept. 27, 1995 examined at Johnson & Wales Inn, in SeeKonK, Massachusetts during a seminar.

2. Investigation and/or Investigatory Reports filed by Latent Print Expert FBI Agent Randall Fitzwater or any other FBI Agent in regards to the Oct. 4, 2004 about my criminal conviction with my Private Investigator Ronald H. Rice.

3. Reports of Evidentiary and/or Scientific Information finds by Latent Print Expert FBI Agent Randall Fitzwater or any other FBI Agents.

4. Final and Closing Investigatory Reports filed by Latent Print Expert FBI Agent Randall Fitzwater or any other FBI Agents.

5. Criminalistics and/or Chemist Reports filed by Latent Print Expert FBI Randall Fitzwater or any other FBI Agents.

6. Internal Reports filed by Latent Print Expert FBI Agent Randall Fitzwater, any other FBI Agents or Office of Professional Responsibility.

7. Any and all information, data or reports and/or memos otherwise not exempted by Statute (5 U.S.C. § 552 (c) (a) (b) (n)), (5 U.S.C. § 552A (j) (2) (K) (2), or law;

Terllan V. Saxbe, 507 F. 2d 116, 156 U.S. App. D.C. 293 (1974), Sullivan V. Murphy, 478 F. 2d 938, 156 U.S. App. 28 (1973). Your agency is advised that investigation reports in total, are no longer exempted status unless under the specific exemptions noted, and only

with reference to specific citation of authority, Paton v. LaPrade, 524 F.2d 862, 868-69 (3rd Cir. 1975)

It is further requested that your agency in response to the material requested, specifically inform me if and to whom the file and/or material therein contained has been released too. Any identifiable individual(s) or agency, their name, title, purpose and need for such information and need for such information, the date of such release, the specific material that was release, the person within your agency who released such information, and specific reference to authority, statute or regulation, governing such release (5 U.S.C. §552A (B) (1), Paton v. LaPrade, 524 F.2d 862 (3rd Cir. 1975); Tarlton V. Saxbe, 507 F.2d 116, 165 U.S. App. D.C. 293 (1974), Linda V. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed. 2d. 536 (1973).

It is further requested that your agency provide me with a copy of specific regulations of your department as provided by statute (5 U.S.C. § 553), so that compliance with such regulations is adhered to except as otherwise provided by law (5 U.S.C. § 701 et seq.).

This request is made pursuant to the "Freedom of Information Act" (5 U.S.C. § 552), and the "Privacy Act" (5 U.S.C. §552A), together with the "alternative means of access", to permit me maximum access to the records in and maintained on file in your agency. If and for Any reason it is determined that portions of §552 (6) (a) (b) (7), 552A (j) (3), (k) (2)), or by regulation pursuant to Menard v. Mitchell, 430 F.2d 486, 139 U.S. App. D.C. 113 (1970); Nemetz V. Department of Treasury, 446 F. Supp. 102, I request specific citation to authority for such deletion.

If it should be determined that any material be deemed Confidential, due to identification of source, then permission is granted to the agency to delete source of identification Only from material for release. Paton v. LaPrade, 524 F.2d 862 (3rd Cir. 1975), Chastain V. Kelly, 510 F.2d 1232

Pursuant to title (5 U.S.C. § 552 (6) (a) (i)), it is noted that your agency had (10) TEN working days following the receipt of this request to provide the information and material sought. Should any reasonable delay be occasioned, it is requested that your agency inform

-28-

...me of this delay, as provided by agency regulations, and the date as to when your agency will be able to act upon the request. Also for your convenience any files under my name and/or related to me filed by FBI Agent Randall Fitzwater or any other FBI Agents.

I look forward to your anticipated cooperation to this matter

Respectfully Submitted,

Jordan Martell Rice

Dated: Nov. 19, 2004

Jordan Martell Rice
D.O.B: _____
S.S.N.: _____

Certified Mail No.
7003 2260 0000 1351 7502

# EXHIBIT "F"

Jordan M. Rice - 6465429
177 Battles Farm Dr.
Brockton, Ma. 02301

U.S. Department of Justice
Federal Bureau of Investigation
Attn: Mr. Jose A. Vargas, Chief
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Re: <u>Freedom of Information Act Request</u>

Dear Mr. Vargas,

Hello, I am in receipt of your letter dated August 5, 2004. In response of your said "Letter", please find enclosed your copy of my Freedom of Information Act (F.O.I.A.) Request that has been forwarded to the FBI's - F.O.I.A. Officer via Certified Mail. Would you please ensure that a "Honest" effort is made to fulfill my enclosed F.O.I.A. Request.

