Exhibit

"C"

United States District Court
District Of Massachusetts

Jordan M. Rice,                    )        DKT. No. 06-10431-RCL
          Plaintiff,               )
                                   )
V.                                 )
Federal Bureau Of Investigation,   )
          Defendants, et al.,      )

## Plaintiff's Opposition To Defendant's Motion To Dismiss

Plaintiff, Jordan M. Rice, respectfully requests the court enter an order denying the Defendant's Motion To Dismiss because the court does have Jurisdiction over the complaints subject matter in this civil action. In support, the Plaintiff says:

1. The defendant's limited their search for requested information under the Freedom Of Information/Privacy Acts ("FOIPA") only to an automated search and failed to search additional sources that are likely to turn up the information requested.

WHEREFore, the Plaintiff respectfully requests, for reasons that are more fully detailed in his accompanying Declaration, and Memorandum Of Law, the court deny the defendant's motion along with compelling them to search the additional sources, product the information requested and answer the Plaintiff's interrogatories.

Respectfully Submitted,

Dated: Dec 30, 2006 A.D.

Jordan M. Rice
P.O. Box 100
Walpole, Ma. 02071

United States District Court
District Of Massachusetts

Jordan M. Rice,
    Plaintiff,

V.

Federal Bureau Of Investigation,
    Defendant's, et. al.,

DKT. No. 06-10431-RCL

## Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion To Dismiss

# ARGUMENTS

## Point I

## Court has Jurisdiction Over The Subject Matter Of This Civil Action

"[A]gency obligations under FOIA is long-established and embraces the Congressional purpose of open government". See Valencia-Lucena V. U.S. Coast Guard, 180 F.3d 321, 325 (D.C.Cir.1999)(quoting Campbell V. United States Dept of Justice, 164 F.3d 20, 27 (D.C.Cir.1998)). While recognizing that the number of requests for information may pose burdens on agencies, congress determined it's ultimate policy of open government should take precedence. See John Doe Agency V. John Doe Corp. 493 U.S. 146, 151, 110 S.Ct. 471, 107 L.Ed. 2d 462 (1989); Department of the Air Force V. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed. 2d 11 (1976)

    The fundamental principle animating FOIA is public access to government documents. See John Doe Agency, 493 U.S at 151, 110 S.Ct. 471. A requester

-103-

dissatisfied with the agency's response that no records have been found may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies. See 5 U.S.C. § 552 (A)(6)(A)(i) & (c); Oglesby V United States Dept of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990) ("Oglesby I")

The Defendants limited their search only to an automated search of FBI Headquarters and failed to search additional sources that are likely to turn up the information requested which is set forth in their Declaration. ~~Plus~~ The Plaintiff is challenging the adequacy of the defendants search which is a claim the District Court has Jurisdiction ~~has~~ over. On this argument the defendants must fail.

# Point II

## There Are Genuine Issues Of Material Fact That Preclude Summary Judgment For The Defendants

Summary Judgment is to be granted only if the record before the court show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Rule 56(c), Fed. R. Civ. P. A "material" fact is one that "might affect the outcome of the suit under the governing law". Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). IF a review of the record raises substantial doubt as to adequacy of agency's search for record sought pursuant to Freedom of Information Act (F.O.I.A.), particularly in view well-defined requests and positive indications of overlooked materials, summary judgment for agency in requestor's FOIA action is inappropriate. 5 US C § 552 (a)(6)(A)(i), (c)

The genuine issue in the case at bar is set forth in the defendants

declaration accompanying their motion to dismiss which omit's they only conducted an automated search of FBI Headquarters and failed to search the following additional sources for Plaintiff's requested information :

(A) Search under the name of Private Investigator Ronald Rice ;

(B) Search the Federal Archives and Records Center in Bayonne, New Jersey ;

(C) Search the FBI Criminal Laboratory ;

(D) Search Def. Randall Fitzwaters Field Office ;

(E) Search the Federal Record Center in Georgz ;

(F) Search under the name of Massachusetts State Police Trooper Patricia Beehan ;

(G) Personally contact Def. Randall Fitzwaters, himself ;

(H) Personally contact Def. Randall Fitzwaters Supervisor at the time he had the conversation, denying the destruction of the bloody palm print , with Private Investigator Ronald Rice .

