

United States District Court
District Of Massachusetts

FILED
IN CLERKS OFFICE

2007 OCT 25 P 4: 10

U.S. DISTRICT COURT
DISTRICT OF MASS.

Jordan M. Rice,
    Petitioner

    V.

Timothy Hall
    Respondent

DKT. No. 04-10859-MLW

Application For Certificate Of
Appealbility From Districts Court

To: Mark L. Wolf, U.S. District Judge

# INTRODUCTION

Pursuant to 28 U.S.C. §2253 and Rule 22 FRAP. Petitioner, Jordan M. Rice, hereby requests that the District Court is a Certificate Of Appealability (COA), permitting Petitioner to appeal from the judgment entered by the Court on September 30, 2007, denial of the petition for Writs Of Habeas Corpus in the above-entitled matter. Concurrently with this application, Petitioner has filed a timely Notice Of Appeal. Petitioner has Filed a timely COA and further requests that the below stated issues be included in addition to the other three issues already granted

## Issues On Which Certificate On Appeal Is Sought

1. Whether the District Court erroneously failed to conduct an evidentiary hearing on Petitioner's and Court Appointed Counsel's duel requests for appointment of New Counsel before rendering a decision on the merits of the petition.

- 2 -

2. Whether the District Court erroneously failed to render a decision on Petitioner's Pro Se Reply To Respondent's opposition To Petition For Writ Of Habeas Corpus.

3. Whether the District Court erroneously failed to conduct a hearing on Petitioner's Pro Se request of Order To Show Cause and Temporary Restraining Order enjoining Prison Officials from willfully denying him access to the Courts that caused actual injury.

4. Whether Trial Counsel was ineffective assistance of counsel where he failed analyze and preserve potentially exculpatory forensic evidence; retain and call expert witnesses; move to dismiss the indictment; move for bill of particulars; present other witnesses and proof that other persons committed the crime; investigate; honor the petitioner's pretrial requests or file pretrial motions, show motive evidence and other favorable proof.

5. Whether the District Court's erroneously denied Rice's petition without Discovery, Funds For DNA Expert and Evidentiary Hearing

6. Whether the District Court erroneously deleted the claim of denied the right to have the prosecution failed to disclose all materially exculpatory evidence under the Due Process Clause of the Fourteenth Amendment as unexhausted where it was properly presented to the Highest State Court (SJC).

7. Whether the prosecution failed to disclose all materially exculpatory evidence under the Due Process Clause Of the Fourteenth Amendment.

8. Whether the District Court erroneously denied Petitioner's Pro Se

- 3 -

request for Stay of Execution on the petition to exhaust meritorious unfederalized
Due Process violation of denied fair notices of criminal charges.

9. Whether Petitioner's conviction is based upon perjuried testimony.

## Standard Of Review For COA

"A prisoner seeking a COA need only demonstrate a substantial showing
of the denial of a constitutional right. A petitioner satisfies this standard by
demonstrating that jurists of reason could disagree with the district court's
resolution of his constitutional claims or that jurists could conclude the
issues presented are adequate to deserve encouragement to proceed
further." Miller-El v. Cockrell, 537 U.S. 322 (2003).

## ARGUMENT

In this section the petitioner will provide the specific reasons why the
District Court's decision denying relief is improper and he will briefly summarize
the facts that support the issues set forth in number 1-9 in the same numerical
order hereto.

## I

1. Prior to briefing in this matter Petitioner requested new counsel be appointed
because court appointed counsel, Eugene P. McCann, had several conflicts of interest including
(a) Counsel was related to an Prisoner Guard whom Petitioner Filed institutional grievance forms
and a lawsuit against for abuse of him; (b) Counsel was good friends with Petitioner's Trial
Counsel whom was the subject of meritorious ineffective assistance of counsel on several grounds.