I look forward to your anticipated cooperation in this matter.

Respectfully Submitted,

x. _____

Jordan M. Rice

Dated: <u>Nov. 19, 2004</u>

CC: Charles Stephenson, Attorney
Rice Family
Enclosure

-34-



U.S. Department of Justice

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

December 1, 2004

MR JORDAN MARTELL RICE
**W65429
POST OFFICE BOX 8000
SHIRLEY, MA 01464

Request No.: 1009313- 000
Subject: RICE, JORDAN MARTELL

Dear Mr. Rice:

This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above.

Based on the information furnished, a search of the automated indices to our central records system files at FBI Headquarters located no records responsive to your FOIPA request.

Although no records responsive to your FOIPA request were located in our automated indices, we are required to inform you that you are entitled to file an administrative appeal if you so desire. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U. S. Department of Justice, Suite 570, Flag Building, Washington, D. C. 20530, within 60 days from the date of this letter. The envelope and the letter should be clearly marked "Information Appeal." Please cite the FOIPA request number assigned to your request so that it may easily be identified.

Should you desire a check of our field office files, it will be necessary for you to direct your request to the appropriate field office.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division

# EXHIBIT "I"

-37-

Jordan M. Rice - W65409
P.O. Box 8000
Shirley, Ma. 01464

Office of Information and Privacy
U.S. Department of Justice, Suite # 570
Flag Building
Washington, D.C. 20530

Re: Freedom of Information-Privacy Acts Administration Appeal

Dear Director,

Hello, this is an Administration Appeal under the Freedom of Information-Privacy Acts, 6 U.S.C. Sec. 552(a) and any and all Administrative Appeals applicable to Provisional Statutes and/or Regulations.

I filed my First request for documents under the Freedom of Information-Privacy Acts on October 5, 2004, which is marked Exhibit No. 1. Out of fear that this request was too vague to be successful, I filed my Second request for documents under the Freedom of Information-Privacy Acts on November 19, 2004, which is marked Exhibit No. 2. As you will notice my second request (Exhibit No. 2) is in very painstaking Detail. At less one of my said "Request" was assigned the following identification number 1009313-00.

On December 1, 2004, I received a response to my request in a letter signed by Mr. David M. Hardy. I am writing to obtain a precise determination of why my request has been denied, when documents do exist pertaining to my said "Request".

The documents that were withheld must be disclosed under the FOIPA because it is likely to contribute significantly to public understanding of the operations or activities of both the State Police of Massachusetts, Federal Bureau of Investigation and Federal Government, and is not primarily in my

PAGE 2 of 2

commerical interest, nor a business trying to get information on industrial competitors.

I expect a final ruling on my appeal within twenty working days, the time specified in the statute.

Thank you for consideration of this appeal.

Sincerely,

Jordan M Rice

Dated: Dec. 17, 2004

CC: Franci Richardson, Boston Herald Reporter
    Charles Stephenson, Attorney
    Enclosure

Certified Mail No.
7003 2260 0002 1864 3495

-39-

# EXHIBIT "J"



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**JAN 0 4 2005**

Mr. Jordan M. Rice
No. W65429
177 Battles Farm Drive
Brockton, MA 02301

      Re:  Request No. 1009313-00

Dear Mr. Rice:

      This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation on your request for information from the files of the Department of Justice was received by this Office on December 27, 2004.

      The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours.  In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt.  Your appeal has been assigned number **05-0699**.  Please mention this number in any future correspondence to this Office regarding this matter.

      We will notify you of the decision on your appeal as soon as we can.  The necessity of this delay is regretted and your continuing courtesy is appreciated.

                  Sincerely,

                  Priscilla Jones
                  Administrative Specialist

-41-

# EXHIBIT "K"

CHARLES K. STEPHENSON

ATTORNEY AT LAW

P.O. BOX 266

SOUTH HADLEY, MASSACHUSETTS 01075

(413) 467-7227

March 16, 2005

Mr. Jordan M. Rice
P.O. Box 8000
Shirley, Massachusetts  01464

Dear Jordan:

I called Mr. Harwood to remind him about the second box of
your file, and he assured me he would send it out right
away.  I have called the Department of Justice contact and
left her a voice mail; the clerk in Brockton is looking
through the folders in your file for the impounded
materials; Mr. Vargas has left the FBI, but I am awaiting a
call back from the Civil Rights Unit's present supervisor,
Therese Roberson.