The Defendants declaration omits they limited their search only to an automated search. It is transparent that the defendants "cannot limit it's search" to only one or more places if there are additional sources "that are likely to turn up the information requested". <u>Valencia-Lucena</u> 180 F.3d. at 3.26. The defendants search is "inadequate when it was evident from the agency's disclosed records that a search of another of its records system might uncover the documents sought". <u>Valencia-</u>

- 105 -

<u>Lucena</u>, 180 F.3d at 326. The automated search failed to produce the requested information and the defendants should of personally contacted Def. Fitzwaters personally because "when all sources fail to provide leads to the missing record, agency ~~personally~~ should be contacted if there is a close nexus, as here, between the person and the particular record". <u>Valencia-Lucena</u>, 180 F.3d at 328 ; See also <u>Nation Magazine V. United States Customs Serv.</u>, 71 F.3d 885, on remand, 937 F.Supp. 39, 43-44 (D.D.C. Cir.1996)

Noting, correctly, that the adequacy of a search is separate from the question of whether the requested [documents] are found. <u>Nation Magazine</u>, 71 F.3d at 892 n.7, <u>Meerpol v. Meese</u>, 790 F.2d 942, 953 (D.C. Cir. 1986), See also <u>Perry V. Block</u>, 684 F.2d 121, 128 (D.C. Cir. 1982). In the case at bar "a review of the record raises substantial doubt, particularly in view of well defined request and positive ~~iosppspots~~ indications of overlooked materials ... summary judgment is inappropriate for the defendants. <u>Valencia-Lucena</u>, 180 F.3d at 326 ; <u>Founding Church of Scientology V National Sec Agency</u>, 610 F.2d 824, 837 (D.C. Cir.1979) ; <u>Oglesby V United States Dept of the Army</u>, 79 F.3d 1172, 1185 (D.C. Cir. 1996) (Oglesby II) ; <u>Krikorian V. Department of State</u> 984 F.2d 461, 468 (D.C. Cir. 1993); <u>Weisberg V. United States Dept of Justice</u>, 627 F.2d 365, 369-70 (D.C. Cir.1980).

Therefore, the inadequate of the defendants search raises a Genuine Issue of Material Fact that precludes summary judgement in their favor. Hereto the defendants must fail.

# Point III

# Plaintiff Is Being Denied Impartial Adjudication By Defendants

The Defendants are not to withhold requested information if it denies

— 101 —

"An Impartial Adjudication". 5 U.S.C. § 552 (b)(7). Also see Brady V. Maryland, 373 U.S. 83, 855 (1963) (Government must turnover exculpatory evidence). See Commonwealth V. Rice, 441 Mass. 291, 303-04 (2004).

The information requested is highly exculpatory because it will establish beyond a reasonable doubt that Massachusetts State Police Trooper Patricia Bechan committed perjury under oath at Plaintiff's State murder trial to withhold exculpatory evidence ("Bloody palm print") which would prove beyond a reasonable doubt he is NOT GUILTY of murder and arson. Additionally, a conviction base upon false testimony violates due process. Giglio V. United States, 405 U.S. 150 (1972) (Conviction based upon perjured testimony violates due process); Napue V. Illinois, 360 U.S. 264 (1959) (Same). The current withholder of their requested information is deny directly denying the Plaintiff " an impartial adjudication" on his Habeas Corpus Petition, Chief Judge Mark L. Wolf presiding, because production of requested information would establish the above Constitutional Violations which would warrant reversal of Plaintiff's wrongful murder and arson convictions. 5 USC. §552 (b)(7).[1]

Therefore, the Defendants are denying the Plaintiff an impartial adjudication.

---

[1] The Habeas Corpus Petition currently pending before the District Court with Chief Judge Mark L. Wolf presiding is Rice V. Brady, DKT. No. 04-10859-MLW. Also it should be noted the Plaintiff cites Supreme Court and District of Columbia Caselaw because the Defendants are in Washington, D.C.