-4-

Hence trial counsel was also disbarred from practing law for his Legal Malpractice which McCann felt was a "bum rap" that resulted in McCann not pursuing meritorious claims against trial counsel; and (C) Counsel shares some type of relationship with State Police Chemist Patricia Beehan whom is the main character in the highly meritorious and properly preserved claim of prosecution misconduct, i.e., withholding a bloody palm print which is why McCann refused to pursue this claim. In counsel opposition of petitioner's request for appointments of new Federal Counsel he (McCann) doesn't refute or address any of these meritorious claims which violates the petitioner's 1st, 5th, 6th & 14th Amendments of the U.S. Constitution. It should be noted, that Private Investigator Ron Rice (no relation), whom discovered the claims surrounding the Bloody Palm Print, objected to McCann's behavior so strongly that he (Rice) wrote Judge Wolf explaining the importance of his findings (See Docket No. 93).

The District Court's denial of appointment of new counsel relies on U.S. V. Allen, 789 F. 2d 90, 93 (1st Cir.) which is a unreasonable application of said case law the petitioner was never granted an evidentiary hearing as in Allen before his request was denied. Therefore, the facts surrounding the Conflicts Of Interest are unresolved disputes that has cause the petitioner actual injury. Furthermore, what isn't in dispute are McCann's omissions under oath in a related Civil Action, i.e., Rice V. McCann, DKT. No. 06-10502-NMG; pending in this district court where McCann admits in regards to this petition that: (i) he willfully failed to follow this court's order in pursuing issues that this court found meritorious enough to appoint counsel (See Judge Wolf's order appointing counsel at Docket No. 34); (ii) Petitioner requested McCann pursue these meritorious claims no less than 7 times and; (iii) McCann refused to pursue meritorious claim because as he personally stated to petitioner and his mother over the telephone via three way call, he (McCann) "doesn't care if [petitioner] ever gets out of prison" which this court was aware of well prior to the denial of the petition because petitioner file motion to compel DOC to Release Recording Of Telephone Call (See Docket No. 81); Petitioner's Mother, Blenda A. Rice, furnished the court with an sworn affidavit (See Docket No. 91),

- 5 -

and Private Investigator Ronald Rice wrote Judge Wolf about his concerns with McCann's actions (See Docket No. 93). Also petitioner furnished this court with an copy of McCann's written omissions confirming his exculpatory statements (See Dockets Nos. 142 and 151).

McCann's omissions are in clear in violation of the U.S. Supreme Courts holdings in Mickens V. Taylor, 535 U.S. 162 (2002)(Free to be represented by counsel without conflict of Interest); Wheat V. U.S., 486 U.S. 153 (1988) (Same).

## II

2. The district court erroneously failed to render a decision on the Petitioner's Pro Se Reply To Respondent's Opposition To Petition For Writ Of Habeas Corpus (See Docket Nos. 69, 70 & 74-76). Court appointed Counsel willfully failed to pursue meritorious claims because of his highly meritorious conflicts of interest (See Argument I of this motion). This courts actions or lack thereof, did directly violate petitioner's rights:

  (i) "to petition the government for a redress of grievances" 1 AUSC;
  (ii) Free from being "deprived of life, liberty, or property, without due process of law" 5 AUSC;
  (iii) to be free from "impartial" representation 6 AUSC;
  (iv) to be free from denial of "equal protection of the laws" 14 AUSC

Surprisely the district court did render a denial on petitioner's pro se motions of: Requesting for DNA Expert Funds (See Docket No. 148); An Evidentiary Hearing (See Docket Nos. 75 & 148); Discovery (See Docket No. 75) and; Appointment of New Counsel (See Docket Nos. 90, 97, 103, 136 & 148). Therefore, the merits of petitioner's reply should of been addressed by the district court especially where petitioner argues meritorious constitutional violations and given the fact the district court cites how counsel failed to make any argument at all.

-7-

the AEDPA Statue). See also Lines V. Lamorque, 351 F.3d 919 (2003) (Same).