There are no Deborah or Debbie Freemans in the Brockton
area, although there is a D. Freeman at 43 Morton Street,
if your mother cares to check that out.  There are no Linda
or L. Kings; there are 23 Kings in Brockton, but none on
Battle Street.  There are no Frances in Brockton.  There
are no R. Terrys or Robert Terrys, but there is a Rose
Terry at 755 (as opposed to 569) Crescent Street.  The
Lithuanian Village Cafe Family Pizza restaurant is at 128
Ames Street, 508.580.4624.  Before we involve Mr. Watts in
this project, it seems appropriate to ask your mother to
make some preliminary inquiries.  Although you cannot meet
with her or call just now, you could perhaps write and
suggest that she initiate this process when she has a free
evening.

Sincerely yours,

Charles K. Stephenson

CKS/rm

-43-

## *Submitting Latent Print Evidence*

Questions concerning latent print evidence should be directed to **202-324-2163**. Follow the **Evidence Submission** directions including <u>Requesting Evidence Examinations</u> and <u>Packaging and Shipping Evidence</u>.

- Place nonporous evidence in separate protective coverings such as thick transparent envelopes or suspend in a container so that there is minimal surface contact. Place porous evidence in separate protective coverings such as paper envelopes. Stabilize the evidence to avoid movement or friction during shipment.



*Fingerprint card.*

- Submit the fingerprints and palm prints of all personnel who handled the evidence and of all individuals who are suspects in the investigation with the evidence. All fingerprint cards must include pertinent information.

- Palm prints should be taken on a separate card, not on the reverse side of a fingerprint card.

- When fingerprint cards or major case prints are submitted for comparisons with evidence, the criminal/suspect or noncriminal/elimination nature of the prints should be stated in the communication.

- When inked prints are submitted separately, a communication should be sent with the prints referencing previous communications and pertinent numbers.

- Fingerprints from decomposed bodies are often not classifiable, which precludes a search of the FBI's fingerprint files. An individual fingerprint may, however, be suitable for identification purposes. If less than ten legible fingerprints are obtained, submit the available fingerprints and a complete physical description of the unknown deceased.

- Legible, unknown deceased, ten-print fingerprint cards should be submitted for identification purposes to the FBI's Criminal Justice Information Services Division at the following address. Questions concerning ten-print fingerprint card submissions should be directed to **304-625-2360**.

**FEDERAL BUREAU OF INVESTIGATION**
**CRIMINAL JUSTICE INFORMATION**
**SERVICES DIVISION**
**1000 CUSTER HOLLOW ROAD**
**CLARKSBURG WV 26306**

- When printing the deceased, obtain inked fingerprints and palm prints for comparison with latent prints. If legible prints are not obtainable, amputate the hands or the fingers with authority from a coroner or a medical examiner and submit the evidence to the Laboratory.

- Pack each finger in a separate container, labeled **RIGHT THUMB, RIGHT INDEX**, and so on. Pack the hands or fingers in unbreakable, watertight, and airtight containers with a 70 percent solution of alcohol. All human remains will be returned to the contributor.



## *Evidence Submission*

### Requesting Evidence Examinations

For guidelines on how to package and ship evidence, see <u>Packaging and Shipping Evidence</u>.

All requests for evidence examinations should be in writing, addressed to the FBI Laboratory Evidence Control Center, and contain the following information:



- The submitting contact person's name, agency, address, and telephone number;

- Previous case identification numbers, evidence submissions, and communications relating to the case;

- Description of the nature and the basic facts concerning the case as they pertain to the Laboratory examinations;

-46-

**FEDERAL BUREAU OF INVESTIGATION**
**LABORATORY DIVISION**
**ATTENTION: EVIDENCE CONTROL CENTER**
**935 PENNSYLVANIA AVENUE NW**
**WASHINGTON DC 20535-0001**
202-324-3000



14. Ship evidence via U.S. Postal Service Registered Mail, United Parcel Service, or Federal Express. Record the method of shipment and the tracking number or numbers on the chain-of-custody form.

15. Rendered-safe explosive devices must be shipped via United Parcel Service.

16. Live ammunition must be shipped via Federal Express. The following guidelines must be followed to comply with U.S. Department of Transportation regulations:

- Live ammunition must be packaged and shipped separately from firearms.