# CONCLUSION

For the foregoing reasons the Plaintiff respectfully moves this Court enter an order denying defendants Motion To Dismiss along with compelling them to search the additional sources, product the information requested and answer Plaintiff's interrogatories.

Respectfully Submitted,

Dated: Dec. 30, 2006 A.D

United States District Court
District Of Massachusetts

Jordan M. Rice,
        Plaintiff,

V.

Federal Bureau Of Investigation,
        Defendants, et. al.,

DKT. No. 06 - 10431 - RCL

<u>Plaintiff's Interrogatories And Request For Production Of Documents
For Defendant Randall Fitzwaters</u>

Pursuant to Rules 33 and 34, Fed. R. Civ. P., the submits the following interrogatories and request for documents to Defendant Randall Fitzwaters. You are directed to answer each of the interrogatories in writing under oath and produce each of the requested documents for inspection and copying, within 30 days of the District Courts order.

1. State whether on September 27, 1995 you attended and/or conducted a seminar at the Johnson and Wales, Inn, in Massachusetts or Rhode Island. Produce any documents describing your role at the seminar

2. State whether on September 27, 1995, at the Johnson and Wales, Inn. seminar, if you examined a bloody palm print on a coffee cup at behest of Massachusetts State Police Trooper Patricia Bashan. If this examination is set forth in any job description, or other document(s), produce the documents.

3. State whether on September 27, 1995 at the Johnson and Wales, Inn. seminar you inadvertently destroyed the bloody palm print on the coffee cup during the examination. If those

-109-

action are set forth in documentation, produce the documents.

4. State the FBI policy in effect during September of 1995 for State Law Enforcement submitting evidence to be examined and/or tested. If those procedures are set forth in any policy, directive, or other documents, produce the documents.

5. State whether FBI policy in effect during September of 1995 allowed examination and testing of evidence from State Enforcement at seminar's. If those procedures are set forth in any policy, directive, or other documents, produce the documents.

6. State whether on October 4, 2002, you had a conversation with Private Investigator Ronald Rice denying involvement of the alleged September 27, 1995 destruction of the bloody palm print at Johnson and Wales seminar. If this conversation is set forth in any job description or other document(s), produce the documents.

7. State whether on October 4, 2002, you refused to provide Private Investigator Ronald Rice an affidavit confirming you had no involvement in the September 27, 1995 destruction of the bloody palm print on a coffee cup at Johnson and Wales seminar. If those procedures are set forth in any policy, directive, or other documents, produce the documents.

8. State whether on October 4, 2002, you informed Private Investigator Ronald Rice that you would file documentation with your Supervisor make s/he aware that you had no involvement in the September 27, 1995 destruction of the bloody palm print on the coffee at Johnson and Wales seminar. If those duties are set forth in any job description, policy, memos, directive or other documents, produce the documents.

9. State whether pursuant to your October 4, 2002 conversation with Private Investigator

- 110 -

Ronald Rice if you did file any documentation with your Supervisor's informing S/he that you did or didn't have no involvement in the September 27, 1995 destruction of the bloody palm print on the Coffee cup at Johnson and Wales Seminar. If those duties are set forth in any job description, policy, memo's, directive or other documents, produce the documents.

Respectfully Submitted,

Dated: Dec. 30 2006 A.D

Jordan M. Rice
P.O. Box 100
Walpole, Ma. 02071

United States District Court
District Of Massachusetts

Jordan M. Rice,
          Plaintiff,

v.

Federal Bureau Of Investigation
          Defendants, et. al.

DKT. No. 06-10431-RCL

## Declaration Of Jordan Martell Rice

Jordan M. Rice declares under penalty of perjury:

1. I am the Plaintiff in the above entitled case. I make this declaration in Opposition To Defendants Motion To Dismiss [1]

## Preliminary History

2. On October 15, 1996, Plaintiff was indicted for Arson and

---

[1] The Plaintiff can't attached to this motion the same exhibits in his complaint because the Department Of Corrections has seized his lawsuits to deny him access to the courts which has been ongoing for almost three years (See Exhibit No. 1A) of the lawsuit pending in this court, i.e., Rice V. Dennehy, DKT. No. 06-0430-RGS. The letter exhibits cited in this declaration are in the same alphabetical order as set forth in the above entitled complaint (Rice V. FBI) and I request that the Court refer to my complaint while evaluating the merits of this declaration. Please note, the only exhibits attached to this declaration are no(s). 1A - 1D.

murder by a Plymouth County Grand Jury.