# IV

4. Petitioner requests that COA being granted on these additional grounds of ineffective assistance of counsel claims because they are clearly stronger than the one weaker (ground counsel raised. Trial Counsel was ineffective for:

(i) Counsel's Failure To Move For Preservation, Analysis And The Production Of Exculpatory Forensic Evidence

By letter dated March 14, 1998, Petitioner requested among other things that his trial counsel file a motion to compel any and all finger prints evidence, to compel any and all hair and fiber evidence; to have such evidence DNA tested; and, to have the court appoint a forensic pathologist and latent fingerprint for his defense

By reply letter dated March 11, 1998, Trial Counsel declined to do any of the above. Counsel indicated that a forensic pathologist would be of no assistance to this defense; nor did counsel address Petitioner's request for preservation and analysis of forensic evidence. Instead, Trial Counsel indicated that the case would be decided only on "the accuracy and reliability of the DNA Evidence. The DNA test results and whether or not said results can be effectively challenged will decide the outcome of this case." Coincidently petitioner has been in contact with two renown DNA Experts most recently whom believe from evaluation of the Cellmark Lab reports that the semen tested from the victim's vagina isn't a match to petitioner's DNA Profile as testified to at trial and that another individuals DNA profile is present, i.e., other than the Petitioner and victim.

- 8 -

Indeed, counsel's "approach" was not "strategic" at all since uncovering evidence that other person(s) had perpetrated the crime would not have been inconsistent with a defense that the Commonwealth's alleged incriminating DNA Evidence was unreliable. Thus, Counsel's "approach" was nothing more than a transparent excuse to fail to investigate other readily available and viable defense. Counsel's inaction represented "not only behavior falling measurably below that which might be expected from a criminal defense lawyer of ordinary competence, but was also manifestly unreasonable conduct, devoid of any arguably reasoned tactical or strategic judgment". Com V. Brookins, 33 Mass. App. Ct. 626, 633-634 (1992), quoting Com V. LyKus, 406 Mass. 135, 139-140 (1987). See also Strickland V. Washington, 466 U.S. 668, 686 (1984).

Moreover, there was ample forensic evidence retrieved by police investigators at the crime scene which could have been preserved, analyzed and tested by defense experts, including blood, hair, fiber, prints evidence and the murder weapon, i.e., a knife with blood on the handle and blade found only feet away from the victim's lifeless nude body - - which testing may have (and still will) establish that other person(s) committed the crime. The report of Commonwealth Chemist Patricia A. Forti dated October 31, 1995, lists no less than 65 items which were seized in connection with the police investigation of this case, many of which contained blood, hair and fiber evidence. Amazingly none of these items were probed or tested by Police or Trial Counsel.

(ii) Counsel's Failure To Investigate, Test And Present Evidence Concerning The Bloody Palm Print On The Coffee Cup

Nor did Trial Counsel make any attempt to investigate and arrange for a defense expert to conduct a comparison test against other suspects of the bloody palm print found on a coffee cup in the kitchen sink in the victim's apartment, pictures of which were introduced at trial.

The bloody palm print on the coffee cup was perhaps the most significant piece of

- 10 -

Commonwealth's own theory of the crime, an unknown assailant must have left the print on the coffee cup recovered from the kitchen since the victim would have been physically incapacitated and/or prevented from doing so. Notwithstanding Petitioner's insistence that the Commonwealth's evidence be thoroughly probed and tested by a defense print expert, Mr. Owens (Trial Counsel) refused to do anything at all in this regard.

Moreover, since Petitioner's conviction, State Appellate Counsel's Private Investigator (P.I.) Mr. Ron Ries, learned that: (a) Randall Fitzanders, the FBI agent who supposedly destroyed the print on the coffee cup with chemicals, denies any knowledge or involvement with the alleged destruction of evidence; and (b) Ron Smith, the latent print expert, did not provide a forensic opinion to the Commonwealth, only a courtesy examination, as there was not enough detail to either include or exclude the victim as the source of the print; nor was Smith shown any of the comparison prints of Petitioner or any other suspects, directly contradicting Behan's trial testimony that she brought with her all such comparison prints for Smith's examination (T. II / 162 - 163)

Had Trial Counsel conducted even a minimal investigation in this regard as Petitioner requested, he could have easily discredited the Commonwealth's claims in this regard at trial. Newly discovered evidence like this warrants a new trial because "it casts real doubt on the justice of the conviction". Commonwealth v. Grace, 397 Mass. 303, 305 (1986). Also failure to investigate "is a hallmark of ineffective assistance of counsel claim warranting reversal. Wiggins v. Smith, 123 S. Ct. 2527 (2003) (Ineffective Assistance of Counsel for failure to investigate). Additionally a conviction based upon false testimony violates due process. Giglio v. U.S., 405 U.S. 150 (1972) (Conviction based upon perjured testimony violates due process); Napue v. Illinois, 360 U.S. 264 (1959) (Same).