- Pack ammunition in a cardboard container.

- Label invoices **FEDERAL EXPRESS**.

- The shipper's certification for restricted articles must be included.

- The outside of the container must be labeled **ORM-D AIR, CARTRIDGES SMALL ARMS**.

- The shipping papers must also include the weight in grams.

17. *The Interstate Shipment of Etiologic Agents* (42 CFR Part 72) provides packaging and labeling requirements for etiologic agents (viable microorganisms or toxins that cause or may cause human disease) shipped in interstate traffic. For additional information, contact the Centers for Disease Control and Prevention in Atlanta, Georgia, at **404-633-5313** or visit their Web site at www.cdc.gov/od/ohs/biosfty/shipregs.htm

Package and label etiologic agents in volumes of less than 50 mL in glass tubes as shown in the drawings below and sealed with waterproof tape. Place each tube containing a culture inside a capped container packed with absorbent materials. Package this primary container within a secondary capped container that is labeled with the specimen record (CDC 3.203). Surround the secondary container with dry ice and seal it within a capped shipping container marked with the destination address and the appropriate infectious substance or etiological agent label.







Affix the regulation label shown at left to all shipments

## FBI Laboratory Services

The successful investigation and prosecution of crimes requires, in most cases, the collection, preservation, and forensic analysis of evidence. Forensic analysis of evidence is often crucial to demonstrations of guilt or innocence.

The FBI Laboratory is one of the largest and most comprehensive forensic laboratories in the world. Services of the Laboratory are available to

- FBI Field Offices and Legal Attachés;

- U.S. Attorneys, military tribunals, and other federal agencies for civil and criminal matters; and

- All state, county, and municipal law enforcement agencies in the United States and territorial possessions for criminal matters.

All Laboratory services, including expert witness testimonies, are rendered free of cost, but the following limitations apply:

- No examination will be conducted on evidence that has been previously subjected to the same type of examination. Exceptions may be granted when there are reasons for a reexamination. These reasons should be explained in separate letters from the director of the laboratory that conducted the original examination, the prosecuting attorney, and the investigating agency.

- No request for an examination will be accepted from laboratories having the capability of conducting the examination. Exceptions may be made upon approval of the FBI Laboratory's Assistant Director or his designee.

- No testimony will be furnished if testimony on the same subject and in the same case is provided for the prosecution by another expert.

- No request for an examination will be accepted from a nonfederal law enforcement agency in civil matters.

## Violent Crime Versus Property Crime

The FBI Laboratory accepts evidence related to all crimes under investigation by FBI Field Offices. The FBI Laboratory accepts only evidence related to violent crime investigations from state and local law enforcement agencies. The Laboratory does not routinely accept evidence in cases involving property crimes from state and local law enforcement agencies unless there was personal injury or intent to cause personal injury. These guidelines help to ensure that the FBI Laboratory continues to provide timely forensic assistance to law enforcement agencies investigating crimes of violence or threatened violence. Additional restrictions may be imposed on case acceptance to achieve this goal.

At the discretion of the FBI Laboratory's Assistant Director or his designee, the Laboratory may accept evidence from property crime cases. Such exceptions will be considered on a case-by-case basis and should not be regarded as setting a precedent for future case acceptance. All accepted cases will be afforded the full range of forensic services provided by the FBI Laboratory.

The following are examples of property crimes that are not routinely accepted for examinations:

- Arson of unoccupied residential and commercial buildings and property;

- Explosive incidents and hoaxes targeting unoccupied residential and commercial buildings and property;

- Vandalism and malicious mischief directed toward residential or commercial buildings and property;

- Nonfatal traffic accidents involving speedometer and headlight examinations except in cases involving law enforcement and government officials;

- Hit-and-run automobile accidents not involving personal injury;

- Auto theft except auto theft rings or carjackings;

- Breaking and entering;

- Burglary;

- Minor theft (under $100,000); and

- Minor fraud (under $100,000).

EXHIBIT "M"

Page 1 of 3

From Trial Transcript
Day 2/Oct 14. 1998

1   palm print cards that I, myself had taken from

2   numerous people in and around the area.

3   Q    One of those is Mr. Rice?

4   A    Yes, sir.

5   Q    Now, the print that was on the coffee cup in

6   blood, how many points were you able to discern of

7   that particular cup?