3. Trial before a jury commenced on October 13, 1998, Judge Charles Hely presiding in Brockton Superior Court.

4. The second day of Plaintiff's trial on October 14, 1998 Massachusetts State Police Trooper Patricia Bechan testified she seized a bloody palm print on a coffee cup from the crime scene.

5. Also on the said Trooper Bechan further testified that on September 27, 1995 Mass. State Police Trooper Lieutenant and herself traveled to Johnson and Wales, Inn where Defendant FBI Agent Randall Fitzwaters was conducting a seminar on Finger print evidence. Agent Fitzwaters is a Latent Print Expert.

6. While Defendant (Def.) Fitzwaters was allegedly trying to enhance the said print with chemical, he allegedly inadvertently destroyed the bloody palm print wipping it away while at the seminar. (See Exhibit "A" at pg. no.1-3)

7. Def. Fitzwaters was never called to testify to these facts asserted by Trooper Bechan. Nor was plaintiff provided any pre-trial discovery surrounding any aspect of the bloody palm print prior to trial.

8. Such an examination is not within FBI protocol and it is clear that the FBI never had anything to do with the investigation aspect of Plaintiff's criminal charges. See Exhibit "L".

9. On October 20, 1998, Plaintiff was convicted of First-degree Murder

-112-

2nd arson. A mandatory life sentence was imposed that same day on the murder conviction and a concurrent, 19-20 year sentence was imposed on the arson conviction.

10. On October 4, 2002, Plaintiff's Appellate Counsel's, Donald Harwood, Private Investigator Ronald Rice (no relation) spoke with Def. Fitzwaters, the FBI agent who supposedly destroyed the Bloody palm print on the ~~obscured~~ coffee chip with chemicals, and he (Fitzwaters) denied any knowledge or involvement with the alleged destruction of the said evidence although he declined to forward an affidavit to this effect but stated he would file documentation with his supervisors making s/he aware of it matter. (See Exhibit "B")

11. On March 24, 2004 Massachusetts Highest State Court, i.e., the Supreme Judicial Court affirmed Plaintiff wrongful convictions where the court held Private Investigator Ronald Rice's affidavit as hearsay in light of Def. Fitzwaters not submitting an affidavit stating he had nothing to with the destruction of the said print which left Trooper Bechan's perjured Trial Testimony to stand as fact. See Com. V. Rice, 441 Mass. 291, 303 -04 (2004).

12. On April 30, 2004 Plaintiff wrote an letter with supporting exhibits to Def. Robert S. Mueller, whom is the Director of the FBI, explaining Trooper Bechan's perjured Trial Testimony surrounding Def. Fitzwaters along with requesting a Federal probe be conducted in this matter. Please note, this correspondence was mailed via certified ~~red~~ mail that was received by Def. Mueller's Office on May 4, 2004. (See Exhibit "A")

13. Seven months later when Plaintiff received no response from Defendant Mueller, he filed his first FOIA Request for documentation filed by Def. Fitzwaters in regard to his conversation with Private Investigator Rice. This was filed on October 5, 2004 (See Exhibit "D").

-114

14. On November 19, 2004 Plaintiff filed an second FOIPA Request which was well-defined because Plaintiff feared the first FOIA Request was to vague to be successful. Again Plaintiff requested any documents filed by Def. Fotzwater pursuant to his October 4, 2003 conversation with Private Investigator Rice (See Exhibit "E").

15. On December 1, 2004 Def. Hardy informed the Plaintiff that no records were responsive to his FOIPA Request after an automated indices of central records (See Exhibit "H").

16. On December 17, 2004 Plaintiff filed an Administrative Appeal (See Exhibit "I").

17. When Plaintiff or his Attorney had no response to his FOIPA Request, he filed this ~~court~~ civil action in Massachusetts U.S. District Court on February 26, 2006 (See Exhibit "K").