Indeed, Trooper Behan testified at trial that she had no knowledge of DNA testing being performed on the coffee cup (T. II / 169 - 170); Trial Counsel failed to confront Behan with this

-11-

Callmark January 7th Reports which excluded Rice as the source of DNA material on both the coffee cup and telephone. There hardly can have been a "Strategic" reason for Trial Counsel's failure to present this exclusion evidence and to impeach Trooper Behan's demonstrably false testimony.

(iii) Counsel's Failure To Move To Dismiss The Indictment Due To The Commonwealth's Destruction Of The Palm Print

To the extent that the bloody palm prints on the coffee cup was, in fact, destroyed, Petitioner argued that trial counsel was ineffective in failing to move to dismiss the indictments on the grounds that potentially exculpatory evidence was destroyed. Commonwealth V. Gliniewicz, 398 Mass. 744 (1986) (destruction of blood evidence in course of testing destroyed potentially exculpatory evidence and required suppression) See generally U.S. V. Bryant, 439 F.2d 642 (1971).

As stated above, DNA and/or print testing of the coffee cup may very well have established the true identity of the assailant of the victim. The Commonwealth conceded the print was not that of the petitioner, Further, the Commonwealth's explanation that the bloody print may have belonged to the victim was dubious, at best, since the bloody print was recovered on a cup in the kitchen and the Commonwealth's theory of the crime was that the victim died on a couch in the living room from a rapidly fatal stab wound. Thus, Petitioner maintained that the Commonwealth's destruction and/or suppression of such critically important evidence which would have established the true identity of the assailant, justified dismissal of the indictment on due process grounds -- even though trial counsel ineffectively failed to previously move for dismissal. See Brady V. Maryland, 373 U.S. 83, 88 (1963) (prosecution must turn over exculpatory evidence even absent request from defense counsel); United States V. Agurs, 427 U.S. 97, 103 (1976); Commonwealth V. Tucceri, 412 Mass. 401, 414 (1992) (same).

-12-



5. The district court should of granted a Evidentiary Hearing; Discovery and; Funds For DNA Expert because substantial constitutional issues were clearly raised as followed:

(i) Ineffective Assistance Of Trial Counsel;

(ii) Prosecution Misconduct (Withholder Of Bloody Palm Print); and

(iii) Petitioner's Conviction is based upon perjuried testimony.

The State appellate courts acted contrary to U.S. Supreme Court authority by denying Petitioner's claims that was denied the right to present a defense where Petitioner's Trial Judge and State's Highest Court erroneously deemed Private Investigator (P.I.) Ron Rice's affidavit in regards to the said facts surrounding the bloody palm print in denying relief without an evidentiary hearing (which was requested by Petitioner). See Commonwealth V. Rice, 441 Mass. 291, 304 (2004). This was a "unreasonable application" of clearly established federal law, the Supreme Court held "a federal habeas court may grant the writ." Lockyer V. Andrade, 538 U.S. 63, 73 (2003). Here the State Courts engaged in a classic example of what the Supreme Court prohibited which is when a hearsay statement bears "persuasive assurances of trustworthiness" and is critical to the defense it may not be excluded by a "Mechanistic" application of state hearsay rule. Chambers V. Mississippi, 410 U.S. 284, 302 (1973). See also Commonwealth V. Aviles, 31 Mass. App. Ct. 244 (1991)(failure to grant an evidentiary hearing where substantial issues were raised was itself error requiring a remand to the trial).

In Sum, Petitioner was denied his constitutional right to the effective assistance of counsel, as well as his constitutional rights to due process, to present a full defense, to present all exculpatory proofs, and to confont and cross-examine the evidence against him, under the Fifth, Sixth and Fourteenth Amendments.