8   A    I could only see approximately four points, four

9   characteristics.  Four points was all I was able to

10  see.

11  Q    Now, in order to assist you, did you consult

12  with other individuals on how to proceed with this

13  particular print?

14  A    Yes, I do.

15  Q    Who are those individuals?

16  A    When I was still trying to develop to see if I

17  could develop this print more to have more points

18  become visible to the eye, I spoke with Lieutenant

19  Kenneth Martin from my office to see if he could

20  assist me in other chemicals that I was not familiar

21  with, trying to enhance this print.  In turn, he and

22  myself went to Rhode Island.  There was a seminar on

23  developing prints, different ways, one of them being

24  how to develop prints left in blood.

Start
Reading
Here.

Page 2 of 3
From Trial Transcript
Day 2 - Oct. 14, 1998

1    Q    Who was conducting that?

2    A    Mr. Fitzwaters, and he was from the

3    Washington FBI Lab out there.  He is a latent print

4    examiner out there.

5    Q    When did this happen?

6    A    I did this on the 27th of September, of 1995, of

7    that year, a couple of days after the scene itself.

8    Q    Now, when you went to Rhode Island, where in

9    particular in Rhode Island did you go?

10   A    The seminar was held at the Johnson & Wales

11   facility out in -- Seekonk, Massachusetts, right on

12   the Rhode Island/Mass. line.

13   Q    Once you went there did you present this item to

14   Mr. Fitzwater?

15   A    Yes, I did.

16   Q    How did you package it for your journey?

17   A    I had it in a box, upside down, and I had it

18   barricaded around, so it would not move, with

19   different other small boxes with tissues, with paper

20   towels so it would stay stationary in the box, not to

21   disturb the print.

22   Q    Okay.  Was that item presented to this

23   individual?

24   A    Yes.

Page 3 OF 3
From Trial Transcript
Day 2 - Oct. 14, 1998

1    Q    Did he attempt to enhance the print?

2    A    Yes, he did.

3    Q    What happened when he attempted to enhance the

4    print?

5    A    Inadvertently when he was -- the chemicals we

6    work with are very wet; they're liquid, our

7    chemicals, and while he was working with another

8    chemical, trying to enhance the print, his gloved

9    hand was also wet, and when he went to roll the cup,

10   trying to put the chemicals on the outside of the

11   cup, he inadvertently held the handle of the cup and

12   wiped away my print. He washed it away.

13   Q    Now, this was obviously before you had taken a

14   photograph?

15   A    I had taken a photograph of it, yes.

16   Q    You still had the photograph?

17   A    I still had the photograph.

18   Q    Did you take that photograph to somebody to try

19   to get help in enhancing it?

20   A    Yes, I did.

21   Q    Who was that, please?

22   A    One of the people was Juan Smith. He's a palm

23   print expert out of the Mississippi Crime Lab in

24   Meridian, Mississippi.

*Stop Reading Here.*

# EXHIBIT "N"

# Suffolk DA clears Greco posthumously on 1965 murder rap

By J.M. LAWRENCE

Louis Greco died behind bars for murder after maintaining his innocence for 30 years.

Now the Suffolk District Attorney's office finally believes him. Greco, a World War II veteran hobbled by a shot to the ankle in the Philippines, always claimed he was in Florida on March 12, 1965, when the mob shot Edward Deegan in a Chelsea alley. He passed three polygraphs and won two commutations that were never acted upon by former governors.

In a motion quietly filed in Suffolk Superior Court in September, the DA's office finally acknowledged what new testimony and secret FBI memos uncovered recently have revealed. Greco was framed by mob hit man-turned-government witness Joseph Barboza.

"It appears that justice may not have been done," Assistant DA Mark Lee said in the motion to drop all charges against Greco posthumously. The motion cites "legal and ethical considerations raised by the newly discovered FBI documents, as well as principles of consistency and fundamental fairness" as the reasons.

The DA's office dropped the charges against Greco's co-defendants Peter J. Limone and Joseph Salvati in January 2001. Limone was released after 33 years behind bars. Salvati was in prison for 30.

For Greco's family and friends, the DA's motion is a mere formality in a long battle to clear Greco's



GRECO: Cleared of murder charge by DA after dying in jail.

name and seek compensation from the FBI for backing perjured testimony in the case.

"Big (expletive) deal," said one longtime friend of Greco's about the move to drop the charges.