18. After Plaintiff filed his complaint, on August 22, 2006 he wrote for the seventh time to Def. Priscilla Jones, whom is the Administrative Specialist at the United States Department Of Justice, attempting to "forgo this lengthy and potentially damning litigation" for the defendants if they produced unredacted version of the requested information (See Exhibit No 1 B)²

19. On October 13, 2006 ~~Def.~~ Daniel J. Metcalfe of the United States Department Of Justice addressed Def. Jones correspondence where he abruptly closed the Plaintiff's appeal in clear reprisal of filing this Civil action. Therefore, it can be stated with an great degree of certainty Plaintiff hasn't been afforded

-115-

an fair and complete appellate process by the Defendants (See Exhibit No. 1 C)

## Defendant's Incomplete Search For Records Responsive To Plaintiff's Request

20. The Defendants failed to conduct a complete search for records responsive to plaintiff's requested information and this omission is painstakingly transparent set forth in Def. Hardy's Declaration.

21. Plaintiff requested information in regards to Def. Fitzusters conversation denying destruction of the bloody palm print with Private Investigator Ronald Rice on October 4, 2002. Therefore, it was fruitless to search only under Plaintiff's name!

22. Again the FBI never investigated Plaintiff's criminal matters.

23. The defendant omit in their Declaration that only Plaintiff's name was ran through the Central Records System which is primarily designed to serve as an investigative tool

24. The Defendant's fail to

(A) Search under the name of Private Investigator Ronald Rice;

---

[2] Again only Exhibit No(s). 1A - 1D are attached to this declaration.

## Defendant's Malfeasance History Of Denying Impartial Adjudication

26. The landmark evidentiary hearings conduct by Chief Federal Judge Mark L. Wolf in the case of United States V. Francis Salemme, et. al., uneath serious misconduct by the FBI (Defendants).

(A) The FBI withheld, for over 30 years, exculpatory memo's in the murder of Edward "Teddy" Deegan that Peter Limone, Joseph Salvati, Louis Greco and Henry Tamileo spent over thirty years wrongfully convicted in Massachusetts State Prison. Mr. Greco and Mr. Tamileo died in prison and were exonerated posthumously. Please note, the FBI the knew and concealed that their High ranking informats committed the Deegan Murder which were Joseph "The Animal" Barboza and Vincent "The Bear" Flemmi.

(B) The FBI willfully allowed and aided high level informats James "Whitey" Bulger and Stephen "The Rifleman" Flemmi commit serious crimes such as murder, rape, drug dealing among many other crimes for over 30 years.

(C) The FBI joined the Bulger Group which resulted in disgraced FBI Agent John "Zip" Connolly being convicted in Federal Court and indicted in the State of Florida for a Bulger Group murder for hirer hit.

(D) Disgraced FBI Agent H. Paul Rico also joined the Bulger Group while an active agent which resulted in him being indicted in the State of Oklahoma for a Bulger Criminal Group murder for hirer hit. Mr. Rico would died in custody before trial due to health related issue's. Also Mr. Rico acknowledged his and other FBI Agents malfeasance behavior before the U.S. Congress where he showed absolutely NO Remorse!

-118-

(E) Mob Capo Vincent "The Animal" Ferrara was coerced into pleading guilty to an mob hit due to the fact the FBI and Massachusetts United States Attorney's Office withheld a exculpatory statement by it's star "Rat" Informant exonerating Mr. Ferrara from ordering a mob hit. This led to Mr. Ferrara's 30 year plus sentence being commuted by Chief Federal Judge Wolf which was upheld this year by the U.S. First Circuit of Appeals Court (of Massachusetts).

(F) Most recently, involving the Lawsuit over a Bulger Criminal Group Murder victim (John McIntyre) Federal Judge Reginald C. Lindsay is quoted as stating "When I leave this Court house this afternoon, do I need to worry that some informant is going to shoot me because the FBI is not watching them?" Judge Lindsay found the FBI liability for the McIntyre Murder. (See Exhibit No. 1B at pg. no 6).