- 13 -

The Habeas Corpus System is designed to identify and correct wrong applications of clearly established federal law. Lockyer, at 73 (2003). In fact the Supreme Court held "where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a State court, either at the time of the trial or in a collateral proceeding." Townsend V. Sain, 372 U.S. 293, 312 (1963). See also Otsuki V. Dubois, 994 F. Supp. 47, 49-51 (1998 1st Cir.) (Same)

Therefore, the issues surrounding the Bloody Palm Print; Counsel's failure to investigate and issue surrounding the DNA match were all in dispute of constitutional violations that warrant not only a evidentiary hearing being granted but also discovery and funds for DNA Expert being granted too in the case at bar.

## VI

The district court did erroneously deem the claim of denied the right to have the prosecution disclose all materially exculpatory evidence (i.e., Bloody Palm Print) under the Due Process of the Fourteenth Amendment as unexhaust. In Petitioner's State Appellate brief the said claim is explicitly set forth and federalized at Pgs Nos. 18-22.

In addition the State's highest court addressed said due process among other claims surrounding the Bloody Palm Print. See Commonwealth V. Rice, 441 Mass. 291, 303-306 (2004). In the State Courts opinion recognized all the claims surrounding the bloody palm print where it stated the petitioner "raises several issues about a coffee cup with blood stain and partial palm prints found in the victims kitchen sink." See Rice, at 303 (2004).

Therefore, the constitutional violation was properly exhausted by the State Court and

-14-

this court erred in it's deletion of the said claim surrounding the Bloody Palm Print. The constitutional importance directly impacts this petition because it is clearly established federal law withholder of exculpatory evidence is a Due Process Violation and relief warrants being sought in petitioner's favor. See Brady V. Maryland, 373 U.S. 83, 88 (1963) (Prosecution must turn over exculpatory evidence even absent request from defense counsel), U.S. V. Agurs, 427 U.S. 97, 103 (1976); Commonwealth V. Tucceri, 412 Mass. 401, 414 (1992) (same).

## VII

7. Petitioner defers the grounds for the claim of Prosecution Failed To Disclose all Materially exculpatory evidence under the Due Process of the Fourteenth Amendment to Argument No. IV (Pgs. Nos. 8-11) of this COA Motion. Please note, the constitutional violation of this claim warrants reversal of petitioner's conviction. See Brady V. Maryland, 373 U.S. 83, 88 (1963).

## VIII

8. The Commonwealth Amended the charges against the Petitioner during the second day of trial with an Felony Murder & underlying factor of Aggravate Rape Charge depriving Petitioner Fair Notice Of Criminal Charges in direct violation of clearly establish federal law of Due Process Rights. See Stirone V. U.S., 361 U.S. 212 (1960); Cole V. Arkansas, 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that of notice of the specific charge").

Petitioner was unable to return to the State Court to exhaust this claim in a timely manner due to Prison Officials unconstitutional law library system set forth in Argument No. III. The Constitutional violation here to would resulted in relief being granted in Petitioner's favor. Therefore, the district court erroneously denied Petitioner's requests for a Stay Of Execution especially where it failed to hold an Evidentiary

- 15 -

Hearing on Petitioner's Order To Show Cause and Temporary Restraining Order. Such a Stay of Execution is permitted under <u>Rhines V. Weber</u>, 544 U.S 269 (2005).

## XI

9. The Petitioner's conviction is based upon perjuried testimony in regards to State Police Chemist Patricia Bastion's transparent perjury where she claimed FBI Agent Randall Fikewbors destroyed a Bloody Palm Print. For a more indepth explanation of this meritorious constitutional violation. See Argument No. IV at Page No.s 8-11 of this COA Motion.

The U.S. Supreme Court has held a conviction based upon false testimony violates due process. See <u>Giglio V. U.S.</u>, 405 U.S. 150 (1972); <u>Napue V. Illinois</u>, 360 U.S. 264 (1959). The constitutional violation herein warrants relief of being sought in petitioner's favor.

## CONCLUSION

Based on the foregoing, Petitioner respectfully submits that the court's findings are subject to debate among jurist's of reason, and consequently, that a COA should be granted on one or more of the additional issues listed above.

x _(signature)_

Dated: Oct. 11, 2007

Jordan M. Rice
P.O. Box 100
Walpole, Ma. 02071