The Justice Department refuses to settle the lawsuits filed by Greco's estate, Limone and Salvati. The government has argued it can't be held responsible for the actions of FBI agents under tort laws in effect in the 1960s.

Former New England Mafia leader Francis P. Salemme told congressional investigators that former FBI agent Dennis Condon met with him after the Deegan verdict in 1968 and laughed about setting up Greco.

Greco was 78 when he died in a prison hospital in 1995 from colon cancer and heart disease. He suffered horribly, according to the suit filed by his son, Edward Greco. He could not get proper care for his diabetes and lost a leg to amputation.

His sons grew up without their father and watched him deteriorate in prison. Both men fell into deep depressions as adults. Louis Greco Jr. committed suicide by drinking a bottle of Drano in 1997, court papers said.

Attorney Howard Friedman, who represents Edward Greco, said the DA's decision to drop the charges will aid his lawsuit.

"He knew his father didn't do it," Friedman said. "This was an innocent man who was framed, and the most amazing part is the government knew it."

# EXHIBIT "O"

CASE# D95-0808

## MASSACHUSETTS STATE POLICE
## CRIME SCENE SERVICES SECTION
### EVIDENCE RECOVERY LOG

LOCATION __475 Battles Farm Dr., Brockton__
DATE __9-23-95__
VICTIM __Diane Harrigan__
CRIME SCENE TECH. __Tpr. EM Clifford__
__Tpr. PA Beehan__

INVEST. OFFICER Tpr. Joseph Mason
EVID. OFFICER Tprs. Clifford & Beehan
SIGNED
DATE/TIME __9-23-95__

| ITEM# | DESCRIPTION | WHERE FOUND | RECOVERED BY | MARKING Direct Indirect | PACKAGE METHOD | RETURNED TO: DATE | SIGNATURE |
|---|---|---|---|---|---|---|---|
| | Smoke detector | Under bed | EMC/PAB | I | Bag | 12-1-95 | Tpr.J.Mason |
| | Misc papers | Bedroom floor | EMC/PAB | I | Bag | 9-23-95 | Tpr.J.Mason |
| | Roll of film | Kitchen table | EMC/PAB | I | Bag | 12-1-95 | Tpr.J.Mason |
| | Empty boxes soap | Bathrm wastebsk | EMC/PAB | I | Bag | | Tpr.J.Mason |
| | Coffee cup | Kitchen sink | EMC/PAB | I | Bag | 10-21-96 | Tpr.J.Mason |
| | Phone, pink | Kitchen counter | EMC/PAB | I | Bag | 12-1-95 | Tpr.J.Mason |
| | Key ring | Kitchen counter | EMC/PAB | I | Bag | | Tpr.J.Mason |
| | Kitchen sink faucet | Kitchen | EMC/PAB | I | Bag | | Tpr.J.Mason |
| | -Right handle | | EMC/PAB | I | Bag | | Tpr.J.Mason |
| | -Left handle | | EMC/PAB | I | Bag | | Tpr.J.Mason |
| | -Base | | EMC/PAB | I | Bag | | Tpr.J.Mason |
| | -Water purifier | | EMC/PAB | I | Bag | | Tpr.J.Mason |
| | Dial soap | Kitchen, over sink | EMC/PAB | I | Bag | | Tpr.J.Mason |
| | Fast orange soap | Kitchen, over sink | EMC/PAB | I | Bag | | Tpr.J.Mason |
| | Formica | Kitchen, log by sink | EMC/PAB | I | Bag | | Tpr.J.Mason |
| | Phone, white | Living rm on couch | EMC/PAB | I | Bag | | Tpr.J.Mason |
| | Remote control | LvRM.table by couch | EMC/PAB | I | Bag | | Tpr.J.Mason |

-60-

EVIDENCE PROCESSING RESULTS

## RESULTS OF PROCESSING

\#

1. No latent prints of value developed.

2. Did not process for prints.

3. Did not process for prints.

4. No latent prints of value developed.

5. Partial palm print. (in blood)

6. No latent prints of value developed.

7. No latent prints of value developed.

8. Insufficient points on right faucet handle. (in blood) No value on rest of faucet parts.

9. No latent prints of value developed.

0. No latent prints of value developed.

1. No latent prints of value developed. (in blood)

2. No latent prints of value developed.

3. No latent prints of value developed.

TROOPER PATRICIA A. BEEHAN #0591
CRIME SCENE SERVICES SECTION
STATE POLICE MIDDLEBORO SUB-LAB