27. From Plaintiff's indictment to wrongful conviction, now U.S. States Attorney, Michael J. Sullivan, was the District Attorney of Plymouth County. It is transparent Mr. Sullivan as a Top Prosecutor has a repeated history of withholding exculpatory fingerprint evidence from Defendents. See Exhibit No 1D.

28. It is very clear from the language set forth in Def. Metcalfe's correspondence that the defendants, et.al., are aware of the importance of Det. Fitzwaters filed documentation which will demonstrate beyond a reasonable doubt the Massachusetts State Police has willfully committed perjury to withhold exculpatory evidence that will exonerate the Plaintiff from murder.

29. Furthermore, the outcome of this civil action has a direct impact on the

plaintiff's Habeas Corpus Petition currently pending before Chief Federal Judge Mark L. Wolf because the requested information established the Plaintiff's issue's of (A) Prosecutor/Police Misconduct of withholding exculpatory evidence and (B) Conviction based upon perjuried testimony. See Rice V. Brady, DKT. No. 04-00859-MLW

Pursuant to 28 U.S.C.§ 1746, I declare under penalty of perjury that the foregoing is true and correct.

x _____

Dated: Dec. 30, 2006 A.D.

Jordan M. Rice, Pro se
P.O. Box 100
Walpole, Ma. 02071

Certificate Of Service

I, Jordan M. Rice, hereby certify that the Motion In Opposition To Defendant's Motion To Dismiss accompanied with Memorandum Of Law, Interrogatories and Request For Production of Documents, and Declaration was sent via First class mail to Assistant U.S Attorney Christopher Alberto, 1 Courthouse Way, Suite #9200, Boston, Ma. 02210.

x _____

Dated: Dec. 30 2006 A.D.

Jordan M. Rice, Pro se
P.O. Box 100
Walpole, Ma. 02071

Exhibit No.
1A

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM
### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| Name | RICE JORDAN M | Grievance# 19396 | Institution MCI CEDAR JUNCTION |
|---|---|---|---|

| Commit No. | W65429 | Housing TEN BLOCK | Date Of Incident 20060703 | Date Of Grievance 2006070: |
|---|---|---|---|---|

**Complaint**
On July 3, 2006 while I was at an outside hospital appointment an Officer sho down my cell and illegally seized letter's to Chief Justice of the Supreme Judicial Court Margaret Marshall, and Chief Justice of U.S. District Court Mai L. Wolf.  Also several legal documents were seized including copy of lawsuits. This is approximately the fifth time legal documents were seized from my cell. Each illegal seizure has been captured on institutional video.  This is denyir me access to the courts.

**Remedy Requested**
To launch a probe into this illegal seizure along with preserving the video fc investigation purposes.  Also order officers to stop seizing my legal document

**Staff Recipient**   Aucoin Ann Marie    CO I

**Staff Involved**

**Signature**

---

### RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

**Date Received** 20060706    **Decision Date** 20060707

**Signature**    Aucoin Ann Marie    CO I

**Final Decision** Referred to Internal Affairs

**Decision** Due to the nature of your allegations, this grievance has been forwarded to the Office of Investigative Services for further review.

**Signature**    *Ann Marie Aucoin CB*    **Date**    7/7/06

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

---

### INMATE RECEIPT

| Name | RICE JORDAN M | | Institution MCI CEDAR JUNCTION |
|---|---|---|---|

| Commit No. | W65429 | Grievance# 19396 | Date Received 20060706 |
|---|---|---|---|

**Signature.**    Aucoin Ann Marie    CO I

Exhibit No

1B

Jordan M. Rice
177 Battles Farm Drive
Brockton, MA 02301

Office of Information and Privacy
U.S. Department of Justice (D.O.J.)
Attn: Priscilla Jones, Administrative Specialist
Suite # 570, Flag Building
Washington, DC 20530

RE: <u>Administration Appeal No. 05-0699</u>

Dear Madam,

    Hello, I am writing you for the **SIXTH** time in response of your January 4, 2005 correspondence addressed to my attention in regards to the above referenced Administration Appeal and Attorney Charles K. Stephenson, left D.O.J Civil Right Unit Supervisor Therese Roberson a voice mail message in March of 2005 all to no avail. Considerable time has elapsed and my pending administration appeal, written inquiry and Attorney calls has all gone unanswered.

    The Federal Government isn't supposed to withhold requested documentation under "FOIPA Request" if said documentation deprives "a person of right to a fair trial or an impartial adjudication".

    Please note, the current withholding of my requested documentation filed by Agent Randall Fitzwaters of the Federal Bureau of Investigation (FBI) is directly denying me "an impartial adjudication". 5U.S.C & 552 (b) (7). The FBI has an allege pattern of behavior in regards of withholding documentation which deprives individuals an imperial adjudication (See Exhibit No.1)

    Currently there is a lawsuit pertaining to this denial of an impartial adjudication pending in the Massachusetts Unite States District Court with Judge Reginald C. Lindsay pending. See, <u>Rice V. FBI., DKT.</u> No 06-0431-RCL. Judge Lindsay has been stern in his condemning malfeasance behavior by the FBI (See Exhibit No.2). We can forgo lengthy and potentially damning litigation via forwarding to my attention the requested documentation in regards to FBI Agent Randall Fitz waters which I am willing to cover any reasonable cost.

Upon receipt of the requested non-redacted documentation I will immediately file a dismissal of the cited Lawsuit in U.S. District Court. I hope we can reach a fair and prompt resolution in this matter.

I look forward to our anticipated cooperation in this matter.

Respectfully Submitted,

Jordan M. Rice

Dated: *Aug. 22, 06*

CC: William Christie, Civil Attorney
Sheryl J. Holiday, Dir of Boston University Journalism School
Reginald C. Lindsay Federal Judge
Charles K. Stephenson, Attorney
Laurel J. Sweet, Boston Herald Reporter
U.S. Congress Legislators
Enclosure

**CERTIFIED MAIL NO.**
**7005 3110 0004 2875 3367**

# Exhibit
# No. 1

# Suffolk DA clears Greco posthumously on 1965 murder rap

## By I.M. LAWRENCE

Louis Greco died behind bars for murder after maintaining his innocence for 30 years.

Now the Suffolk District Attorney's office finally believes him.

Greco, a World War II veteran hobbled by a shot to the ankle in the Philippines, always claimed he was in Florida on March 12, 1965, when the mob shot Edward Deegan in a Chelsea alley. He passed three polygraphs and won two commutations that were never acted upon by former governors.

In a motion quietly filed in Suffolk Superior Court in September, the DA's office finally acknowledged what new testimony and secret FBI memos uncovered recently have revealed:

Greco was framed by mob hit man and government witness Joseph Barboza.

"It appears that justice may not have been done," Assistant DA Mark Lee said in the motion to drop all charges against Greco posthumously. The motion cites "legal and ethical considerations raised by the newly discovered FBI documents, as well as principles of consistency and fundamental fairness" as the reasons.

The DA's office dropped the charges against Greco's co-defendants Peter J. Limone and Joseph Salvati in January 2001. Limone was released after 33 years behind bars. Salvati was in prison for 30.

For Greco's family and friends, the DA's motion is a mere formality in a long battle to clear Greco's



GRECO: Cleared of murder charge by DA after dying in jail.

name and seek compensation from the FBI for backing perjured testimony in the case.

"Big (expletive) deal," said one longtime friend of Greco's about the move to drop the charges.

The Justice Department refuses to settle the lawsuits filed by Greco's estate. Limone and Salvati. The government has argued it can't be held responsible for the actions of FBI agents under tort laws in effect in the 1960s.

Former New England Mafia leader Francis Salemme told congressional investigators that former FBI agent Dennis Condon met with him after the Deegan verdict in 1968 and laughed about setting up Greco.

Greco was 78 when he died in a prison hospital in 1995 from colon cancer and heart disease. He suffered horribly, according to the suit filed by his son, Edward Greco. He could not get proper care for his diabetes and lost a leg to amputation.

His sons grew up without their father and watched him deteriorate in prison. Both men fell into deep depressions as adults. Louis Greco Jr. committed suicide by drinking a bottle of Drano in 1997, court papers said.

Attorney Howard Friedman, who represents Edward Greco, said the DA's decision to drop the charges will aid his lawsuit.

"He knew his father didn't do it," Friedman said. "This was an innocent man who was framed, and the most amazing part is the government knew it."

# Exhibit
# No. 2

Boston Herald Newspaper - June 30 2006 - Pg. No. 6

# Judge slams FBI over killer rats

**By LAUREL J. SWEET**

The first judge to weed through the "thorny" debate over whether the FBI is liable for murders committed by informants put the agency on the defensive yesterday when a Justice Department lawyer conceded rats run amok.

"When I leave this courthouse this afternoon, do I need to worry that some informant is going to shoot me because the FBI is not watching them?" U.S. District Court Judge Reginald C. Lindsay baited Bridget Bailey Lipscomb. Lipscomb retorted that if informants like serial slayers James "Whitey" Bulger and Stephen "The Rifleman" Flemmi had been reined in when they were terrorizing Boston, they'd have been "no use" to the FBI.

And while acknowledging Bulger and Flemmi played ball with the FBI, they "were not under the control of the FBI," Lipscomb said.

Lindsay's pointed cross-examination from the bench of how the FBI chose to police its own jounced yesterday's clos-

## Fed: No control of Whitey

ing arguments in the wrongful-death suit brought against the agency by a Quincy woman whose son, John McIntyre, Bulger and Flemmi tortured to death in 1984.

Lindsay — not a jury — is charged with deciding the monthlong trial's outcome. McIntyre's family wants $50 million.

"Then, as now, there's no acceptance of responsibility," the family's attorney, William Christie, said. "The FBI engaged in conduct that any reputable agency would be ashamed to acknowledge."

McIntyre was killed for cooperating with federal authorities about Bulger's and Flemmi's efforts to arm the Irish Republican Army. They learned McIntyre's identity

with help from their F[I] handler, convicted rogue [] man John Connolly.

Though she believe[] McIntyre's murder was "fo[r]eseeable," Lipscomb argue[d] that Connolly was acti[ng] outside the "scope of his em[p]loyment," as a contract [] signed forbid divulging info[r]mants' identities to outside[rs].

Lindsay asked whether o[ne] could infer that Boston F[BI] agents were trying to "deflec[t] suspicion from Bulger an[d] Flemmi when they "stage[d] the men in business suits f[or] mugshots requested by of[fi]cials investigating a murder i[n] Oklahoma.

Lipscomb was left speech[-]less.

But not Emily McIntyr[e] who wept as Christie seare[d] in Lindsay's conscience ho[w] her son was chained to a cha[ir] with a machine gun traine[d] on him, interrogated for fi[ve] hours, strangled and shot i[n] the head.

"The only fiction in th[e] trial," Christie said, "is the n[o]tion that the FBI is not re[]sponsible."

*— lsweet@bostonherald.co[m]*

- 129 -

Exhibit No.

1C



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                          _Washington, D.C. 20530_

**OCT 1 3 2006**

Mr. Jordan M. Rice                          Re:    Appeal No. 05-0699
177 Battles Farm Drive                             Request No. 1009313
Brockton, MA  02301                                ADW:CAS

Dear Mr. Rice:

    You appealed from the action of the Headquarters Office of the Federal Bureau of Investigation on your request for access to records pertaining to yourself, including any records that confirm or deny the destruction of certain forensic evidence in 1995.

    I have been informed that you filed a Complaint seeking judicial review of the action of the FBI in the United States District Court for the District of Massachusetts. Inasmuch as this matter is now before the Court, I am closing your appeal file in this Office in accordance with 28 C.F.R. § 16.9(a)(3) (2006).

    Sincerely,

Daniel J. Metcalfe
Director

_ 131 -

Exhibit No.
1D

Exhibit

"E"

# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

**JORDAN RICE**

**V.**                                                    **CIVIL ACTION NO. 06-10431-RCL**

**F.B.I., ET AL**

## JUDGMENT OF DISMISSAL

LINDSAY, D.J.

In accordance with the Court's Order of January 12, 2007 allowing the motion to dismiss of the defendants, Judgment is hereby entered as follows: Judgment for the defendants dismissing this action.

January 16, 2007                                    /s/ Lisa M. Hourihan
                                                   Deputy Clerk